1
2
3
4
5
6
7
8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD M. GILMAN,

11              Plaintiff,              No. CIV S-05-0830 LKK GGH P

12        vs.

13   S. FISHER, et al.,                ORDER &

14              Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.   Pending before the court are: 1) plaintiff's "motion to determine sufficiency of

19   objections," re: defendant Schwarzenegger's responses to requests for admissions, which the

20   court will construe as the first of the pending motions to compel, filed on April 13, 2007; 2)

21   plaintiff's second and third motions to compel discovery, filed on April 23, 2007, and April 25,

22   2007, to which defendants filed an opposition, which the court will deem timely, on May 30,

23   2007; 2) defendants' motion, filed on May 4, 2007, re-noticing the summary judgment motion

24   originally filed by defendants Blonien, Perez (now Fisher) and Welch on April 4, 2006, in which

25   defendant Kenneally joined on May 25, 2007, to which plaintiff had previously filed his

26   \\\\\

                                              1

1   opposition on April 24, 2006, and on May 12, 2006,[1] and to which plaintiff filed a supplemental

2   opposition, on July 30, 2007;  3) plaintiff's motion, filed on June 6, 2007, requesting

3   postponement of consideration of defendants' re-noticed summary judgment motion to which

4   defendants did not file an opposition; 4) defendant Schwarzenegger's motion for summary

5   judgment, filed on June 7, 2007, to which plaintiff filed his opposition, on July 30, 2007, after

6   which defendant Schwarzenegger filed a reply, on August 3, 2007; 5) plaintiff's cross-motion for

7   summary judgment as to all defendants, filed on July 30, 2007, to which the defendants filed an

8   opposition on August 20, 2007, after which plaintiff filed his reply on October 1, 2007[2]; 5)

9   plaintiff's July 30, 2007, motion requesting postponement of consideration of defendant

10  Schwarzenegger's motion for summary judgment to which defendant Schwarzenegger filed his

11  opposition on August 14, 2007, after which plaintiff filed a reply on September 14, 2007.

12  Second Amended Complaint

13          As the court has previously set forth,[3] in the operative second amended complaint,

14  filed on August 4, 2005, plaintiff names five defendants, in their official capacities only: Board

15  of Prison Terms and Parole (re-named, as of July, 2005, Board of Parole Hearings (hereafter,

16  Board)) Commissioner Booker Welch, Board Deputy Commissioner Noreen Blonien, Board

17  Commissioner and Chair Margarita Perez (now Susan Fisher), Board Executive Officer Dennis

18  \\\\\

19  \\\\\

20

21      [1] By Order, filed on May 4, 2006, plaintiff was granted, inter alia, a 30-day extension of
    time to complete/supplement his opposition to the April 4, 2006, summary judgment motion.

22      [2] It appears that plaintiff filed a motion for an extension of time to file a reply to
23  defendants' opposition to his (cross-)motion for summary judgment, which was never addressed,
    but which the court now disregards, as the court's recommendation that the cross-motion be
24  denied is not impacted by consideration of any reply.  (A separate request by plaintiff for an
    extension of time to file a reply to defendant Schwarzenegger's opposition to plaintiff's request
25  for postponement of consideration of defendants' summary judgment motion was partially
    granted by Order, filed on 9/5/07).

26      [3] See Order, filed on Jan, 30, 2007.

1 Kenneally, Governor Arnold Schwarzenegger.[4]   Second Amended Complaint (SAC), filed on

2 August 4, 2005, pp. 1-2, 5.[5]

3        The gravamen of plaintiff's complaint is that defendants' alleged continued

4 reliance on unchanging factors, such as the circumstances of plaintiff's offense and his pre-

5 imprisonment conduct, in denying him parole deprives him, a convicted first degree murderer

6 with no prior criminal history, of his Fourteenth Amendment due process rights.  SAC, p. 5.

7 Plaintiff seeks relief, in the form of prospective injunctive relief only, for what he alleges is "a

8 systematic pattern or policy of denying parole to male first-degree murderers," sentenced to a

9 term of 25 years to life, from approximately June of 1992, through at least December of 2003.

10 SAC, pp. 4-5.  He claims that defendants violate his due process rights under the Fourteenth

11 Amendment in relying on unchanging factors in denying parole, including circumstances of the

12 offense and conduct prior to imprisonment, and that evidence of rehabilitation and exemplary

13 behavior are not given significant effect, contrary to the rehabilitative goals the prison system

14 espouses.  Id.

15        Plaintiff, convicted of first degree murder in 1982, has been eligible for parole

16 since 1995, has appeared before the Board of Prison Terms in 1994, 1995, 1997, 1999, 2002,

17 2003 and 2005, and has never been found suitable for parole.  Id., at 6, 10.   Plaintiff sets forth

18 statistics from his access to the public record indicating that the average number of first degree

19 murderers who paroled each year from 1945 to 1980 was 40.  Id., at 6-10.  Plaintiff provides

20 statistics from 1981 through 1991 for the number of first degree murderers found suitable for

21 parole.  Id., at 7.   He lists statistics for the years 1991-2003 for convicted and sentenced first

22 degree murderers found suitable for parole as well as the gubernatorial reversals of such Board of

23 Prison Term's findings of suitability.  Id., at 8.  Plaintiff contends that in the years from 1991 to

24

25        [4]  Defendants Kenneally and Schwarzenegger, who filed their answer on 9/18/06, were
served after the earlier served defendants had filed their original motion for summary judgment.

26        [5] The court's electronic pagination is referenced.

1  2003, every male first-degree murderer sentenced to 25 years to life who was approved for parole

2  by the Board of Prison Terms had the approval reversed by the Governor.  Id., at 8.

3          The prospective injunctive relief plaintiff seeks, "per Wilkinson v. Dotson," 544

4  U.S. 74, 125 S. Ct. 1242 (2005), is for defendants to be enjoined from relying on unchanging

5  factors, the circumstances of the offense and pre-imprisonment conduct, in continuing to deny

6  parole "per Biggs v. Terhune," 334 F.3d 910, 917 (9th Cir. 2003), and for a new parole

7  consideration hearing to be scheduled "as soon as possible."  SAC, p. 4.

8  Motions to Compel/Motions to Continue Dispositive Motions

9                  *Background re: Prior Discovery Issues/Protective Order*

10          In an Order, filed on May 4, 2006, the court granted defendants' motion for a

11  protective order staying discovery as to defendants Perez and Welch, subject to a showing by

12  plaintiff, pursuant to Fed. R. Civ. P. 56(f), whereby he was permitted the opportunity to narrow

13  his requests to show how the discovery that he sought was relevant and necessary for him to

14  oppose the then-pending summary judgment motion brought by defendants Blonien, Perez[6] and

15  Welch.

16          In an Order, filed on January 30, 2007, the undersigned found that plaintiff had

17  sufficiently narrowly tailored his discovery requests such that he had made an adequate showing,

18  pursuant to Fed. R. Civ. P. 56(f), for the court to grant his motion for a continuance and his

19  document production request, vacating defendants' then-pending motion for summary judgment,

20  subject to being re-noticed in accordance with the January 23, 2007, Scheduling Order.   In the

21  Jan. 30, 2007, Order, vacating the April 4, 2006, summary judgment motion, defendants Fisher

22  and Welch were directed to produce to plaintiff, within 30 days, the specific pages of the decision

23  portion of hearing transcripts from only *subsequent* parole consideration hearings for convicted

24  male first degree murderers serving sentences of 25 years to life for the year 2006.  Upon

25  _____

26          [6] Susan Fisher has been substituted in for Margarita Perez as an official capacity
defendant.  See, Order, filed on 7/26/06.

defendants' request for reconsideration of the Jan. 30, 2007, Order, that order was affirmed by the district judge.  See, Order, filed on March 7, 2007.

In the Jan. 23, 2007, Scheduling Order, the discovery deadline was set for April 20, 2007, and all dispositive pretrial motions were to be filed by June 8, 2007.[7]  In an Order, filed on March 28, 2007, the court granted defendants an extension of time to respond to the order to produce the documents described above, after defendants represented that there were some 1,613 subsequent parole consideration hearings for first degree murderers serving 25-to-life sentences in 2006.  The undersigned also afforded plaintiff an opportunity to respond to defendants' motion to reduce the production ordered.  By Order, filed on April 6, 2007, the court memorialized the telephone conference the undersigned held on April 5, 2007, with plaintiff pro se and counsel for defendants, regarding defendants' request to reduce the burden of the document production.  Following the telephone conference, defendants were directed to produce the decision portion as specified above of the subsequent parole consideration hearings for male first degree murderers serving 25 to life, only for five months in 2006, specifically, January, February, October, November and December of 2006.  See, Order, filed on April 6, 2007.  The order also noted that defense counsel agreed to waive any argument that the production did not constitute a sufficient representative sample of the Board's decision-making, given that defendants sought the production limitation.  Id.  Defendants were further directed to produce the apposite transcripts within 30 days and thereafter to re-notice their previously vacated summary judgment motion.  Id.  Plaintiff was given 30 days after service of the transcripts to review the production and file any opposition/supplemental opposition to defendants' dispositive motion.  Id.  The court directed that the transcripts were to be stored in a secure location in the prison, preferably the senior librarian's office in the prison's law library; plaintiff was to have full access to the transcripts but only while in the law library.  Id.  Defendants were to ascertain that plaintiff be

---

[7]  The remaining pretrial conference and trial dates were subsequently vacated in light of the dispositive motions filed.  See, Order, filed on 8/14/07.

1    granted the most latitude possible with regard to law library access to review the records.  Id.

2                    *Plaintiff's Pending Requests for Postponement/Discovery Motions*

3                    On June 6, 2007, plaintiff once again brought a motion, pursuant to Fed. R. Civ.

4    P. 56(f), for the court to continue the now re-noticed motion for summary judgment primarily

5    because while defendants had produced the decision portions of transcripts during the specified

6    months of 2006, defendants had, in effect, produced too much by failing to limit production only

7    to the transcripts of hearings for male first degree murderers who were sentenced to a term of 25

8    years to life.  Motion, filed 6/6/07, pp. 1-2; plaintiff's affidavit, ¶¶ 3-4.  Plaintiff also states in his

9    supplemental opposition to the motion for summary judgment, filed on July 30, 2007, that while

10   defendants served plaintiff with a box containing the decision portion of transcripts from the

11   months specified, they did so as to all male first degree murderers and not just those serving

12   prison terms of 25 years to life.  Supplemental (Supp). Opposition (Opp.), filed on 7/30/07, pp. 7,

13   13).  Plaintiff has nevertheless proceeded both to make an effort to support his opposition based

14   on an analysis and a calculated guess as to which of the convicted first degree male murderers

15   actually were sentenced to the 25-to-life term, the sentence upon which plaintiff premises the

16   allegations of his second amended complaint.  While plaintiff seeks to differentiate the

17   consideration by defendants for parole of convicted male first degree murders by whether they

18   were sentenced under the indeterminate sentencing law to a term of seven years to life or under

19   the determinate sentence law to an indeterminate term of 25 years to life, the court does not find

20   the distinction necessary for plaintiff to argue his position and this motion will be denied.  The

21   court will consider herein the motion for summary judgment brought by defendants Blonien,

22   Fisher, Welch and Kenneally.

23                   Plaintiff filed a "motion to determine sufficiency of objections," on 4/13/07, with

24   respect to defendant Schwarzenegger's responses to plaintiff's request for admissions, which the

25   court must construe as the first of plaintiff's three motions to compel discovery.  The requests ask

26   the Governor, for each year from 1992 until 2006, to "[a]dmit that no Board-proposed finding of

                                                   6

1   parole suitability" in the respective calendar year "for a male first-degree murderer serving a

2   sentence of 25 years to life in prison (if any such finding was made that year) was not reversed by

3   the Governor in the 30-day period of gubernatorial review provided by Penal Code, § 3041.2."

4   See, Motion to Compel (MTC), filed on 4/13/07, pp. 9-15.  The court's review of the requests

5   and responses demonstrates that defendant Schwarzenegger has objected to each of 15 requests

6   for admission.  As to all of them, defendant Schwarzenegger posits in the form objections that

7   the requests go beyond the discovery the court allowed plaintiff to conduct under Fed. R. Civ. P.

8   56(f) in its Jan. 30, 2007, Order.  As to the first 11 requests, defendant also maintains in

9   objections that those requests concern matters that occurred before this defendant took office, on

10  the face of it a meritless objection when the Governor is sued in his official capacity.  Defendant

11  has filed no opposition expressly addressing this motion, but the court finds none of defendant's

12  posited objections to the requests for admissions identified above to have any merit.  Plaintiff is

13  correct that the discovery that was at issue in the Jan. 30, 2007, Order, did not limit discovery as

14  to defendant Schwarzenegger who was not even served at the time that the initial motion for

15  summary judgment was filed.  Nor does defendant's objection take into account the Jan. 23,

16  2007, Scheduling Order, permitting discovery until April 20, 2007.  The requests are reasonably

17  calculated to lead to the discovery of admissible evidence and the defendant should have served

18  responses to the requests for admission upon plaintiff.

19        In the second motion to compel, filed on 4/23/07,[8] plaintiff asks the court to

20  compel defendant Kenneally's responses to the last three of eight interrogatories that plaintiff

21  served in a first set of interrogatories to this defendant, on February 1, 2007.  However, the

22

23        [8] Both of plaintiff's motions to compel that were stamped as filed after April 20, 2007,
    the discovery cut-off date were timely by application of the mailbox rule.  Pursuant to Houston v.
24  Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988), pro se prisoner filing is dated from
    the date prisoner delivers it to prison authorities.  The April 23, 2007, motion has a signed
25  certificate of service dated April 18, 2007, while the motion, file-stamped April 25, 2007,
    although dated as filed later by the court, has a signed certificate of service attached which is
26  dated April 17, 2007.

court's review of the responses provided by this defendant to each of the five interrogatories to

which plaintiff evidently does not object, states as follows either:

> Defendant objects to this interrogatory on the grounds that it goes
> beyond the discovery the court allowed plaintiff to conduct under
> Fed. R. Civ. P. 56(f) as specified in the court's order of January 30,
> 2007.  Defendant also objects on the grounds that this interrogatory
> is vague and has no relevance to plaintiff's claim for prospective
> injunctive relief and is not reasonably calculated to lead to the
> discovery of admissible evidence.

Response to Interrogatory 1, Motion to Compel (MTC), filed on 4/23/07, p. 9.

or:
> Defendant objects to this interrogatory on the grounds that it goes
> beyond the discovery the court allowed plaintiff to conduct under
> Fed. R. Civ. P. 56(f) as specified in the court's order of January 30,
> 2007.  Defendant also objects on the grounds that this interrogatory
> is overly broad as to time, unduly burdensome, and has no
> relevance to plaintiff's claim for prospective injunctive relief and is
> not reasonably calculated to lead to the discovery of admissible
> evidence.

Responses to Interrogatories 3, 4, 5, MTC, filed 4/23/07, pp. 9-10.

Since defendant's responses were only in the form of objections and plaintiff does

not ask that the defendant be compelled to provide substantive responses as to Interrogatories 1

through 5, the court will not compel defendant to provide substantive responses to Interrogatories

6, 7, and 8.  This motion will be denied.

In his second motion to compel, filed on 4/25/07, plaintiff is more comprehensive

and substantive.  Plaintiff refers to production of document requests, filed on 1/30/07, upon

defendant Fisher and requests for production of documents served on defendant Welch.  MTC,

filed on 4/25/07, Exhibits (Exhs.) A & B.  Plaintiff then references a first set of interrogatories

served on defendant Kenneally, on February 1, 2007 (also referenced in the first motion to

compel immediately preceding), as well as a first set of interrogatories served on defendant

Schwarzenegger.  Id., Exhs. C & D.

Defendants oppose plaintiff's motion for discovery on the basis that the court has

previously defined the scope of documents relevant to the dispositive issues raised in defendants'

1  summary judgment motion, which clearly defined documents, they aver, have been produced.

2  Opposition (Opp., p. 1).  To the extent that defendants responded to the court's order, filed on

3  Jan. 30, 2007, as modified by the Order, filed on April 6, 2007, they are correct only with respect

4  to all defendants who filed the dispositive motion which was vacated pending production of the

5  transcripts referenced above (and with respect to defendant Kenneally who later joined in that

6  motion).   However, the motion will be denied as moot with respect to all defendants because

7  defendant Schwarzenegger's motion for summary judgment will be denied largely because this

8  defendant provided no responses to plaintiff's legitimate discovery requests (see below).

9           Upon defendant Schwarzenegger's objections to plaintiff's original interrogatories

10 served upon him, plaintiff, in his motion, narrowed the interrogatories to the following:

11          Interrogatory No. 1: How many Board-proposed suitability findings
            for male first-degree murderers serving sentences of 25 years to life
12          in prison did the Governor reverse in calendar year (CY) 2006, and
            subsequently in CY 2007?
13
            Interrogatory No. 2:  How many Board-proposed suitability
14          findings for male first-degree murderers serving sentences of 25
            years to life in prison did the Governor *not* reverse in calendar year
15          (CY) 2006, and subsequently in CY 2007?

16          Interrogatory No. 3: Of the reversals identified in the first
            interrogatory, how many were based (in whole or in part) upon the
17          circumstances of the commitment offense?

18          Interrogatory No. 4:  Of the reversals identified in the first
            interrogatory, how many were based exclusively upon factors other
19          than the commitment offense?

20 Plaintiff makes the point that the requested information is admissible since the defendant

21 Governor is the "final parole decisionmaking authority" with respect to prisoners, like himself,

22 convicted of murder, citing Johnson v. Gomez, 92 F.3d 964, 967 (9th Cir. 1996).  MTC, filed on

23 4/25/07, p. 5.

24          In his original interrogatories, while the questions were open-ended as to the

25 period of time for which plaintiff sought information as to the Governor's actions as to Board-

26 proposed suitability findings, plaintiff's efforts to narrow the requests seeking information in an

1    effort to accommodate the defendant's objections met with no cooperation, and the court finds

2    plaintiff's requests, particularly as narrowed, constituted relevant information reasonably

3    calculated to lead to the discovery of admissible evidence.

4            Plaintiff identifies one request for production of documents that he served upon

5    defendant Schwarzenegger.  MTC, filed on 4/25/07, pp. 3-4, Exh. L.

> Request No. 1: Produce any and all Executive Reports in which the
> Governor reversed a Board-proposed finding of parole suitability
> for a first-degree murderer serving a sentence of 25 years to life in
> prison based exclusively upon factors <u>other</u> than the circumstances
> of the commitment offense.
> Response:  Defendant objects to the request on the grounds that it
> goes beyond the discovery the court allowed plaintiff to conduct
> under Fed. R. Civ. P. 56(f) as specified in the court's order of
> January 30, 2007.  Defendant also objects to this request on the
> grounds that it is vague as to time, unduly burdensome, and calls
> for confidential or privileged documents.

12           Of course, as previously pointed out, the initial objection has no bearing on

13   discovery requests propounded on the defendant Governor.  Plaintiff in his motion states that his

14   request seeks production of Executive Reports responsive to his request dating from 1988, the

15   date from which, as plaintiff contends, the law began to permit gubernatorial review of Board

16   decisions.  MTC, filed 4/25/07, pp. 3-4, Exh. M.  <u>See</u>, e.g. <u>In re Rosenkrantz</u>, 29 Cal. 4th 616,

17   625 (Cal. 2002) (Cal. Const., Article V, section 8(b), adopted in 1988, granted the Governor

18   authority to review the Board's parole decisions).  Plaintiff notes that defendants contended in

19   their motion for reconsideration, filed on 2/13/07 (p. 2), that in nearly every case where parole is

20   denied that the commitment offense supports the finding of parole unsuitability, arguing that

21   there should be very few, if any, cases in which a parole denial is based exclusively upon factors

22   other than the circumstances of the commitment offense.  MTC, filed 4/25/07, pp. 3-4, Exh. M.

23   The court, however, finds that it would be unduly burdensome for defendant to have to go back

24   some twenty years to respond to this request.  It appears that plaintiff has, by other means,

25   secured at least some of the Executive Reports he sought (see plaintiff's opposition to motion for

26   \\\\\

1 | summary judgment), but this does not excuse defendant's total lack of cooperation with the
2 | request.

3 | Plaintiff sought a postponement, on July 30, 2007, of consideration of defendant
4 | Schwarzenegger's motion for summary judgment, pursuant to Fed. R. Civ. P. 56(f) based on this
5 | defendant's failure to respond to plaintiff's discovery requests. Fed. R. Civ. P. 56(f) permits the
6 | court to continue a dispositive motion to allow the opposing party to obtain discovery to oppose
7 | the motion, if the opposing party makes a showing by affidavit of the reasons that the adverse
8 | party cannot "present by affidavit facts essential to justify the opposition...." without the
9 | discovery at issue. This motion will be granted and defendant Schwarzenegger's motion for
10 | summary judgment will be denied based in large part on the cavalier treatment this defendant
11 | gave to plaintiff's legitimate discovery requests. Of course, another basis for summarily denying
12 | defendant Schwarzenegger's dispositive motion is that, as set forth below, the court finds that
13 | Board defendants' summary judgment motion should be denied. If that is the case, then the
14 | Governor, who brings his motion on the same ground as the Board defendants, that plaintiff lacks
15 | Article III standing to seek injunctive relief herein, and who has undeniably reversed a number of
16 | the Board's parole suitability findings vis-à-vis convicted first degree murderers, cannot prevail
17 | on his motion. By the same token, plaintiff's cross-motion for summary judgment should be
18 | denied because adjudication of the summary judgment motion below makes clear that there
19 | remain genuine issues of material fact that cannot be resolved by any party's dispositive motion.
20 | Motion for Summary Judgment

21 | Defendants Blonien, Fisher, Welch and Kenneally move for summary judgment,
22 | arguing that plaintiff lacks Article III standing to bring this action for prospective injunctive
23 | relief because the Board does not have a policy of uniformly denying parole to male first degree
24 | murderers. Motion for Summary Judgment (MSJ), pp. 1, 3-9.[9] Defendants expressly do not

25 |
26 | [9] Defendants also aver that defendant Perez is entitled to summary judgment because she
has stopped serving as Board Chair; however, as noted earlier, defendant Fisher, in her official

1    contest plaintiff's statistics for the years 1945 through 2003 by their motion to which they aver

2    the statistics are irrelevant.  MSJ, p. 7, n.2.

3              Defendants do not contest the fact, well established by now, that the California

4    parole eligibility statute for indeterminate life sentenced prisoners establishes a liberty interest.

5    See Hayward v. Marshall, 512 F.3d 383, 387 (9th Cir. 2008).  Defendants also eschew any

6    argument concerning the usual issues in parole eligibility cases: the basic due process guarantees

7    of that liberty interest, an unbiased adjudicator(s) and "some evidence."  Rather, despite the fact

8    that plaintiff has been "injured" (if his legal and factual theories are correct) by an alleged policy

9    that has worked to deny him parole eligibility again and again, defendants choose to attack

10   plaintiff's Article III standing, mixing notions of standing injury and the injunctive relief

11   prerequisite of irreparable harm.  As a side argument, defendants assert that even if only a few

12   first degree murder life prisoners have been recommended eligibility, by definition there is no

13   policy to deny such prisoners eligibility for a parole setting date.

14                    _Legal Standard for Summary Judgment_

15             Summary judgment is appropriate when it is demonstrated that the standard set

16   forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

17   there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

18   as a matter of law."  Fed. R. Civ. P. 56(c).

19             Under summary judgment practice, the moving party

20        always bears the initial responsibility of informing the district court
          of the basis for its motion, and identifying those portions of "the
21        pleadings, depositions, answers to interrogatories, and admissions
          on file, together with the affidavits, if any," which it believes
22        demonstrate the absence of a genuine issue of material fact.

23
24   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

25   capacity, has previously been substituted in for former defendant Perez in her official capacity,
     and this ground for defendants motion has been rendered moot.  MSJ, p. 9.  See Order, filed on
26   filed on 7/26/06.

                                                    12

1   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

2   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

3   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

4   after adequate time for discovery and upon motion, against a party who fails to make a showing

5   sufficient to establish the existence of an element essential to that party's case, and on which that

6   party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete

7   failure of proof concerning an essential element of the nonmoving party's case necessarily

8   renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be

9   granted, "so long as whatever is before the district court demonstrates that the standard for entry

10  of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

11          If the moving party meets its initial responsibility, the burden then shifts to the

12  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

13  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

14  (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

15  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

16  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

17  contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

18  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

19  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

20  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

21  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

22  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

23  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

24          In the endeavor to establish the existence of a factual dispute, the opposing party

25  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

26  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

1   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

2   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

3   genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

4   56(e) advisory committee's note on 1963 amendments).

5           In resolving the summary judgment motion, the court examines the pleadings,

6   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

7   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

8   477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

9   placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

10  at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

11  opposing party's obligation to produce a factual predicate from which the inference may be

12  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

13  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

14  party "must do more than simply show that there is some metaphysical doubt as to the material

15  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

16  nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct.

17  1356 (citation omitted).

18          On October 27, 2005, the court advised plaintiff of the requirements for opposing

19  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

20  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.

21  Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

22                  *Defendants' Undisputed Facts/Argument*

23          The following of defendants' undisputed facts (DUF) are expressly undisputed by

24  plaintiff:

25          DUF 1.  Plaintiff was convicted of first degree murder and sentenced to 25 years

26  to life in state prison.  DUF 2.  The Board has never found plaintiff suitable for parole. DUF 3.

1   At plaintiff's most recent parole consideration hearing in March, 2005, the hearing panel

2   consisted of defendant Commissioner Welch and defendant Deputy Commissioner Blonien.[10]

3           As to the following of defendants' undisputed facts, plaintiff disputes them only

4   on the basis that it is erroneous to state that the Board can grant parole, since it is the Governor,

5   not the Board, who is the final authority, pursuant to Cal. Penal Code § 3041.2, as to which

6   convicted murders are released, thus, it is appropriate to say only that the Board can find

7   convicted murderers suitable for release.  Plaintiff's Response to DUF, # 44,[11] citing MSJ, p. 8.

8   Both parties, therefore, agree on this point.  With that caveat, plaintiff does not otherwise dispute

9   the remaining DUF.  DUF.  5. The Board granted parole to 25 first degree murderers in 2002, and

10  to 34 first degree murderers in 2003.  (5.  MSJ, citing SAC, p. 8).  6.  In 2004 and 2005, the

11  Board issued grants of parole to 66 prisoners convicted of first degree murder.  (6.  MSJ,

12  Declaration of Tom Remy, Board Senior Legal Analyst (Remy Dec.). ¶ 4)  7.) Of those 66

13  parole grants by the Board issued to first degree murderers in 2004 and 2005, 53 were males.

14  (Remy Dec.. ¶ 5)  8.) Of the 53 grants of parole by the Board to male first degree murderers in

15  2004 and 2005, 27 were serving sentences of 25 years to life.  (8.  Remy Dec. ¶ 6).  9.)  More

16  specifically, in 2004, the Board granted parole to 38 first degree murderers (29 males and 9

17  females).  In 2005, the Board granted parole to 28 first degree murderers (24 males and 4

18  females).  (9.  Remy Dec., ¶ 7).

19          As noted, plaintiff expressly accedes to these undisputed facts as set forth by the

20  Board defendants except, as noted, to the extent that, under Cal. Penal Code § 3041.2, it is the

21  Governor, and not the Board who is the final authority as to which convicted murderers are

22  ultimately released.  See plaintiff's resp. # 44 and Opposition (Opp.) # 52, p.5.  That is, plaintiff

---

[10] Defendants Undisputed Fact (DUF) No. 4, that Perez has not been the administrative head of the Board since July 1, 2005, is not in dispute but is not relevant as defendant Fisher has been substituted in in that capacity.

[11] Because plaintiff has numerous filings in opposition to this motion, the court will primarily identify the relevant document by noting the Docket Entry number.

1   seeks to point out that the Board's granting of parole is subject to the Governor's authority.  This

2   is a point, however, that defendants, as also noted, themselves asserted in their moving papers

3   with respect to any claims relating to convicted murderers who are released on parole.   MSJ, p.

4   8.  This, however, has little bearing in this motion for summary judgment brought only by the

5   defendants who are employed by the Board.  That is to say, even if for the sake of argument the

6   defendant Governor ultimately reversed every finding of parole suitability that the defendant

7   Board members made or had any authority for, these defendants would not be implicated for any

8   such action.

9          The gravamen of the Board defendants' dispositive motion, as noted, is that

10  plaintiff lacks standing to obtain prospective injunctive relief to enjoin defendants from

11  following a systematic policy of denying parole to all male first degree murderers serving

12  sentences of 25 years to life because such a policy does not exist.  Defendants point to the

13  undisputed facts (5-9) to underscore their position, therein noting that the Board has granted

14  parole to 25 first degree murderers in 2002; to 34 first degree murderers in 2003; to 66 prisoners

15  convicted of first degree murder in 2004-2005, of whom 53 were male and of those 53, 27 were

16  serving sentences of 25 years to life.  MSJ, pp. 3-4, 7.  Because these numbers refute any claim

17  that the Board has a systematic pattern or practice of denying parole to male first degree

18  murderers, defendants contend, plaintiff cannot satisfy the two standing requirements to seek

19  prospective injunctive relief against the Board defendants, that is, he cannot show (1) a credible

20  threat of future injury that is sufficiently concrete and particularized; or (2) an imminent threat of

21  irreparable harm.  MSJ, pp. 7-8, citing Stevens v. Harper, 213 F.R.D. 358, 366 (E.D. Cal. 2002).

22  Defendants maintain that plaintiff's allegations are premised on the mistaken notion that no first

23  degree murderer serving 25 to life has been released since 1991.  Moreover, seeking to hold the

24  Board responsible for any such policy would be off-point because it is the Governor and not the

25  Board who is the final authority as to which convicted murderers may be released, citing Cal.

26  Penal Code § 3041.2.  MSJ, p. 8.  To the extent that plaintiff's claim is premised on an alleged

1  policy or pattern involving the Board's continued reliance on unchanging factors, such as the

2  circumstances of the commitment offense and conduct prior to imprisonment, defendants

3  contend that any such consideration by the Board did not prevent it from granting parole to 53

4  male first degree murderers in 2004-2005.  MSJ, pp. 8-9.

5                          *Plaintiff's Disputed Facts/Opposition*

6              In his statement of disputed facts, plaintiff posits that he has not alleged the

7  existence of a systematic pattern or policy of denying parole to *all* male inmates serving 25-to-

8  life terms for first degree murder, except during a specific time from about June of 1992 until

9  January of 2004, but instead seeks primarily to implicate the alleged practice by defendants of

10  "continued reliance on unchanging factors" as a basis for denial of parole.  Plaintiff continues to

11  aver that a systematic policy of parole denial to male first degree murderers does still exist, but

12  concedes that it is in a slightly abated form under defendant Schwarzenegger.  Plaintiff disputes

13  that he has to prove that no inmate has been released since 1991 to establish standing to seek

14  prospective injunctive relief, if defendants have repeatedly engaged in conduct sufficiently likely

15  to injure him.  Plaintiff's Statement of Disputed Facts (PDF), # 45.

16              Plaintiff states that he is a convicted first degree murderer with no prior criminal

17  history, who was sentenced to a state prison term of 25 years to life; that he has been eligible for

18  parole since 1995; that he has been repeatedly denied parole despite evidence of rehabilitation

19  and sustained exemplary behavior; that the denials arise from a systematic policy, practice or

20  pattern of denying parole to male first degree murderers with similar sentences.  Opp., # 52, p. 3,

21  citing SAC.  He argues that this pattern involves a continued reliance on unchanging factors,

22  such as the commitment offenses and conduct prior to imprisonment, which was evidenced by,

23  among thousands considered, no male first degree murderer serving 25 to life being approved for

24  parole from June, 1992 to December, 2003.  Id.  Plaintiff maintains that the alleged policy of

25  continued reliance on unchanging factors continues to this day as evidenced by the defendant

26  Governor's reversals of the few suitability findings made by the Board.  Plaintiff alleges a due

                                              17

1  process violation by such an alleged policy, and that said practice undermines the espoused

2  rehabilitative goals of the prison system.   Id.

3       Plaintiff avers that in 1997, the Board conducted 2,297 lifer parole consideration

4  hearings; in 1998, the Board conducted 2,191 lifer parole consideration hearings; in 1999, the

5  Board conducted 1,953 lifer parole consideration hearings; in 2000; the Board conducted 3,645

6  lifer hearings in 2001; the Board conducted 2,179 lifer parole consideration hearings in 2002; the

7  Board held 4,826 lifer parole consideration hearings in 2002, as well as 4,498 such hearings in

8  2003,[12] that the Board defendants have conceded.  Opp., # 52, pp. 5-6, citing SAC; Declaration of

9  Michael Brodheim,[13] ¶ 3, # 53, and Exh. A, as well as defendants' motion for protective order.

10  Exh. C to the Brodheim Dec. indicates that in the ten and a half-month period from Nov. 17,

11  2003, through Sept. 30, 2004, there were 2,913 Board hearings for murderers, which included

12  959 Board parole hearings for first degree murderers of which the Board referred 35 grants to the

13  Governor, of which 22 were reversed by him (which signifies as to the Governor that 13 were

14  granted during this period).  Id. at 6.

15       Plaintiff, in his initial opposition, declares that he was denied parole by the Board

16  in 1994, 1995, 1997, 1999, 2002, 2003 and March of 2005,[14] and that in denying him parole the

17

18      [12] Plaintiff notes that defendants have conceded that there were 4,498 lifer hearings alone in 2003(in their motion for protective order to stay discovery, p. 6, footnote 3).

19      [13] Michael Brodheim declares that he is himself a state prisoner housed at California

20  Medical Facility who was convicted of first degree murder in 1982, and sentenced to 25 to life, who has been denied parole at four parole consideration hearings.  See Brodheim Dec., at ¶¶ 1, 7.

21  Attached as exhibits to his declaration are copies of lifer parole hearing caseload statistics from the CDCR/Board website, a letter from the Board dated 10/22/04, concerning the statistics on

22  lifer parole decisions since Gov. Schwarzenegger had taken office in Nov. of 2003 until 9/30/04 (Exh. B), a letter from the Office of the Governor dated 11/12/04, concerning, inter alia, the

23  number of Board parole hearings for first degree murderers from 11/17/03 (when Gov. Schwarzenegger was sworn in) until 9/30/04, the number of such cases which the Board granted

24  and the number which the Gov. reversed (Exh. C).

25      [14] The court notes that plaintiff has submitted the transcript for a subsequent parole consideration hearing on October 19, 2006, in which none of the individuals named as official

26  capacity defendants herein apparently participated, at which he received a two-year denial.  See plaintiff's dec. in support of Supp. Opp., # 99-7, ¶ 17 & plaintiff's Exhibits # 103, Exh. 78.

Board relied on the circumstances of his offense and pre-imprisonment conduct to deny him parole.  Plaintiff's Declaration (Dec.) in Opposition (Opp.) to MSJ, # 43.  In support of his supplemental opposition, plaintiff declares that he has since had a subsequent parole consideration hearing in October, 2006.   Plaintiff's Dec. in support of Supp. Opp., # 99-7, ¶ 17 & plaintiff's Exhs., # 103, Exh. 78 (a transcript of plaintiff's subsequent parole consideration hearing on October 19, 2006, in which none of the individuals named as official capacity defendants herein apparently participated, at which he received a two-year denial).

        Plaintiff avers that the undisputed fact that the Board referred 53 grants of parole to the Governor for male first degree murderers in 2004 and 2005 is not enough to demonstrate that the Board does not have a systematic pattern of denying parole to such prisoners because defendants do not show how many parole hearings there were during this period for the relevant class of inmates.  Opp., # 52, pp. 11-12.  In a portion of his supplemental opposition (# 58), plaintiff attempts to provide a context.   In undisputed fact no. 9, defendants set forth that in 2005, the Board granted parole to 28 first degree murderers (24 males and 4 females).   In the second Brodheim Dec. (# 59), Exh. A, is a copy of a letter dated 6/6/06 from the Office of the Governor, signed by Daniel Maguire, Deputy Legal Affairs Secretary, stating that in 2005, the Board held parole hearings for 1,320 male first degree murderers.  Therefore, plaintiff deducts the 24 male first degree murderers for whom the Board approved parole that year from the pool of 1,320, leaving 1,296.  Supp. Opp., # 58, p. 2.  Not taking into account subsequent reversals by the Governor, plaintiff contends, this signifies a denial of parole for the relevant class of inmates by the defendant Board members of 98.2% in 2005.  Id.   In further supplemental opposition (# 99), plaintiff attempted to evaluate the hearings for the five months in 2006, January, February, October, November and December, for which defendants provided plaintiff with the decision portions of subsequent parole consideration hearings for male first degree murderers.  According to plaintiff, he was provided transcripts for 293 decisions involving convicted male first degree murderers for the period.  Supp. Opp. (#99), Gilman Dec. (#99).  (Plaintiff attempted to single

out the cases of those who had been, like plaintiff, sentenced to a term of 25 years to life, which he estimated came to 197. Id.) Of the 293 convicted male first degree murderers who had subsequent parole consideration hearings, plaintiff found that in January of 2006, out of 78 inmates, 74 were found unsuitable for parole, while 4 were found suitable; in February, out of 52 inmates, 51 were found unsuitable while 1 was found suitable; in October, out of 56 inmates, 49 were found unsuitable and 7 were found suitable; in November, out of 64 inmates, 61 were found unsuitable, while 3 were found suitable; in December, out of 43 inmates, 40 were found unsuitable, while 3 were found suitable. Id., at 13, 2nd Gilman Dec. #99-7, ¶ 21, Exhs. B & C.[15] In other words, 18 out of 293 were found by the Board to be suitable for parole (leaving 275). In his analysis of the statistics, the Board found 5.1 % (4 out of a total of 78) in Jan., 1.9% (1 out of 52) in Feb., 12.5% (7 of 56) in Oct., 4.7% (in Nov.), and 7% (in Dec.) of the first degree murderers in hearings in those months of 2006, suitable for parole. Supp. Opp., 2nd Gilman Dec. #99-7, ¶ 23. Plaintiff's review indicated that in each case where the Board found an inmate unsuitable for parole, the panel relied "primarily or exclusively on the circumstances of the prisoner's commitment offense(s)." Supp. Opp., 2nd Gilman Dec. #99-7, ¶ 26. Plaintiff claims that the Board, in finding unsuitability, relied on prior conduct other than the commitment offense itself some 78% of the time (in about 214 cases of the 275 found unsuitable). Supp. Opp., 2nd Gilman Dec. #99-7, ¶ 28.

Plaintiff indicated that he is 73 years old, and, among other medical conditions, suffers from hypertension, coronary artery disease, type II insulin-dependent diabetes. Supp. Opp., 2nd Gilman Dec. #99-7, ¶¶ 2-3. He has had triple bypass heart surgery and uses a walker. Supp. Opp., 2nd Gilman Dec. #99-7, ¶¶ 4-5. In the only conviction in his history, he was convicted of first degree murder in 1982, sentenced 25 years to life. Id. at ¶ 9. According to

---

[15] These numbers do add up to 293. Exhs. B through G to his declaration are illustrative graphs and a chart that plaintiff has created in an effort to illustrate his analysis of the transcripts provided him.

1  plaintiff, he has been eligible for parole since July of 1995; has been disciplinary-free throughout

2  his incarceration; has received above average prison work reports; has received psychological

3  evaluations indicating that he would pose a low degree of threat to society if paroled.  Id. at ¶¶

4  12-15.  He reiterates that he has been found unsuitable for parole by the Board in hearings in

5  1994, 1995, 1997, 1999, 2002, 2003, 2005 and 2006, "based primarily or exclusively on the

6  circumstances of [his] commitment offense," but that his commitment offense and pre-

7  imprisonment conduct ceased to have predictive value as to any current or future risk to public

8  safety long ago.  Id. at ¶ 16-18.

9          *Reply*

10         Defendants argue that California law, citing In re Dannenberg, 34 Cal.4th 1061,

11  1088 (2005) and Cal. Penal Code § 3041,[16] requires the Board to consider the gravity of the

12  commitment offense when assessing a life inmate's parole suitability.  Reply, p. 2.  Defendants

13  further assert that in granting parole (or finding parole suitability) for 53 male first degree

14  murderers in 2004-2005 (defendants' undisputed fact no. 7), the Board nevertheless did not deny

15  them parole based on the circumstances of the crime.  Id.  Defendants argue that the statistics

16  presented by plaintiff do not establish that the Board has a systematic policy denying parole to

17  male first degree murderers, and that plaintiff could self-servingly contend that even higher

18  percentages of grants constituted a systematic policy of parole denials.  Id. at 3-4.

19         In defendants' supplemental reply, defendants argue that plaintiff fails to raise a

20  triable issue of disputed fact on his tabulation of the first degree murderers found unsuitable for

21  parole in January, February, October, November and December of 2006, as predicated on the

22  Board's reliance on immutable factors, and in any event the evidence shows that defendants did

23  not rely primarily on the commitment offense but upon changing factors, such as social and

24

25         [16]  Cal. Penal Code § 3041(b): "The panel or the board...shall set a release date unless it
determines that the gravity of the current convicted offense or offenses, or the timing and gravity

26  of the current or past convicted offenses, is such that consideration of the public safety requires a
more lengthy period of incarceration...."

1   psychological history and post-incarceration behavior.  Supp. Reply, p. 2.  Defendants also

2   contend that plaintiff's evidence is inadmissible because it lacks foundation, citing  Fed. R. Evid.

3   1006,[17] which permits the contents of voluminous writings, which could not be conveniently

4   examined in court, to be presented in the form of a chart, summary or calculation, the originals or

5   duplicates to be made available for examination of copying at a reasonable time and place.  Id.

6   Defendants aver that plaintiff should have provided a list of documents supporting his worksheet

7   (Supp. Opp., Exh. G) wherein plaintiff avers that defendants relied primarily or exclusively on

8   the commitment offense in finding the inmates unsuitable for parole.  Id. at 3.  Despite their

9   objections to the evidence plaintiff presents in his worksheet or chart on grounds of lack of

10  foundation, defendants nevertheless cite the analysis therein to argue that plaintiff's own

11  evaluation of the data he reviewed, as set forth in his Exh. G to the Supp. Opp., shows that

12  defendants relied upon changing, post-incarceration factors for nearly half of all first degree

13  murderers found unsuitable by the Board.  Id., at 4-5.

14          *Discussion*

15          Plaintiff's Exh. G to Supp. Opp. purports to break down the Board's rationale for

16  finding 275 of the 293 convicted first degree male murderers at subsequent parole consideration

17  hearings unsuitable for parole (that plaintiff identified from the representative sample in 2006

18  that was produced to him).  Plaintiff presents this analysis in both Exh. G and in his supporting

19  declaration (Supp. Opp. 2nd Gilman Dec, #99-7, ¶¶ 26-31).  The chart and declaration set forth,

20  inter alia, in finding unsuitability, that the Board relied on circumstances of the commitment

21  offense and prior record of violence, citing CAL. CODE REGS. tit.xv, § 2402(c),[18] a significant

22  ─────────────────

23          [17]  In addition, of course, under Fed. R. Evid. 1006, "[t]he court may order that they be
        produced in court."

24          [18]  "Circumstances Tending to Show Unsuitability. The following circumstances each
        tend to indicate unsuitability for release. These circumstances are set forth as general guidelines;
25  the importance attached to any circumstance or combination of circumstances in a particular case
        is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
26  (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious

1   majority of the time.  At the same time, defendants have noted (Supp. Reply, p. 4) that plaintiff

2   identified 105 instances (38%) wherein the Board relied on an unstable social history; 110 cases

3   wherein psychological factors were relied on (40%); 119 cases when institutional misbehavior

4   was relied on (43%).  It is a little difficult, however, to credit defendants' reliance on plaintiff's

5   charts and statistics while they also challenge the admissibility of such evidence.  Nor is there

6   any basis for this court to determine the genuineness of findings of unsuitability which may in

7   some instances arguably only be putatively or pretextually predicated on changing versus

8   unchangeable factors.

9           The trial judge is compelled by some Ninth Circuit case law to search the record

10  for evidence supporting the position of the pro se litigator, <u>Jones v. Blanas</u>, 393 F.3d 918, 923

11  (9th Cir. 2004) ("we must consider as evidence in his opposition to summary judgment all of [the

12  pro se plaintiff's] [potentially admissible] contentions offered in motions and pleadings"), said

13  evidence not having to be in admissible form, but merely susceptible of being placed in such

14  form at trial.  <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003); <u>see also</u> <u>Aholeli v. Hawaii</u>

15  <u>Dept. Of Public Safety</u>, 220 Fed. Appx. 670 (9th Cir. 2007).  In this case, the evidence they seek

16  to challenge was drawn from material they were directed to produce to plaintiff, and defendants

17

18  or cruel manner. The factors to be considered include:
            (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
19          (B) The offense was carried out in a dispassionate and calculated manner, such as an
    execution-style murder.
20          (C) The victim was abused, defiled or mutilated during or after the offense.
            (D) The offense was carried out in a manner which demonstrates an exceptionally callous
21  disregard for human suffering.
            (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
22  (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to
    inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive
    behavior at an early age.
23  (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships
    with others.
24  (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner
    calculated to inflict unusual pain or fear upon the victim.
25  (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related
    to the offense.
26  (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail."

23

1   must necessarily have had access to precisely the same material.  Whether or not it is presently

2   admissible, it could be made so at trial.

3           The point to be made with the lengthy recitation of statistics is that statistics, of

4   course, can be highly relevant in many settings to supply issues of fact or prima facie cases.  See

5   Linn v. Regents of the Univ. Of California, 656 F.2d 1337 (9th Cir. 1981) (statistics can be

6   highly relevant in discrimination cases, even those based on disparate treatment); Turner v.

7   Marshall, 63 F.3d 807, 813 (9th Cir. 1995) (statistics to demonstrate unlawful jury selection

8   practices).  The same is so here.  In the context of a statute which itself expresses that the parole

9   board "shall set" a release date unless public safety considerations warrant against such a release,

10  Cal. Penal Code 3041(b), i.e., implying that release is the norm and not the exception, statistical

11  evidence that only single digit percent of inmates get release dates set after *subsequent* eligibility

12  hearings is a stark statistical showing of some type of policy, i.e., use of unchanging factors,

13  overwhelmingly weighted against release.  This is the type of evidence of which issues of fact are

14  made.  There is no time period relevant to the instant suit in which the issue of fact does not

15  exist.  It may be that once the underlying evidence of both parties is produced at trial, defendants

16  may prevail.  However, they have not done so on this motion for summary judgment.  As the

17  court has previously noted, simply because defendants can undisputedly show that some first

18  degree murderers have been granted parole[19] "does not on the face of it entirely dispose of

19  plaintiff's argument that there may be a discernible pattern, policy of practice whereby

20  defendants continue to deny parole to such prisoners, including himself, solely on the basis of

21  unchanging (and unchangeable) factors."  See Order, filed on 1/30/07, p. 5.

22          As noted in several places, defendants choose to base their motions on lack of

23  standing, a somewhat curious ground given the fact that plaintiff has undoubtedly been injured

24  by the policy he alleges.  Article III of the Constitution requires concrete cases and controversies

25

26          [19] Or, more aptly in the case of these Board defendants, recommended to the defendant
    Governor as suitable for parole.

1  before the judicial power vests in the Article III courts.  This doctrine is often termed a party's

2  standing to pursue claims.  If a plaintiff has no standing, the court has no subject matter

3  jurisdiction.

4            "[B]efore reaching a decision on the merits, we [are required to]
          address the standing issue to determine if we have jurisdiction."

5            Nat'l Wildlife Fed'n v. Adams, 629 F.2d 587, 593 n. 11 (9th
          Cir.1980).  "[T]he standing question is whether the plaintiff has

6            'alleged such a personal stake in the outcome of the controversy' as
          to warrant his invocation of federal-court jurisdiction and to justify

7            the exercise of the court's remedial powers on his behalf."  Warth
          v. Seldin, 422 U.S. 490, 498- 99, 95 S.Ct. 2197, 45 L.Ed.2d 343

8            (1975) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7
          L.Ed.2d 663 (1962)).  There are three requirements for standing:

9            (1) "a plaintiff must have suffered an 'injury in fact'--an invasion
          of a legally protected interest which is (a) concrete and

10           particularized and (b) actual or imminent, not 'conjectural' or
          'hypothetical;'" (2) "there must be a causal connection between the

11           injury and the conduct complained of--the injury has to be 'fairly ...
          trace[able] to the challenged action of the defendant, and not ...

12           th[e] result [of] the independent action of some third party not
          before the court;'" and (3) "it must be 'likely' as opposed to merely

13           'speculative,' that the injury will be 'redressed by a favorable
          decision.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61,

14           112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted)
          (alterations in original).

15

16 Washington Legal Foundation v. Legal Foundation of Washington, 271 F.3d 835, 847 (9th Cir.

17 2001) (en banc).

18           "The doctrine of standing is based both on prudential concerns and on

19 constitutional limitations on the jurisdiction of the federal courts."  Doran v. 7-Eleven, Inc., 506

20 F.3d 1191, 1195 (9th Cir. 2007) (citing Bennett v. Spear, 520 U.S. 154, 162 (1997)).  "The

21 federal courts are not empowered to seek out and strike down any governmental act that they

22 deem to be repugnant to the Constitution.  Rather, federal courts sit solely, to decide on the rights

23 of individuals, and must refrain from passing upon the constitutionality of an act unless . . . the

24 question is raised by a party whose interests entitle him to raise it."  Hein v. Freedom from

25 Religion Found., Inc.,127 S. Ct. 2553, 2562 (June 25, 2007) (internal quotations and citations

26 omitted).

Defendants then mix and match their standing argument with that of irreparable harm concepts applicable to injunctive relief requests.  Plaintiff has standing to seek prospective injunctive relief in this case where he has raised a genuine issue of material fact as to whether there is a pattern of a finding of parole unsuitability for male first degree murderers based on unchanging and unchangeable factors by the Board defendants, which "continued reliance" on unchanging factors in denying parole suitability "could result in a due process violation," Biggs v. Terhune, supra, 334 F.3d at 916, and where he, a convicted first degree murderer who has apparently been disciplinary free for a quarter century, has nevertheless been repeatedly denied parole apparently largely on the basis of the commitment offense and pre-imprisonment circumstances and has a sufficient likelihood of being re-injured by such a policy or pattern, if it exists.  Kruse v. State of Hawai'I, 68 F.3d 331, 335 (9th Cir.1995) (plaintiff must show "sufficient likelihood" that he will be injured again).  This court must recommend denial of defendants' motion for summary judgment.

Accordingly, IT IS ORDERED that:

1.  Plaintiff's August 31, 2007 (# 115), motion for a thirty-day extension of time to file a reply to defendants' opposition to plaintiff's (cross-) motion for summary judgment is disregarded in light of the court's recommendation that the cross-motion be denied;

2.  Plaintiff's motion, filed on June 6, 2007 (# 89), for a continuance of the re-noticed motion for summary judgment brought by defendants Blonien, Fisher, Welch and Kenneally is denied;

3. Plaintiff's "motion to determine sufficiency of objections," filed on 4/13/07 (# 82), construed as a motion to compel discovery, is denied as moot;

4.  Plaintiff's motion to compel discovery, filed on April 23, 2007 (# 83), is denied;

5.  Plaintiff's motion to compel discovery, filed on April 25, 2007 (# 84), is denied as moot;

1    6.  Plaintiff's motion for a continuance, filed July 30, 2007 (# 100), pursuant to

2  Fed. R. Civ. P. 56(f), of defendant Schwarzenegger's motion for summary judgment is denied as

3  moot.

4    IT IS HEREBY RECOMMENDED that:

5    1. The motion for summary judgment, filed on April 4, 2006 (# 39), and re-

6  noticed on May 4, 2007 (# 85), by defendants Blonien, Welch and Perez (now Fisher), in which

7  defendant Kenneally joined on May 25, 2007 (# 87), be denied;

8    2.  Defendant Schwarzenegger's motion for summary judgment, filed on June 7,

9  2007 (# 92), be denied.

10    3.  Plaintiff's (cross-) motion for summary judgment filed on July 30, 2007

11  (# 101), be denied; and

12    4.  This matter be set for a bench trial.

13    These findings and recommendations are submitted to the United States District

14  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

15  days after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  THE PARTIES ARE

18  CAUTIONED AS TO THE TIME FOR FILING OBJECTIONS THAT, DUE TO THE

19  EXIGENCIES OF THE COURT'S CALENDAR, NO EXTENSION OF TIME CAN BE

20  GRANTED.  Any reply to the objections shall be served and filed within ten days after service of

21  the objections.  The parties are advised that failure to file objections within the specified time

22  may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th

23  Cir. 1991).

24  DATED: 03/07/08                          /s/ Gregory G. Hollows

25                                           GREGORY G. HOLLOWS
                                             UNITED STATES MAGISTRATE JUDGE
26  GGH:009 - gilm0830.msj+