UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD M. GILMAN, et al.,

        Plaintiffs,

    v.

J. DAVIS., et al.,

        Defendants.
_____/

NO. CIV. S-05-830 LKK/GGH

O R D E R

Plaintiffs in this suit are eight California state prisoners with convictions for murder and who are currently serving life sentences that include the possibility of parole, seeking to represent themselves and others similarly situated. Defendants are members of the California Board of Parole Hearings and the Governor of California, who also participates in the parole process. Plaintiffs challenge the factors defendants allegedly consider in determining whether to grant parole, the adequacy of the statements of reasons provided when parole is denied, and the scheduling of parole suitability hearings, and the governor's ability to review parole suitability determinations, alleging violations of the Ex

Post Facto and Fourteenth Amendment Due Process Clauses. Pending before the court is plaintiffs' motion for class certification. For the reasons explained below, this motion is granted.

## I. BACKGROUND

### A. California's Parole Process

All California prisoners with life sentences are eligible for parole after serving a certain number of years. The precise length of time varies, based on the conviction offense and date of conviction. Here, all class members have served this number of years.

Once a life prisoner is eligible for parole, it is up to the Board of Parole Hearings ("Board") to determine whether he is "suitable" for parole. California Penal Code section 3041 provides statutory guidance regarding "suitability." Subsection (a) provides that

> The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the inmate was sentenced and other factors in mitigation or aggravation of the crime.

Cal. Pen. Code. § 3041(a). Subsection (b) further provides that a prisoner is suitable for parole, such that a release date "shall" be set, unless the Board determines that

> the gravity of the current convicted offense

2

>or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that <u>consideration of the public safety requires a more lengthy period of incarceration for this individual</u>, and that a parole date, therefore, cannot be fixed at this meeting.

Cal. Pen. Code § 3041(b) (emphasis added). See also In re Lawrence, 44 Cal.4th 1181, 1205-1206 (2008) ("the Board (and the Governor) [may] identify and weigh only the factors relevant to predicting 'whether the inmate will be able to live in society without committing additional antisocial acts.'") (quoting In re Rosenkrantz, 29 Cal.4th 616, 655 (2002)).

The Board makes suitability determinations at parole hearings, the first of which occurs a year before eligibility. Cal. Pen. Code § 3041(a). If the Board finds the prisoner suitable for parole, it sets a parole release date. That decision becomes final in 120 days, and the Governor may exercise his authority to review the decision and affirm, reverse or modify it. Cal. Const., Art. V, § 8(b); Cal. Pen. Code, § 3041.2. If the Governor reverses a grant of parole, the prisoner is defaulted to a one-year deferral and considered again for parole by the Board the following year.

If the Board finds the prisoner is not suitable for parole, it determines when it will next consider his suitability for parole. Cal. Pen. Code, § 3041.5. Prior to the adoption of Proposition 9, the default was for reconsideration at a new hearing in one year, although the Board had discretion to set a lengthier

////
////

deferral period.[1] Pursuant to the amendments effectuated by Proposition 9, the presumptive deferral period has increased to fifteen years, and the board has decreased discretion to deviate from this presumption. Cal. Pen. Code § 3041.5.

**B.  Plaintiffs' Claims**

The Plaintiffs' Fourth Amended Complaint challenges essentially all aspects of the parole process.

Plaintiffs challenge the process by which the Board makes its suitability determinations, alleging that the Board makes these decisions by relying on factors other than those permitted by the statute. Specifically, plaintiffs allege that defendants have a practice of not seriously considering a prisoner's suitability for parole until he has served an arbitrary number of years (First, Second, and Third claims), and that defendants rely on "unchanging factors," such as the commitment offense, "despite clear evidence of rehabilitation and thus lack of risk to public safety." (Fourth claim). In relying on these impermissible factors, defendants allegedly ignore the regulatory criteria, such that those criteria are cited only as pretense. (Sixth claim).

---

[1] This system itself was the result of 1982 and 1994 amendments to the statute. Plaintiffs state that at the time when named plaintiffs Gilman, Brown, Stewart, Marquez, Lewis, and Olson committed their offenses, the statute provided for only annual reconsideration hearings absent conviction for multiple murders. Plaintiffs state that when the remaining named plaintiffs, Masoner and Fowler, committed their offenses, the presumption was for annual hearings but for cause and upon specific findings could be extended to two years before reconsideration. Plaintiffs' complaint does not explicitly allege that the amendments prior to Proposition 9 were unconstitutional.

4

Plaintiffs also challenge the "statement of reasons" given when parole is denied or deferred on the grounds that the defendants' practice is to issue statements that do not "connect the reasons to risk to public safety" and do not "provide meaningful guidance to the prisoner about what he must do to obtain parole." (Fifth claim).

Next, plaintiffs challenge the way in which the time period for deferrals is set. Plaintiffs allege that the Proposition 9 amendments to Cal. Pen. Code § 3041.5 both violate the Ex Post Facto clause and cause parole to be deferred for reasons unrelated to the statutory criteria provided in § 3041(a)-(b). (Eighth claim). Even prior to Proposition 9, defendants allegedly "repeatedly deferred parole reconsideration for some Plaintiffs and members of Plaintiff Class for more than one year based on reasons that are not reasonably connected to the length of the deferral." (Seventh claim).

Finally, plaintiffs challenge Article V, Section 8(b) of the California Constitution, adopted by ballot initiative in 1988. This provision grants the Governor the ability to reverse the Board's determinations regarding suitability or unsuitability for parole. Plaintiffs allege that this provision, as it has been used and as it has influenced the Board, has had the effect of "significantly increas[ing] the risk of increasing those prisoners' incarceration in violation of the Ex Post Facto Clause of the United States Constitution." (Ninth claim).

Plaintiffs seek declaratory and injunctive relief to cure

these violations, including an injunction against retroactive application of Proposition 9 to members of plaintiff class.

## II. STANDARD

A party seeking to certify a class must demonstrate that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) allows a class to be certified

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In other words, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

Rule 23(b) provides for three types of class actions. Fed. R. Civ. P. 23(b). Here, plaintiff seeks to certify the class under Rule 23(b)(3), which allows for a class to be certified if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

The court must conduct a "rigorous analysis" of the moving party's claims to examine whether the requirements are satisfied, Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982). Generally, the court should not consider whether the party seeking

6

class certification has stated a cause of action or is likely to prevail on the merits. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). Nevertheless, the court is not only "'at liberty to' consider evidence which goes to the requirements of Rule 23" but in fact is required to consider such evidence, when applicable, "'even [if] the evidence may also relate to the underlying merits of the case.'" Dukes v. Wal-Mart, 509 F.3d 1168, 1178 n.2 (9th Cir. 2007) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992)). If the court concludes that the moving party has met its burden of proof, the court has broad discretion to certify the class. Zinser, 253 F.3d at 1186.

## III. ANALYSIS

Whether claims can appropriately be brought as a class action obviously depends on what those claims are. This is a simple truth, but many of the arguments defendants raise in opposition to class certification rest on misconceptions as to the nature of plaintiffs' claims and the relief sought.

In this suit, plaintiffs challenge the <u>procedures</u> used in determining suitability for parole: the factors considered, the explanations given, and the frequency of the hearings. Although the choice of procedure influences the outcome, plaintiffs do not directly challenge the outcomes as they relate to any individual class member.

**A. Preliminary Issues**

In addition to disputing whether plaintiffs have satisfied Fed. R. Civ. P. 23(a)-(b), defendants raise three preliminary

7

issues. Defendants argue that plaintiffs lack standing, that the class is not ascertainable, and that certification is premature.

**1. Standing**

Defendants argue that plaintiffs lack standing to bring this claim for injunctive relief.[2] A case seeking injunctive relief only satisfies Article III's case or controversy requirement when there is a "real and immediate threat of injury." City of Los Angeles v. Lyons, 461 U.S. 95, 104 (1983). In Lyons, the Supreme Court held that the plaintiff had failed to establish such a threat. Id. at 110. The plaintiff there had alleged that members of the Los Angeles police department were using unconstitutional force during traffic stops, but plaintiff had not shown and could not show that he would be subjected to a traffic stop or that if such a stop occurred that he would be subjected to the complained of force. Id. at 105-06. Thus, the risk of future injury to the plaintiff in Lyons was too small to give rise to a case, and plaintiff lacked standing to seek injunctive relief.

This case is nothing like Lyons. Plaintiffs have alleged that they are being injured by the defendants' practice of using unconstitutional procedures in making parole decisions and setting parole hearing dates. There is no doubt that every member of the plaintiff class will be evaluated for suitability for parole. Plaintiffs further allege that these improper procedures are consistently applied, and not that each parole determination

---

[2] The standing inquiry is separate from class certification.

8

involves merely a chance that challenged procedures will be invoked. This is sufficient to demonstrate standing in this case. C.f. Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1041-42 (9th Cir. 1999) (finding standing because "unlike in Lyons, in this case there is no string of contingencies necessary to produce an injury.").

### 2. Ascertainability

The proposed class consists of California state prisoners who: "(i) have been sentenced to a term that includes life; (ii) are serving sentences that include the possibility of parole; (iii) are eligible for parole; and (iv) have been denied parole on one or more occasions." This definition allows ready determination of whether an individual is or is not in the class (as "eligible for parole" has a regulatory definition), and therefore suffices to define an ascertainable class. See Wright & Miller, 7A Fed. Prac. & Proc. Civ. 3d § 1760.

### 3. Whether Certification Is 'Premature'

Defendants also argue that class certification is premature because "Plaintiffs have not provided any factual or evidentiary support for their allegations." (Defs.' Opp'n, 12.) Presentation of evidence is not a per se requirement for class certification. "Sometimes the issues [in applying Rule 23] are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982). When the issues are not so plain, courts "must consider evidence

which goes to the requirements of Rule 23 at the class certification stage even if the evidence may also relate to the underlying merits of the case." Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1178 (9th Cir. 2007) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992)) (modification in original omitted). Thus, whether evidence is required will depend on the contours of Rule 23's application to a particular case. As discussed below, in this case, the court can evaluate whether each of Rule 23's requirements are satisfied without additional evidence. The present motion is not premature.

**B. Requirements under Rule 23(a)**

Fed. R. Civ. P. 23(a) provides four requirements for a class action. These requirements are (1) the impracticability of joining all members ("numerosity"); (2) the existence of common questions of law or fact ("commonality"); (3) typicality of the claims and defenses of the parties with respect to the proposed class ("typicality"); and (4) adequate representation of the proposed class by the parties before the court ("adequacy of representation"). Fed. R. Civ. P. 23(a); see also Stanton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003). In this case, the parties appropriately agree that numerosity is satisfied.

**1. Commonality**

Commonality exists when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) does not require that every or all questions of fact or law be common or identical. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019

(9th Cir. 1998). In a civil rights suit, the commonality requirement is satisfied where the suit challenges a "system-wide practice or policy that affects all of the putative class members." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001). Thus, commonality may exist where there is a common legal issue with varied factual predicates. Hanlon, 150 F.3d at 1019-20.

Here, plaintiffs allege that all class members were subjected to the same unconstitutional practices. Because plaintiffs do not challenge the outcomes of any parole suitability determinations, the individualized balancing of factors inherent in those determinations is not directly at issue in this suit. Of course, plaintiffs will likely need to address some individuals' experiences to prove that the alleged practices exist, and the differences between the experiences and histories of named and unnamed plaintiffs may make it difficult for plaintiffs to make this showing. However, the alleged injuries and legal theories are the same across the class. Armstrong established that this commonality sufficed under Rule 23(a)(2). 275 F.3d at 868.

### 2. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As such, it substantially overlaps with the test for commonality. For typicality to be met, named plaintiffs' claims need not be identical to those of the putative class members. Hanlon, 150 F.3d at 1020. Instead, plaintiffs' claims need only be "reasonably coextensive" with the

claims of the putative class. Id. The inquiry focuses on the claims themselves--not the factual predicates from which the claims arise. Hanon v. Dataprods. Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id.

All class members are subject to the parole determination process. Because plaintiffs have alleged system-wide practices, plaintiffs' alleged injuries are necessarily typical of (if not identical to) those of unnamed class members.

### 3. Adequacy of Representation

Adequacy of representation requires that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for plaintiffs to adequately represent the putative class members, they must demonstrate, first, that they do not possess any conflicts of interest with the class members and, second, that both plaintiffs and their counsel will work to "prosecute the action vigorously" with respect to the entire class. Stanton, 327 F.3d at 957.

Both adequacy requirements are met here. There is no indication that the interests of named and unnamed class members conflict or otherwise diverge. Plaintiffs and their counsel have demonstrated, and defendants do not dispute, that they are able to vigorously and competently prosecute this action. Therefore,

adequacy is satisfied.

**C.   Requirements under Rule 23(b)(2)**

The analysis of Rule 23(b)(2) further overlaps with the factors in Rule 23(a). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, plaintiffs allege an overarching policy that applies to all class members. Therefore, plaintiff's allegations satisfy this requirement. The injunctive relief sought by plaintiffs would apply to the class as a whole--the claims in this suit would not entitle named or unnamed class members to any form of individualized injunctive relief.

### IV. CONCLUSION

Plaintiffs have satisfied the requirements of Fed. R. Civ. P. 23(a), and have further satisfied Fed. R. Civ. P. 23(b)(2). Accordingly, plaintiffs' motion for class certification is GRANTED.

IT IS SO ORDERED.

DATED: March 4, 2009.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT