UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD M. GILMAN, et al.,

          Plaintiffs,

    v.

J. DAVIS., et al.,

          Defendants.

NO. CIV. S-05-830 LKK/GGH

O R D E R

/

    Plaintiffs, a class of California state prisoners currently serving life sentences with possibility of parole, have filed suit against defendants and various persons participating in California's parole hearing process. Plaintiffs challenge various aspects of the system by which defendants determine whether to release prisoners on parole. Defendants move to dismiss two of plaintiffs' claims: plaintiffs' eighth claim, alleging that certain provisions of Proposition 9 passed in 2008 violate the Ex Post Facto and Substantive Due Process clauses; and plaintiffs' ninth claim, alleging that Proposition 89 passed in 1988 violates the Ex Post Facto clause. This order concerns the motion to dismiss only

1

insofar as it pertains to the ninth claim. A separate order, filed concurrently, discusses the motion to dismiss as it applies to the eighth claim. The court decides the issue on the papers and after oral argument. For the reasons stated below, the motion to dismiss is denied as to the ninth claim.

## I. BACKGROUND

Prior to November 1988, California's Board of Prison Terms (now the Board of Parole Hearings) made final decisions as to whether prisoners were to be released on parole. Plaintiffs allege that at that time, "the Board found approximately ten percent of life prisoners suitable for parole at their initial parole suitability hearing and approximately fifteen percent of life prisoners suitable for parole at subsequent hearings." Fourth Amended and Supplemental Corrected Complaint ("FAC") ¶ 87. Plaintiffs do not specify whether this fifteen percent figure applies to life prisoners ever found suitable for parole, or prisoners found suitable at each subsequent suitability hearing.

In November of 1988, the California electorate passed Proposition 88, which added Section 8(b) to Article V of the California Constitution. See also Cal. Penal Code §§ 3041.1, 3041.2. This constitutional provision authorizes the Governor to affirm, modify, or reverse the Board's decisions with respect to prisoners convicted of murder. The Governor's decision is to be based on the same criteria considered by the Board, as provided in Cal. Pen. Code § 3041.

Plaintiffs allege that the practical effect of this provision

has been to increase the length of confinement for prisoners, thereby violating the Ex Post Facto Clause of the United States Constitution. The Governor's power of review, it is alleged, has routinely been used to reverse the Board's decisions finding prisoners suitable for parole, but never to reverse a determination that a prisoner was unsuitable for parole. FAC ¶ 89. Plaintiffs allege that this practice directly prolongs imprisonment for the prisoners whose suitability determinations are reversed. This practice has also allegedly caused the Board to adopt a more conservative approach to determining suitability in its own determinations, thereby further indirectly prolonging the imprisonment of prisoners who would have been found suitable for parole by the Board before the Governor's practice influenced the Board's policy.

## II. STANDARD FOR A 12(b)(6) MOTION TO DISMISS

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted). To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint," neither

legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

### III. ANALYSIS

Plaintiffs allege that Proposition 89, adopted in 1988, which provided the Governor with the power to review the Board's parole decisions, violated the Ex Post Facto clause.

4

The court discusses the cases interpreting the Ex Post Facto clause in greater detail in the concurrently filed order on plaintiff's challenge to Proposition 9. "The controlling inquiry . . . [is] whether retroactive application of the change . . . created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Garner v. Jones, 529 U.S. 244, 250 (2000) (quoting California Dept. of Corrections v. Morales, 514 U.S. 499, 509 (1995)). A "sufficient" risk is one that is "significant," Garner, 529 U.S. at 255, and not "speculative and attenuated," Morales, 514 U.S. at 509, 514.

Garner held that a law may pose a sufficient risk either "by its own terms" or where "the rule's practical implementation . . . will result in a longer period of incarceration than under the old rule." 529 U.S. at 255. Thus, an Ex Post Facto challenge may either be facial or as applied.

The Ninth Circuit has previously considered and rejected an Ex Post Facto challenge to Article V section 8(b). Johnson v. Gomez, 92 F.3d 964, 968 (9th Cir. 1996). In Gomez, the plaintiff had been found suitable for parole by the Board, but this decision was reversed by the Governor. Id. at 965. The Ninth Circuit held that "the law itself is neutral inasmuch as it gives the governor power to either affirm or reverse [the Board's] granting or denial of parole. Moreover, the governor must use the same criteria as the [Board]." Id. at 967. The court held that the challenged provision was effectively a "procedural" change, which "simply removes final parole decisionmaking authority from the [Board] and

places it in the hands of the governor" Id. Even though the governor had reversed the Board's decision in the particular case under consideration, the Ninth Circuit held that it could not conclude that the effect of granting final review to the governor had prolonged plaintiff's sentence. "[B]ecause the [Board's] parole decision is not final until after the expiration of the thirty-day gubernatorial review period" under the system enacted by the amendment, "it cannot be said with certainty that the [Board] would have granted Johnson parole had it possessed the final review authority." Id. The court denied plaintiff's claim on this ground. Id.[1]

---

[1] Gomez went on to note that in order to show an Ex Post Facto violation, the plaintiff would have to show with "assurance" or "certainty" that retroactive application of the challenged law would result "in an actual increase in punishment." Id. at 968. Similarly, the court noted that in a prior Ninth Circuit case finding that a change in an Oregon law relating to parolees' release dates violated the Ex Post Facto clause as applied to a specific class of prisoners, "the sentence increase for [that] certain class of prisoners was a mathematical certainty." Id. (citing Nulph v. Faatz, 27 F.3d 451, 456 (9th Cir. 1994) (per curiam)).
   Garner was decided after Gomez. Insofar as Gomez held that only a "certainty" of increased punishment violated the Ex Post Facto clause, this holding was overruled by Garner's holding that a "significant risk" of prolonged confinement is prohibited. Seizing on this issue, plaintiffs in another case in this district argued that Gomez is therefore no longer binding. Marquez v. Rawers, No. CV-F-03-6508, 2008 U.S. Dist. LEXIS 20109 (E.D. Cal. Mar. 14, 2008) (Wagner, J.). The court in Marquez rejected this argument, noting that Gomez used these terms after having already concluding that the law's neutrality precluded finding an Ex Post Facto violation. Id. at *23-24. In this case, this court need not express an opinion as to whether Marquez was correctly decided, other than to note that Marquez did not clearly concern an as-applied challenge to Art. V § 8(b), and that regardless of the standard applied in Gomez, "significant risk," rather than "certainty," is the measure of an Ex Post Facto violation.

Defendants argue that Gomez established that Art. V, § 8(b) was a procedural change, and that procedural changes cannot amount to Ex Post Facto violations. See Mosley v. Oroski, No. C05-4260, 2007 U.S. Dist. LEXIS 35936 at *19 (N.D. Cal. Apr. 27, 2007) (Henderson, J.) (adopting this view without citation to Morales or Garner). Both Morales and Garner stated that not every procedural change or change in the exercise of discretion would violate the Ex Post Facto clause. For example, Morales held that "changes to the membership of the Board . . . . might create some speculative, attenuated risk of affecting a prisoner's actual term of confinement by making it more difficult for him to make a case for early release, but that fact alone cannot end the matter for Ex Post Facto purposes." 514 U.S. at 508-09. Garner noted that "where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and exercised," such that the Ex Post Facto clause is not violated when pre-existing discretion is exercised in a new way. 529 U.S. at 253.

Both cases, however, also recognized that such changes *could* have the effect of retroactively increasing punishment, and neither established a blanket exemption for such changes. Garner held that "[t]he presence of discretion does not displace the protections of the Ex Post Facto Clause." 529 U.S. at 253. Whether any change violates the clause "*must* be a matter of 'degree.'" Morales, 514 U.S. at 509 (quoting Beazell v. Ohio, 269 U.S. 167, 171 (1925)) (emphasis in original). Even a facially neutral procedural change

7

or grant of discretion may be rooted in, and effectuate, legislative disfavor of certain persons. Garner, 529 U.S. at 253.

Garner resolved this issue by providing for both facial and as applied Ex Post Facto challenges. As noted above, Garner held that

> When the rule does not by its own terms show a significant risk, the [challenger] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.

Garner, 529 U.S. at 255. Thus, a court will not enjoin enforcement of a neutral change--such as Art. V, § 8(b)--merely because of the possibility that the change may disadvantage prisoners. However, prisoners may seek to demonstrate that the practical effect of a law is to increase punishment.

Gomez was decided prior to Garner, and Gomez did not specifically use language recognizing a distinction between facial and as applied challenges. The reasoning of the case, however, clearly implicates a facial challenge. The Ninth Circuit based its holding (to the extent that the holding was consistent with Garner) on the law's neutrality; thus, the court reviewed Proposition 89 "by its own terms." 92 F.3d at 967.

Here, plaintiffs specify that they are challenging the law's "practical implementation." For example, plaintiffs concede that the grant of discretion is facially neutral, allowing the Governor

8

to reverse both grants and denials of parole. Plaintiffs argue, however, that over the past two decades, every governor has uniformly exercised this discretion in a one-sided manner. Gomez, interpreted in light of Garner, does not preclude plaintiffs from bringing a challenge of this sort. See, e.g., Seiler v. Brown, 2007 U.S. Dist. LEXIS 66412 (N.D. Cal. Aug. 30, 2007) (Gomez permits an as-applied challenge to Proposition 89, but plaintiffs in that case failed on the merits of such a challenge).

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss, Dkt. No. 187, is DENIED as to plaintiffs' ninth claim. As explained in the court's concurrently-filed order, defendants' motion to dismiss is GRANTED IN PART as to plaintiffs' eighth claim, which challenges Proposition 9 of 2008.

IT IS SO ORDERED.

DATED: February 4, 2010.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT