UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD M. GILMAN, et al.,

           Plaintiffs,

    v.

J. DAVIS., et al.,

           Defendants.
_____/

NO. CIV. S-05-830 LKK/GGH

O R D E R

On February 4, 2010, this court entered an order enjoining defendants from applying certain provisions of the "Victims' Bill of Rights Act of 2008: Marsy's Law," enacted by the California electorate as Proposition 9 of 2008. Gilman v. Davis, ___ F. Supp. 2d. ___, 2010 WL 519808 (E.D. Cal. Feb. 4, 2010). Although the court had previously granted plaintiffs' motion for class certification, certification is on appeal. As a result, and with the parties' agreement, the motion for a preliminary injunction was evaluated and granted only with regard to the named plaintiffs.

Defendants move to stay this injunction pending an appeal. In addition, numerous individual state prisoners have moved to

1

intervene in this action, seeking to have the injunction extended to them. The court resolves both issues on the papers and after oral argument from the represented parties.

### I. Background

The facts underlying "Marsy's Law" are fully set forth in this court's February 4, 2010 order. In summary, when California prisoners have served the portion of their sentence that renders them "eligible" for parole, the California Board of Parole Hearings holds a hearing to determine whether the prisoner is "suitable" for parole. If the prisoner is found unsuitable, the hearing is "deferred" for a number of years. The provisions of Marsy's Law at issue here concern these deferrals. The law amended California Penal Code section 3041.5, extending the minimum and maximum deferral periods, adopting a presumption of maximum rather than minimum deferrals, and codifying, in part, procedures by which a deferred suitability hearing may be "advanced" to a time before its scheduled date.

The challenge to Marsy's Law was added in plaintiffs' Fourth Amended and Supplemented Complaint, which was accepted by the court on March 4, 2009. This complaint names eight plaintiffs. The court concurrently granted plaintiffs' motion for class certification. Defendants petitioned for permission to file an interlocutory appeal of the class certification decision, and the Ninth Circuit agreed to hear this appeal.

Defendants and named plaintiffs have taken the position that until the class certification appeal is resolved, this case should

proceed only as to the named plaintiffs. Accordingly, the order granting the preliminary injunction discussed and applied to only the named plaintiffs. Numerous additional prisoners, however, have moved to intervene in this action. Two such motions were filed while the motion for a preliminary injunction was under submission. Motions to Intervene by Michael L. Hughes and Raymond Scott, Filed July 16, 2009 (Dkt. Nos. 200, 201). At defendants' request, and with plaintiffs' counsel's consent, the court stayed the motions to intervene, but otherwise held that a stay was unwarranted. Order of October 15, 2009, 2009 WL 3365858, 2009 U.S. Dist. LEXIS 101937. When the court subsequently granted the motion for a preliminary injunction, the court noted the "virtual certainty that the result of [the] grant . . . will be a flood of parallel filings by other prisoners." Order of February 4, 2010 at 14 n.9. In the two months since that order, ten more prisoners have sought to join or intervene in this action. (Dkt. Nos. 222-25, 227, 233, 241, 244, 251, 253). Defendants and named plaintiffs continue to contend that these motions should be stayed pending resolution of the class certification question.

As to the eight named plaintiffs, five of them are no longer in custody. As summarized by plaintiffs, "Masoner was released by court order; Brown obtained a court order for a new Governor's review and the Governor declined to review the matter, resulting in Brown's release; Lewis and Marquez were released through the parole board grants and Governor decline to reviews; and Stewart died just after the Governor reversed a grant of parole he had

achieved."

Of the three named plaintiffs who remain in custody, plaintiff Gilman had a parole hearing in 2009 and received a three-year deferral, which the Board said was the deferral period it would have selected even under the old law. Plaintiffs contend that the injunction therefore will not affect Gilman until, at the earliest, some time after his scheduled 2012 parole hearing. The two remaining named plaintiffs are Olson and Fowler, who have suitability hearing dates presently set for June and July 2010, respectively. If these plaintiffs are denied parole at these hearings, the injunction will determine the procedures used to determine their next deferrals.

## II. Stay of The Preliminary Injunction

**A.  Standard for Issuing a Stay**

The court has the inherent power to stay proceedings in cases over which it presides. Rohan ex rel. Gates v. Woodford, 334 F.3d 803, 817 (9th Cir. 2003); Landis v. North American Company, 299 U.S. 248, 254 (1936). In determining whether to issue a stay pending an interlocutory appeal, courts must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987). In applying these factors, the Ninth Circuit has applied a "sliding scale" to

4

evaluation of the first three factors, which is defined by its two extremes. <u>Golden Gate Rest. Ass'n v. City of San Francisco</u>, 512 F.3d 1112, 1116 (9th Cir. 2008). At one end, a party seeking a stay may show either "a strong likelihood of success on the merits" of the appeal together with "the possibility of irreparable injury" in the absence of a stay. <u>Id.</u> (quoting <u>Natural Res. Def. Council, Inc. v. Winter</u>, 502 F.3d 859, 862 (9th Cir. 2007)). At the other end, the moving party may show that "serious legal questions are raised and that the balance of hardships tips sharply in its favor." <u>Id.</u> (quoting <u>Lopez v. Heckler</u>, 713 F.2d 1432, 1435 (9th Cir. 1983)).

This standard substantially overlaps the standard for issuance of a preliminary injunction. <u>Nken v. Holder</u>, ___ U.S. ___, ___ 129 S. Ct. 1749, 1761 (2009) (citing <u>Winter v. Natural Res. Def. Council</u>, 555 U.S. ___, ___, 129 S. Ct. 365, 370 (2008)); <u>see also Golden Gate</u>, 512 F.3d at 1115. In the preliminary injunction context, the Supreme Court has recently limited the Ninth Circuit's sliding scale approach, holding that a plaintiff must show that "he is likely to suffer irreparable harm in the absence of preliminary relief" regardless of the likelihood of success on the merits. <u>Winter</u>, 129 S. Ct. at 374, <u>rev'g</u> 502 F.3d 859 (9th Cir. 2007). The Supreme Court's decision in <u>Winter</u> did not limit the use of the sliding scale approach in the stay context, however. The Court has held that the two standards are similar "not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the

5

1  legality of that action has been conclusively determined." <u>Nken</u>,
2  129 S. Ct. at 1761.  Thus, <u>Winter</u> did not implicitly abrogate
3  <u>Golden Gate</u>, and <u>Golden Gate</u> remains the controlling authority.

**B.   Analysis of The Motion to Stay The Preliminary Injunction**

The court briefly summarizes its conclusions here, explaining their basis below.  Defendants have raised "serious legals questions," but that defendants have not shown a likelihood of success on appeal of the injunction as it applies to plaintiffs Olson and Fowler.  Plaintiffs apparently concede, however, that plaintiff Gilman can no longer show a likelihood of irreparable injury.  This concession indicates that defendants are likely to succeed in showing that the injunction need not extend to Gilman.

As to the remaining factors, defendants have shown a possibility defendants have shown a possibility of injury, but not that the balance of hardships tilts in their favor.  A minimal showing as to both the merits and irreparable injury is inadequate under <u>Golden Gate</u>.  Accordingly, the court does not stay the injunction as to Olson and Fowler, but the court does stay the injunction as to Gilman.

As to defendants' alternative request for a temporary stay that would allow defendants to request further relief from the Ninth Circuit, defendants have not identified any hardship they will suffer prior to June 2010.  Defendants may seek a stay from the Ninth Circuit prior to that time.

////

////

### 1. **Defendant's Likelihood of Success on The Merits on Appeal**

Defendants' likelihood of success on appeal is obviously tied to the standards that will be used in evaluating the appeal. This court's grant of a preliminary injunction will be reviewed under a two step test. California Pharmacists Assc. v. Maxwell-Jolly, ___ F.3d ___, 2010 WL 715401 *3 (9th Cir. Mar. 3, 2010), Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1157 (9th Cir. 2007). "First, the appellate court must 'determine de novo whether the trial court identified the correct legal rule to apply to the relief requested.'" California Pharmacists Assc., ___ F.3d at ___, 2010 WL 715401 at *3 (quoting United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). If this court identified the proper standard, the reviewing court will then determine whether this court's application thereof was "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Hinkson, 585 F.3d at 1262 (quoting Anderson v. City of Bessemer, 470 U.S. 564, 577 (1985)).[1]

Defendants agree that this court correctly identified the standard for a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is [1] likely to

---

[1] The appellate courts have referred to this test as an abuse of discretion standard, explaining that under the first step, "'[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . .'" Hinkson, 585 F.3d at 1262 (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)). Regardless of the nomenclature, it is clear that the first step is a de novo review.

7

1  succeed on the merits, [2] that he is likely to suffer irreparable
2  harm in the absence of preliminary relief, [3] that the balance of
3  equities tips in his favor, and [4] that an injunction is in the
4  public interest." <u>Am. Trucking Ass'ns</u>
5  <u>v. City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir. 2009)
6  (quoting <u>Winter</u>, 129 S.Ct. at 374).  Defendants base their appeal,
7  and consequently their motion for the stay, on the argument that
8  this court selected the incorrect legal standards regarding the
9  merits of plaintiffs' Ex Post Facto claims, and on the argument
10 that this court's analysis of the four <u>Winter</u> factors was not
11 supported by the record.

12            **a.   Legal Standards for Ex Post Facto Claims**

13     A law violates the Ex Post Facto clause when it imposes a
14 "significant" risk of increased punishment. <u>Garner v. Jones</u>, 529
15 U.S. 244, 255 (2000), <u>see also</u> <u>California Dept. of</u>
16 <u>Corrections v. Morales</u>, 514 U.S. 499, 509 (1995).  Defendants argue
17 that this court made two legal errors in interpreting this rule,
18 specifically, that this court adopted too low of a standard of
19 significance and that this court erred in analyzing significance
20 without considering individual prisoners' factual circumstances.
21     As to the first purported error, defendants contend that as
22 the Ninth Circuit has interpreted <u>Garner</u> and <u>Morales</u>, a risk is not
23 "significant" unless it can be "said with assurance" that a
24 prisoner would have received a lesser punishment under the prior
25 scheme.  This "said with assurance" language was first used by the
26 Supreme Court in <u>Dobbert v. Florida</u>, 432 U.S. 282, 294 (1977).  The

8

1  Ninth Circuit quoted Dobbert in Nulph v. Faatz, 27 F.3d 451, 456
2  (9th Cir. 1994), and then quoted Nulph in Brown v. Palmateer, 379
3  F.3d 1089, 1095 (9th Cir. 2004).  None of these cases adopted the
4  proposition defendants attribute to them.  As explained in the
5  order granting a preliminary injunction, both Brown and Nulph held
6  that a law violates the Ex Post Facto clause where "'by its own
7  terms [it] show[s] a significant risk'" such that it creates "a
8  disadvantage that affects prisoners in general."  Brown, 379 F.3d
9  at 1095 (quoting Garner, 529 U.S. at 255); see also Order at 25,
10 2010 WL 519808 at *11.  Brown and Nulph used the "said with
11 assurance" language to refer to an alternative method of showing
12 an Ex Post Facto violation: where a law is not generally
13 detrimental, a challenger may attempt to show that it has
14 nonetheless increased his particular punishment.  Brown, 379 F.3d
15 at 1095 ("in absence of a disadvantage that affects prisoners in
16 general, an individual will satisfy the detriment requirement if
17 he shows that it can be said with assurance that he would have
18 received less severe punishment under the prior scheme.") (internal
19 quotations and citations omitted).  To the extent that the "said
20 with assurance" standard is higher than the "significant risk"
21 standard as applied by this court, the higher standard applies only
22 in this latter context.
23     The Brown rule presumably reflects the difficulty in
24 demonstrating an Ex Post Facto violation.  See Order at 24, 2010
25 WL 519808, at *12 (citing Garner, 529 U.S. at 260 n.1 (Souter, J.,
26 joined by Stevens and Ginsburg, J.J., dissenting)).  A plaintiff

9

may respond to this difficulty by showing an effect on a group or by showing a more drastic effect on a specific individual. This legal analysis will admittedly be reviewed <u>de novo</u>. Defendants nonetheless have not shown that reversal is likely on this ground.

Defendants' second legal argument is closely related. As explained in the preliminary injunction order, "[n]either the Supreme Court nor the Ninth Circuit have clearly addressed whether a plaintiff must show that he personally faces a significant risk of prolonged punishment." Order at 23, 2010 WL 519808, at *10. In light of the above holdings in <u>Brown</u> and <u>Nulph</u>, this court held that the magnitude of risk imposed by a change could be measured by the "change's effects on individuals serving a particular sentence or convicted of a particular offense, but not evaluation of other facts or circumstances specific to individual challengers," declining to follow the Seventh Circuit's contrary decision in <u>Glascoe v. Bezy</u>, 421 F.3d 543, 547-548 (7th Cir. 2005).[2] Order at 24-25, 2010 WL 519808 at *11; <u>see also Weaver v. Graham</u>, 450 U.S. 24, 33 (1981), <u>overruled on other grounds by</u> <u>Collins v. Youngblood</u>, 497 U.S. 37, 41 (1990). Defendants argue that for purposes of the Ex Post Facto merits inquiry the court should have followed <u>Glascoe</u> and looked to individual plaintiffs' factual circumstances.

In light of the uncertainty on this issue, there is some

---

[2] Although the court held that individual factors need not be considered on the Ex Post Facto merits analysis, the court considered these facts as part of the preliminary injunction irreparable injury analysis. Order at 40-41.

10

likelihood that the Ninth Circuit will adopt defendants' position. If the court had rested its decision solely on the contrary legal conclusion, this would demonstrate an ultimate likelihood of success on appeal. The court's prior order, however, alternatively considered and applied the rule advocated by defendants and adopted by the Seventh Circuit in Glascoe. Order at 25 n.11. This court's application of the Glascoe rule will be reviewed on an abuse of discretion standard, rather than de novo. Accordingly, the court's remaining analysis in this motion assumes that the Glascoe rule applies.

### b. Application of The Correctly-Identified Legal Principles

Defendants contend that this court erred in every aspect of its application of the governing law. Specifically, defendants argue that the facts did not support: (1) a finding of significant risk as to the named plaintiffs as part of the merits of the Ex Post Facto claim, (2) a finding of likely irreparable injury under Winter, (3) the balancing of the hardships, and (4) a finding that the public interest did not weigh against issuance of an injunction. To succeed on the appeal, defendants will need to show that this court's resolution of these issues was clearly erroneous or an abuse of discretion. For the reasons stated in the prior order, defendants are unlikely to show that this court erred in weighing the public interest or in assessing the hardship an injunction would impose upon defendants.

Defendants' argument regarding the assessment of risk to or

injury of the named plaintiffs warrants further discussion.[3] Defendants argue that plaintiffs failed to make an individualized showing of risk because plaintiffs only provided evidence regarding named plaintiff Masoner, and thus, that no *evidence* supports extending the injunction to other plaintiffs. The court previously recognized this difficulty. Order at 41. The court held that it could rely on the apparently undisputed allegations, which included the dates of parole hearings and length of deferrals. Although plaintiffs would have been better served by providing declarations or exhibits to support these allegations, at the preliminary injunction stage facts need not be supported by admissible evidence. Cobell v. Norton, 391 F.3d 251, 261, 364 U.S. App. D.C. 2 (D.C. Cir. 2004), Sierra Club, Lone Star Chapter v. FDIC, 992 F.2d 545, 551 (5th Cir. 1993), see also 11A Wright, Miller and Marcus, Fed. Practice & Procedure Civ. 2d. § 2949 (noting that Fed. R. Civ. P. 65, unlike Fed. R. Civ. P. 56, does not require that the motion be supported by affidavits setting out facts that would be admissible as evidence), South Yuba River Citizens League v. Nat'l Marine Fisheries Serv., 257 F.R.D. 607, 615 (E.D. Cal. 2009).[4] As

---

[3] Defendants have not challenged this court's conclusion that a "likelihood" of injury requires no greater probability than a "sufficient risk" of injury. Order at 39-40 (citing Garner, 529 U.S. at 255 and Winter, ___ U.S. at ___, 129 S. Ct. at 375).

[4] At oral argument on this motion, the court reiterated concern over this issue. The court noted that defendants had not challenged the factual allegations regarding the length and dates of the named plaintiffs' referrals, and asked defendants whether there were disputes regarding these facts. Defendants disputed the inferences plaintiffs sought to draw from these facts--i.e., whether plaintiffs were likely to be granted parole soon--but not

12

explained at oral argument, such reliance appears proper where defendants do not suggest that the facts are in dispute and where the evidence necessary to confirm or refute these allegations is firmly within defendants' control.

Moving from the form of the facts to their substance, the parties agree that the issue is the risk of injury to the three named plaintiffs who remain in custody. Because the court assumes for purposes of this motion that an individualized showing is required, the facts pertaining to other plaintiffs are only indirectly relevant. Beginning with named plaintiff Gilman, plaintiffs concede that as of Gilman's 2009 parole hearing (which occurred after the operative complaint was filed), Gilman can no longer show an immediate likelihood of irreparable injury. At the 2009 hearing, the Board denied parole and entered a three year deferral. The Board explained that this deferral was adopted under Marsy's law, but that it would also have entered a three year deferral under the former rule. Plaintiffs concede that in light of this, Marsy's law does not present an immediate risk of prolonging Gilman's incarceration.[5]

---

the underlying objective facts. Defendants' position is unclear, however, because defendants' answer (filed after the injunction was granted) states that a subset of these facts are in dispute.

Also at oral argument, plaintiffs represented that evidence supporting plaintiffs' factual allegations regarding Olson and Fowler had been submitted in connection with defendants' motion to dismiss. The court has not located any such evidence in the record.

[5] Insofar as these facts were not before the court on the initial motion, it is somewhat anomalous to consider them now. Neither party has discussed this issue. The court nonetheless

13

Plaintiff Olson has repeatedly received minimum, one year deferrals. She has also previously been found suitable for parole by the Board of Parole Hearings, only to have the Governor reverse her grant of parole. Defendants correctly note that predicting Marsy's Law's requires numerous contingent, "if-then" statements. This observation, however, does not itself defeat a finding of likely irreparable injury.

Olson's next scheduled parole hearing is for June of 2010, roughly three months from now.[6] If Olson is granted parole at that time, no injunction will be necessary to prevent injury to her, and Marsy's law will not have prolonged her confinement.

If she is denied parole at this hearing and the injunction remains in force, it is likely that she will receive a one year deferral, as demonstrated by the recent history of her deferrals. Each one year deferral suggests that the Board found a reasonable chance that Olson would be suitable for parole in one year. Accordingly, relying on the Board's own assessment of Olson, it is likely that Olson will be found unsuitable for parole in 2010, only to then be found suitable for parole in 2011 or 2012.

If, on the other hand, Olson is denied parole in 2010 and the injunction is stayed, it is unlikely that Olson will receive a

---

assumes that in light of plaintiffs' apparent concession the Ninth Circuit may decide to consider these facts in evaluating this court's application of the law to Gilman.

[6] Again, the court notes that the specific date was not before the court on the initial motion. Nonetheless, both parties' briefing refers to this date, and the use of a particular date makes discussion of possible outcomes clearer.

14

further suitability hearing before 2013, for the reasons stated in the prior order. For the reasons just stated, this delay is likely to increase Olson's confinement.[7]

In light of the history of Olson's parole hearings and the pattern of behavior demonstrated by the Board of Parole Hearings and the Governor's treatment of other named plaintiffs, the court reaffirms that Olson has demonstrated a significant risk (under Garner) and a likelihood (under Winter) that Marsy's law will prolong her confinement. This determination is an exercise of the court's discretion. Defendants have not shown that, on review, they are likely to succeed in demonstrating that this conclusion is "illogical," "implausible," or without "support in inferences that may be drawn from the facts in the record" and therefore an abuse of discretion. Anderson, 470 U.S. at 577, see also Hinkson, 585 F.3d at 1262.

Fowler's history is similar. Fowler became eligible for parole in 1993, and plaintiffs allege that he always received one

---

[7] Plaintiffs also argue that Marsy's law may prolong Olson's confinement even if Olson is not granted parole at any such earlier hearings. Plaintiffs assert that the raw number of hearings is a factor in receiving parole separate from any change in circumstance or the passage of years. Thus, plaintiffs assert that even if Olson receives annual hearings but is denied parole at 2010, 2011, and 2012 hearings, depriving her of the 2011 and 2012 hearings will nonetheless risk prolonging her incarceration, because the 2011 and 2012 hearings would make it more likely that she would receive parole in 2013 (the earliest scheduled deferral she could receive under Marsy's law). Unlike plaintiffs' allegations regarding the raw facts of individual plaintiffs' histories, which are easily verified or refuted by defendant, this allegation is not one that the court may credit without any support. The court does not decide whether this allegation, if proven, would support plaintiffs' position.

15

or two year deferrals, that he had "recently" received only one year deferrals, and that while the Board has never attempted to grant him parole, in 2007 the hearing initially resulted in a split decision, i.e., a situation in which one Board member concluded that parole was proper. In the briefing on this motion, the parties indicate that Fowler's next suitability hearing is set for July of 2010. These facts, like those pertaining to Olson, suffice to show a significant risk that if parole is denied at this hearing, application of Marsy's law would significantly risk prolonging Fowler's confinement.

For these reasons, defendants are not likely to succeed in showing that this court erred in its application of the correct legal principles to the facts of this case insofar as they pertain to plaintiffs Olson and Fowler. Plaintiffs concede, however, that defendants have shown a likelihood of success on the merits as to whether plaintiff Gilman is likely to suffer injury prior to the final resolution of this suit.

**2.  Remaining Stay Factors**

Defendants' arguments regarding the remaining stay factors largely repeat the arguments raised in opposition to the motion for a preliminary injunction. Here, defendants add the argument that the injunction forces defendants to maintain two separate schemes for setting parole hearings and that this results in added unquantified administrative expense. The court agrees that such expense is likely. The court therefore acknowledges this administrative overhead, as well as the cost of holding additional

1 hearings, as an injury to defendants to be considered in the
2 balance of hardships.
3     In granting the preliminary injunction, the court considered
4 the likelihood that injury would result prior to final judgment in
5 this case.  For purposes of the present motion, the question is
6 whether injury will result prior to a decision from the Ninth
7 Circuit.
8     As this case presently stands, it appears that neither party
9 will be injured prior to the June and July 2010 suitability
10 hearings set for plaintiffs Olson and Fowler.  The injunction will
11 not compel defendants to schedule or conduct any additional
12 hearings prior to that time.  Plaintiffs do not contend that they
13 will be injured before then.  The parties further implicitly agree
14 that if both Olson and Fowler are paroled at that time, there will
15 be no further likely injury to defendants or named plaintiffs.
16     The court therefore turns to what injuries and hardships the
17 parties will bear if either Olson or Fowler is denied parole this
18 summer.  Neither party has estimated when the Ninth Circuit will
19 resolve the instant appeal.  Insofar as defendants bear the burden
20 of showing entitlement to a stay, the court does not assume that
21 the Ninth Circuit will resolve the issue before Olson and Fowler
22 would potentially receive their next deferred hearings under the
23 former rule, i.e., within the year.  As such, the court assumes
24 that the injunction, to the extent that it has any effect
25 whatsoever, will cause defendants to schedule and conduct
26 additional parole hearings in 2011.  For the reasons stated above,

17

the court concludes that there is a sufficient likelihood that Olson and Fowler would be released at such hearings. Accordingly, the array (if not timing) of hardships here is the same as that considered in the prior order, and the court again concludes that the monetary cost to defendants is outweighed by the plaintiffs' risk of prolonged unjustified incarceration.

Defendants argue that they will suffer additional hardship if the injunction is extended to the entire class, or to individual intervenors. Defendants provide no authority for the proposition that the instant injunction may be stayed because of injuries that might result from some possible, as yet non-existent injunction. The court will consider these arguments if and when it considers broadening the injunction.

As previously acknowledged, this is a complex case in which defendants have raised serious legal questions. Defendants have not, however, shown "a *strong* likelihood of success on the merits" of their appeal. Golden Gate Rest. Ass'n, 512 F.3d at 1116. Nor have defendants shown that "the balance of hardships tips sharply in [their] favor." Id. In the long term, the injury visited on defendants by the injunction is outweighed by the injury likely to be visited on plaintiffs' by the injunctions' absence. In the short term, defendants do not need a temporary stay from this court, because defendants have not identified any hardship that they will suffer while waiting for the Ninth Circuit to review this court's denial of a stay. Any such temporary stay would inevitably expire prior to Olson's June 2010 parole suitability hearing, and

as such, a temporary stay would expire before the injunction visited any injury upon defendants.

### III. Motions to Intervene

Defendants separately argue that to motions to intervene and for permissive joinder should be stayed. Plaintiffs state that such a stay is proper pending resolution of the appeal of class certification. For the reasons stated in the Order of October 15, 2009, the court agrees. This stay extends solely to resolution of the appeal of class certification--if this appeal is resolved prior to the appeal of the preliminary injunction, the court will revisit the issue at that time.

### IV. Conclusion

For the reasons stated above, the court ORDERS as follows:

1. The order of February 4, 2010, granting a preliminary an injunction (Dkt. No. 217) is STAYED SOLELY AS TO PLAINTIFF GILMAN. The injunction remains in effect as to plaintiffs OLSON and FOWLER.
2. All motions to intervene and/or for permissive joinder are STAYED pending resolution of the appeal of class certification. These include:
   a. Dkt. No. 222 (Stephen Liebb)
   b. Dkt. No. 223 (Edward S. Renteria)
   c. Dkt. No. 224 (David Monroe)
   d. Dkt. No. 225 (Felix Lucero)
   e. Dkt. No. 227 (Noel Valdivia, Sr.)
   f. Dkt. No. 233 (Clement Brown)

```
1           g.   Dkt. No. 241 (Richard Gonzales)
2           h.   Dkt. No. 244 (Reginald Cooper)
3           i.   Dkt. No. 251 (Kenneth Scott Rodgers)
4           j.   Dkt. No. 253 (Keith Augustine)
5     IT IS SO ORDERED.
6     DATED: April 7, 2010.
```

_/s/ Lawrence K. Karlton_
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT