DANIEL J. BRODERICK, CSB #89424
Federal Defender
MONICA KNOX, CSB #84555
DAVID M. PORTER, CSB #127024
Assistant Federal Defenders
801 I Street, 3rd Floor
Sacramento, CA  95814
Telephone:  (916) 498-5700
monica_knox@fd.org
david_porter@fd.org

CARTER C. WHITE, CSB # 164149
U.C. Davis Civil Rights Clinic
One Shields Avenue, Building TB-30
Davis, CA  95616-8821
Telephone:  (530) 752-5440
ccwhite@ucdavis.edu

Attorneys for Plaintiffs
RICHARD M. GILMAN, et al.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD M. GILMAN, et al.,** | No. Civ. S 05-830 LKK GGH |
| Plaintiffs, | **NOTICE AND MOTION FOR PRELIMINARY INJUNCTION TO ENTIRE CLASS** |
| v. | |
| **ARNOLD SCHWARZENEGGER, et al.,** | Date: Monday, December 20, 2010<br>Time: 10:00 a.m.<br>Court: 4 |
| Defendants. | Judge: Hon. LAWRENCE K. KARLTON |

PLEASE TAKE NOTICE that on Monday, December 20, 2010, in Courtroom 4, before the Honorable Lawrence K. Karlton, United States Chief Judge Emeritus, at 10:00 a.m., or as soon as the matter may thereafter be heard, Plaintiffs, RICHARD M. GILMAN et al., by and through their attorneys, will and hereby do move this Court for a preliminary injunction relating to the deferral periods enacted by Proposition 9 as they relate to the certified class.

This notice is based on the attached memorandum of points and authorities, the attached exhibits, the fourth amended/supplemental complaint, and evidence and argument to be presented at a scheduled hearing.

Dated: November 18, 2010

                                      Respectfully submitted,

                                      DANIEL J. BRODERICK
                                      Federal Defender

                                      /s/ *Monica Knox*
                                      MONICA KNOX
                                      DAVID PORTER
                                      Assistant Federal Defenders
                                      CARTER WHITE
                                      U.C. Davis Civil Rights Clinic

                                      Attorneys for Plaintiffs

DANIEL J. BRODERICK, CSB #89424
Federal Defender
MONICA KNOX, CSB #84555
DAVID M. PORTER, CSB #127024
Assistant Federal Defenders
801 I Street, 3rd Floor
Sacramento, CA  95814
Telephone:  (916) 498-5700
monica_knox@fd.org
david_porter@fd.org

CARTER C. WHITE, CSB # 164149
U.C. Davis Civil Rights Clinic
One Shields Avenue, Building TB-30
Davis, CA  95616-8821
Telephone:  (530) 752-5440
ccwhite@ucdavis.edu

Attorneys for Plaintiffs
RICHARD M. GILMAN, et al.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD M. GILMAN, et al.,** | No. Civ. S 05-830 LKK GGH |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |
| v. | |
| **ARNOLD SCHWARZENEGGER, et al.,** | |
| Defendants. | |

**Introduction**

This matter is a class action lawsuit in which California life prisoners make various challenges to the laws and procedures governing the parole process.  One of the challenges is a claim that the enhanced deferral periods enacted by Proposition 9, passed in November 2008, violate the *Ex Post Facto* Clause.

In February 2010, this Court granted a preliminary injunction as to the Proposition 9 deferral periods; that preliminary injunction was limited to the named plaintiffs because the order granting class certification was pending on Defendants' appeal. (Docket #217.) The class certification order has since been upheld by the Circuit. (2010 WL 2232648, June 3, 2010.) Defendants' appeal of the preliminary injunction is pending decision by the Circuit. (CA 10-15471, argued August 12, 2010.)

Defendants have consistently argued that Proposition 9's provisions lengthening deferral periods do not violate *ex post facto* principles. Defendants contend that the longer deferrals do not create a significant risk of increased custodial terms and that the provision allowing for advancing a prisoner's next parole consideration hearing resolves any concern that custodial terms might be increased.

Because Plaintiffs filed for a preliminary injunction the month after the passage of Proposition 9, there was no evidence regarding how the new deferral periods were or would be implemented. Thus, in granting the preliminary injunction as to the named plaintiffs, this Court relied on allegations in the complaint as well as evidence presented as to James Masoner, a named plaintiff. The Circuit will resolve Defendants' contention on appeal that the record was insufficient to establish a significant risk of increased custodial terms and/or irreparable harm to support the issuance of the preliminary injunction as to the named plaintiffs.

Nevertheless, because it is now almost two years since the implementation of Proposition 9 and Plaintiffs' initial request for a preliminary injunction, there is now evidence that establishes that Masoner's situation was, as Plaintiffs had contended, not atypical and custodial terms have indeed increased. Moreover, there is evidence now that establishes that the provision for the possibility of advanced hearings has done *nothing* to reduce those increased custodial terms because the Board *never* advances a hearing on its own initiative and requests for advanced hearings are *summarily* denied 97 percent of the time.

Now that the class certification order had been upheld by the Circuit, and in light of the evidence that is now available to show that custodial terms have increased, Plaintiffs seek a preliminary injunction as to the new deferral periods relative to the entire class.[1]

**The Proposition 9 Changes**

If a California life prisoner is denied parole at his parole suitability hearing, the parole board sets a period of time the prisoner must wait until he will again be considered for parole; that period is the deferral period. Before Proposition 9, all prisoners found unsuitable for parole were presumptively given a one-year deferral; however, if the parole board found that it was not reasonable to believe the prisoner would be suitable for parole in less time, it could impose up to a five-year deferral.

The amendments effected by Proposition 9 change the old deferral process in at least five significant ways:

- They *raise the minimum* deferral period from one year to three years;
- They *increase the maximum* deferral period from five years to fifteen years;
- They *alter the default* deferral period from one year to fifteen years;
- They *reduce discretion* for the Board to set the deferral period based on case-specific factors, actually *eliminating all discretion* to set a deferral period less than three years; and
- They *shift the burden* from the Board (which had to find it unreasonable to expect the prisoner would be suitable for parole at an earlier time under the old law) onto the prisoner (who now has to convince the Board by "clear and convincing" evidence that he will be suitable for parole in less than fifteen years).

---

[1] Plaintiffs are not moving to expand the preliminary injunction already issued because we rely on new evidence. For that reason, the Court can grant the motion now; there is no jurisdictional impediment posed by the pending appeal regarding the earlier injunction that issued as to the named plaintiffs. The legal issues, of course, remain the same; but Defendants' contentions have always been limited to the sufficiency of the evidence and not the requirements for either a preliminary injunction or a showing of an *ex post facto* violation. Plaintiffs will, however, set forth the legal principles, albeit in abbreviated form in light of this Court's prior ruling.

**Standard for Issuance of a Preliminary Injunction**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resource Defense Council, Inc.*, __ U.S. __, 129 S.Ct. 365, 374. In each case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 376 (quoting *Amoco Production Co. v. Gambell*, 480 U.S. 532, 542 (1987)).

In *Alliance for the Wild Rockies v. Cottrell*, __ F.3d __, 2010 WL 3665149 (9th Cir. 2010)(as amended), the Circuit held that its "serious question" basis for issuing a preliminary injunction survived *Winter*. Thus, an alternative means of obtaining a preliminary injunction is for the moving party to demonstrate: 1) a serious question, 2) the balance of equities tipping sharply in the plaintiff's favor, 3) irreparable harm to plaintiffs if no preliminary injunction issues, and 4) the public interest lies in granting the injunction. *Id.* at *8.

***Ex Post Facto* Principles**

A change in law violates the *Ex Post Facto* Clause if it "makes more burdensome the punishment for a crime after its commission." *Beazell v. Ohio*, 269 U.S. 167, 168-70 (1925). To fall within the *ex post facto* prohibition, the law "must be retrospective - that is, 'it must apply to events occurring before its enactment' - and it 'must disadvantage the offender affected by it,' [citation] by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997).

An *ex post facto* violation does not require a definite showing that the prisoner would have done less time in custody under the old law than he will do under the new law. *Miller v. Florida*, 482 U.S. 423, 432 (1987); *Lindsey v. State of Washington*, 301 U.S. 397, 401-02 (1937). A lost opportunity to serve less time satisfies the second prong of an *ex post facto* violation. *Weaver v. Graham*, 450 U.S. 24, 33-34 (1981) (finding *ex post facto* violation in

change in credit-earning scheme because it reduced prisoners' *opportunity* to shorten their incarceration).

A change in the parole process, even a highly-discretionary parole process, can violate *ex post facto*. *Garner v. Jones*, 529 U.S. 244, 253 (2000). Although not every change will raise *ex post facto* concerns, *see, e.g., California Department of Corrections v. Morales*, 514 U.S. 499 (1995), a change that creates "a sufficient risk of increasing the measure of punishment" will be held to violate the *Ex Post Facto* Clause. *Id.* at 509.

Whether or not a change creates a significant rather than attenuated risk of increased punishment is "a matter of degree." *Id.* Changes can violate the *Ex Post Facto* Clause when the new rules sufficiently circumscribe official discretion even if they do not automatically lead to a more onerous result than under the prior law. *See Miller*, 482 U.S. at 432-33 (finding *ex post facto* violation in change of presumptive sentence although no change in minimum or maximum sentence); *Himes v. Thompson*, 336 F.3d 848, 856 (9th Cir. 2003) (finding *ex post facto* violation in change in parole regulations that resulted in parole board having only two choices [90 days or full term] when it previously had wide discretion [90 days to full term or any period in between]); *see also Weaver*, 450 U.S. at 33-34 (finding *ex post facto* violation in change in credit scheme because it reduced the prisoners' *opportunity* to shorten their time in custody through good conduct).

There is no question that the Proposition 9 changes to the deferral process are retrospective. Thus, whether the changes violate *ex post facto* principles turns on whether the changes create a significant risk of longer custodial terms.

**Significant Risk of Longer Terms Created by Proposition 9 Changes**

This Court has previously found that the lengthier deferral periods enacted by Proposition 9 have created a significant risk of longer terms. *See* February 4, 2010 Order at 26-36. In so holding, the Court relied, in part, on the evidence relating to named plaintiff James Masoner. That evidence showed that Masoner had been receiving one-year deferrals for over a decade, the Board had granted him parole in 2004 and 2007, the Governor reversed

7

those grants, the Board denied him parole in 2008 and imposed a three-year deferral because of Proposition 9, Masoner nevertheless obtained another hearing in 2009 due to a court order and at that hearing he was again found suitable for parole. Thus, although Masoner was suitable for parole in 2009, had it not been for the court-ordered hearing, he would not have gotten to hearing again until late 2011 ... and thus would have done two years of excess custodial time.

Plaintiffs now have evidence that shows that Masoner's situation is not atypical. *In re Rutherford, et al.* is a state class action habeas proceeding in Marin County Superior Court, case number SC135399A. That case involved a challenge to the untimeliness of parole suitability hearings for life prisoners and resulted in a negotiated settlement. (*See* Exhibit 2.) Pursuant to that settlement, counsel for the prisoners receives monthly reports from the parole board. Those reports include information about all the parole hearings held that month that resulted in either grants or denials of parole as well as information about the length of deferrals imposed in cases where parole was denied. Exhibits 3 through 19 are copies of pages provided *Rutherford* counsel by the Board for January 2009 through May 2010. (*See* Exhibit 2.)

Following the passage of Proposition 9 and its implementation by the Board on December 15, 2008, the parties in *Rutherford* stipulated that all prisoners who should have had but did not have their parole consideration hearings prior to December 15, 2008, were entitled to have their parole hearings conducted under the pre-Proposition 9 rules. As part of that stipulation, the Board agreed to modify the deferral period for any prisoner who was entitled to relief under the terms of the stipulation but who had already been denied parole and given a Proposition 9 deferral period. Pursuant to this stipulation and agreement, the Board produced Special Stipulation Reports, which *Rutherford* counsel received in the same manner he receives the monthly reports regarding parole consideration hearings. Exhibit 20 consists of pages from the third and final Special Stipulation Reported, dated April 2010. The pages provide information on the 444 cases identified as entitled to review and modification relative

to the deferral periods imposed, including the original Proposition 9 deferral period imposed as well as the modified deferral period thereafter imposed. (*See* Exhibit 2.)

What this information shows is that 181(just under 41 percent) of the 444 prisoners who had their Proposition 9 deferrals converted to pre-Proposition 9 deferrals had their deferral periods converted to a one-year period.[2] (*See* Exhibit 20.) Many of the 181 had, by May 31, 2010, received new parole consideration hearings because their pre-Proposition 9 one-year deferral periods had elapsed. Of those prisoners who had obtained their next parole consideration hearing, 36 (at least 20 percent[3]) were granted parole. (*See* Exhibit 1 and supporting documentation referenced therein.)[4]

Thus, had it not been for the stipulation in *Rutherford* that resulted in converting the Proposition 9 deferrals back to old-law deferrals, those prisoners (just like Masoner) would have had to wait two years *beyond* the time they were suitable for parole before they could even get to hearing in order to be granted parole. That is clear evidence of a significant risk of increased custodial terms due to the change in the law.[5] And that evidence establishes not

---

[2] An additional 158 (or 35.6 percent) had their deferral period converted to a two-year period. (*See* Exhibit 20.)

[3] It is 20 percent if all 181 prisoners had received their new hearings by May 31, 2010; it is, of course, a higher percentage if not all of the 181 had received their new hearings by that date.

[4] Exhibit 1 is Plaintiffs' counsel summary of 36 cases in which prisoners who had received Proposition 9 deferrals had their deferrals reduced to one year based on the stipulation in *Rutherford* and at their one-year hearing were granted parole. The summary references the specific data that supports that summary; all the data appear in the reports provided by the Board to *Rutherford* counsel and appearing herein as Exhibits 3 through 20.

[5] An *ex post facto* violation occurs when the new law disadvantages the offender. *Lynce*, 519 U.S. at 441. A change in the law that creates a significant risk of increasing prisoners' terms violates *ex post facto* principles. *Morales*, 514 U.S. at 509; *Garner*, 529 U.S. at 255. An *ex post facto* violation does *not* require a definite showing that the prisoner would have done less time in custody under the old law than he will do under the new law. *Miller*, 482 U.S. at 432 (expressly rejecting state's argument that petitioner had to "definitively" show he would have gotten lesser sentence under old law); *Weaver*, 450 U.S. at 33-34 (finding *ex post facto* in reduction of credits a prisoner could earn through good behavior even absent evidence that prisoner would have gained such credits under old law); *see also Himes*, 336 F.3d at 855. Nevertheless, the evidence Plaintiffs now have concerning the actual implementation of the law does show actual increased terms.

9

just a likelihood of success on the merits of Plaintiffs' *ex post facto* challenge, but also irreparable harm.[6]

**The Possibility of Advanced Hearings**

Throughout this litigation, Defendants have placed great emphasis on the provision of Proposition 9 that allows for advanced hearings through either requests by prisoners or at the initiation of the Board. This Court has previously rejected the contention that the possibility of advanced hearings ameliorates all the way in which the new law creates a significant risk of increased terms (from the change in the default period to the absence of any discretion to set the deferral period at what the Board thinks appropriate). (*See* February 4, 2010 Order at 29-30.) Plaintiffs now have evidence from the actual implementation of the new law that shows, as we have argued, that the possibility of advanced hearings has no ameliorative effect on the increased deferral periods.[7]

In response to interrogatories, Defendants have stated that between December 15, 2008 (when the Proposition 9 changes were implemented) and August 15, 2010, the Board had not initiated a single review for advancing a hearing. The Board had, however, received 68 requests by prisoners to advance their next parole consideration hearings and had ruled on 61 of those requests. Of those 61, 59 had resulted in *summary* denials, a denial made without

---

[6] This Court has previously recognized that, in the context of the issue presented, there is a significant overlap between likelihood of success on the merits and irreparable harm, given that the significant risk of increased custodial terms *is* irreparable harm. (*See* February 4, 2010 Order at 39-41.)

[7] As Plaintiffs have previously noted, a provision that might mitigate the punitive effect of a new law does not defeat an *ex post facto* challenge. The significant risk inquiry "looks to the challenged provision and not to any special circumstances that may mitigate its effect on the particular individual." *Weaver*, 450 U.S. at 33 (finding *ex post facto* violation in new credit scheme that reduced credit a prisoner received despite fact that a provision in the new law allowed a prisoner to "win back" the credit taken away by the new law); *see also Nulph v. Faatz*, 27 F.3d 451, 456 (9th Cir. 1994) (finding *ex post facto* violation in law that restricted discretion of sentencing judge despite fact that provision that allowed parole board to set actual terms as low as allowed under old law).

The Proposition 9 provision allowing for the possibility of advanced hearings at best mitigates the effect of a minimum three-year deferral (and a presumptive 15-year deferral), but it does not alter the fact that the changes in the deferral periods always disadvantage the prisoner in the first instance.

a full review of the record. Only two of the 61 rulings resulted in advancing the hearing, in both cases by at least a year but less than 18 months. *See* Exhibit 21. Thus, in 20 months time, not a single prisoner has had his next parole consideration hearing scheduled within the time allowed under the old law. Moreover, the Board is not initiating itself *any* consideration of advancing hearings and is *summarily* denying 97 percent of the requests made by prisoners to have their hearings advanced.[8]

As Plaintiffs have previously argued, the possibility of advanced hearings does not meaningfully reduce the significant risk that many prisoners' terms will be increased by the mandatory lengthier deferral periods under the new law. The discretion to advance a hearing is not the same as the discretion to consider and set the appropriate deferral period in the first instance.[9]

---

[8] Plaintiffs have also made a Request for Production of Documents, requesting copies of all requests to advance parole consideration hearings and the rulings thereon as well as all documents relating to the process, procedure, criteria, guidelines or standards used by the parole board in considering such requests. Defendants have not produced the documents, claiming that the documentation and information is confidential and/or privileged. *See* Exhibit 22. Defendants have not produced a privilege log as to the forms for advancing hearings (although they did produce a privilege log as to the request for training materials); with a privilege log it is not entirely clear what the nature of the asserted confidentiality or privilege is. In a meet and confer, the Defendants tentatively agreed to produce the requests and rulings either in redacted form or with a protective order; but production has still not occurred. Plaintiffs have filed a motion to compel discovery, which is scheduled to be heard by Magistrate Judge Hollows on December 9, 2010. On November 12, 2010, Defendants did produce to Plaintiffs a list of the names and CDC numbers of the 61 prisoners who had made requests to advance their next hearings; Plaintiffs' counsel have written to the prisoners to obtain from them what we are having trouble obtaining from Defendants.

[9] The old law and the parole schemes reviewed in *Morales* and *Garner* gave the prisoners the right to the lowest deferral period absent a specific finding that a longer deferral period is necessary; the post-Proposition 9 scheme merely allows discretion that may, *but need not*, be exercised to retroactively shorten a deferral period that was longer than under the old law and, at least in some cases, longer than required for the prisoner to reach parole suitability. That possibility does nothing to mitigate the risk of increased terms. *See Miller*, 482 U.S. at 432-33 (finding *ex post facto* violation when a law that changed the presumptive guideline range for certain types of offenders even though the sentencing judge still had discretion to go below the guideline range and impose a sentence as low as that under the old law; the Supreme Court found the discretion to impose a sentence under the presumptive guideline range did not change the fact that the new presumptive guideline range was higher than the old one).

More important, the prisoner has to clear multiple hurdles to get his hearing advanced, hurdles that did not exist under the old law to get a one- or two-year deferral. Foremost among the hurdles is the required showing of "change in circumstances or new information." *See* Pen.Code §3041.5(b)(4) and (d)(1). If the Board has denied parole because the prisoner has failed to program or has inadequate parole plans, it might be possible for new information or a change in circumstances to be shown. But it is far more common for the Board to deny parole based on static factors (such as the commitment offense or prior criminal history) or intangible factors (such as failure to accept full responsibility or lack of sufficient remorse). By definition it is impossible to establish new information or changed circumstances as to the static factors, and it is entirely unclear how a prisoner would establish changed circumstances or new information as to intangible factors.

The evidence now available as to the Board's rulings on requests to advance hearings shows that the requirement of changed circumstances or new evidence is a virtually-insurmountable hurdle. All denials of requests for advancing hearings made so far have been *summary* denials, for which there are only three grounds: 1) the deferral period had not been set under Proposition 9 provisions, 2) three years have not passed since the last request, or 3) there is no evidence of new information or a change in circumstances warranting further review. *See* Exhibit 23. Because Defendants have not produced the actual rulings, we cannot yet know what reasons were given, but there can be little question that the vast majority of them had to be based on no evidence of new information or a change in circumstances.[10]

Additionally, there is no requirement that a hearing be advanced even if all the prerequisites have been met and all the hurdles cleared. The Board's discretion is so unrestricted that it can be challenged only for a manifest abuse of discretion, a standard that

---

[10] There can be no summary denial based on three years not passing since the last request unless some of the requests were multiple requests made by the same prisoners, which is highly unlikely given that the instructions expressly note that a prisoner may file only one petition within a three-year period (*see* Exhibit 23). It would also be highly unlikely that any prisoner who received a deferral under the old law would have applied to advance his hearing when his deferral was already set at the lowest interval the Board thought appropriate.

would be virtually impossible to meet because the Board is not required to satisfy even the most basic of due process rights or give reasons for denying the advancement of a hearing but may simply summarily deny. Again, the evidence now available shows exactly that.

When all these matters are considered, it becomes clear that the provisions allowing for the possibility of advancing a parole consideration hearing do nothing to reduce the significant risk of increasing terms created by the changes to section 3041.5. Plaintiffs have previously used Masoner's case to illustrate that very point.[11]  And the evidence now available shows that Masoner's case was not isolated.[12]

---

[11] At his December 2008 hearing, Masoner was denied parole based on the Board's determination that Masoner did not fully accept responsibility because he had in prior years used the words "accident" and "incident" in talking about the commitment offense, and the Board thought he should be using the word "murder."  But the Board expressly recognized that different Board members would see, and had seen, the issues of responsibility different and might come to a different conclusion.  The Board imposed a three-year deferral period, the minimum under the new law.  But there can be no reasonable doubt that Masoner was closer than three years to being granted parole; indeed, some Board members had found that he has already reached that point, and even the members who found he had not in 2008 recognized that other Board members would disagree.

If Masoner made a request for a review to advance his next hearing, he would have no way to meet the standard of "new information" or a change in circumstances.  He cannot change what he has said in the past, and the evidence (by corrections staff, psychologists and family members and friends) has always been that he accepts full responsibility, is extremely remorseful, and understands exactly what he did wrong (drive while drunk) and has taken all necessary steps (including more than 20 years practicing the principles of Alcoholics Anonymous and volunteering his intent never to drive again) to ensure it will never occur again.

[12] This Court previously stated that because a denial of parole occurs only if the prisoner is found unsuitable for parole at the hearing, a grant of parole will come "only if some fact changes to render that prisoner suitable." *See* February 4, 2010 Order at 28.  With all due respect, that is, quite clearly, not so, as the many judicial decisions finding insufficient evidence to support the denial of parole establish, for those are all examples of the Board denying parole despite a lack of any evidence of unsuitability.  Many prisoners, including most of the named plaintiffs, are found suitable for and granted parole one year, only to have that grant reversed by the Governor and then to have the panel the following year deny parole although there has been no change in circumstances ... and then to have the panel the year after that again grant parole with no change in circumstances.  Often all the prisoner needs is another hearing, not new information or a change in circumstances.  That is indeed what happened to Masoner, granted in 2007 and reversed by the Governor, denied in 2008 and then granted in 2009.

13

The provisions allowing the Board absolute discretion to grant or deny (including summarily deny) a request for an advanced hearing upon a showing of changed circumstances or new information does nothing to reduce the risk of increased terms wrought by the Proposition 9 changes.

**Application of Preliminary Injunction Factors**

Plaintiffs are *likely to succeed on the merits* of their *ex post facto* challenge to Proposition 9's lengthy deferral periods because the evidence shows that the lengthier deferral terms have created not just a significant risk but an actuality of increasing custodial terms. This Court previously found that Plaintiff Masoner's case established that fact, and now there is substantial new evidence showing that many other prisoners have faced the same situation.[13]

When prisoners spend excess custodial time in prison, as they do when they reach parole suitability but are not granted parole solely because Proposition 9's deferral periods do not allow them to get to hearing, they are *irreparably harmed*. Masoner's situation previously established the likelihood of that irreparable harm, and Plaintiffs' new evidence establishes that the likelihood applies to many other prisoners as well.

The *balance of hardships* relative to a preliminary injunction weighs heavily in favor of the prisoners. While the state will bear the cost of more frequent hearings if it cannot enforce the new deferral periods, the prisoners bear the significant risk of unconstitutionally prolonged incarceration. As this Court has previously recognized, that balance weighs in favor of the prisoners.

This Court has previously found that the *public interest* does not strongly weigh for or against an injunction. Plaintiffs offer no new evidence on that point. Nevertheless, all three of the other factors weigh in favor of granting the preliminary injunction.

---

[13] Alternatively, Plaintiffs have established there is a *serious question* raised by whether the Proposition 9 deferral periods violate *ex post facto*. *See Alliance for the Wild Rockies*, 2010 WL 3665149 at *9-11.

**Conclusion**

Plaintiffs seek a preliminary injunction as to the class of all life prisoners who have reached parole eligibility, enjoining the state from imposing deferral periods enacted by Proposition 9.

Plaintiffs have proffered evidence in the exhibits to this motion. Should Defendants dispute any of the evidence, Plaintiffs request the Court set an evidentiary hearing at which Plaintiffs may offer evidence for the Court's evaluation.

Plaintiffs request that at the conclusion of the evidence and argument, this Court issue a preliminary injunction.


Dated: November 18, 2010            Respectfully submitted,

                                    DANIEL J. BRODERICK
                                    Federal Defender



                                        *Monica Knox*
                                    MONICA KNOX
                                    DAVID PORTER
                                    Assistant Federal Defenders
                                    CARTER WHITE
                                    U.C. Davis Civil Rights Clinic

                                    Attorneys for Plaintiffs