1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

RICHARD M. GILMAN, et al.,

10
                                    NO. CIV. S-05-830 LKK/GGH
11            Plaintiffs,

12       v.
                                        O R D E R
13   EDMUND J. BROWN., et al.,

14
              Defendants.
15   _____/

16       Currently before the court is plaintiffs' motion for a class-

17   wide  preliminary  injunction.  The  motion  is  premised  upon

18   plaintiffs' claim that Proposition 9 violates the Ex Post Facto

19   Clause. In  support  of  the  motion,  plaintiffs  have  provided

20   extensive statistical data. Neither plaintiffs nor defendants,

21   however,  have  provided  any  statistical  analysis  as  to  the

22   significance of that data. For this reason, the court orders

23   plaintiffs and defendants to show cause why a statistician should

24   not  be  appointed  under  Fed. R. Evid. 706. The  court  further

25   instructs the parties to either stipulate to an expert witness or

26   separately provide a list of three potential expert witnesses for

                                    1

the court's consideration. Lastly, the parties shall provide argument as to the proper apportionment of costs for the expert fees.

## I. BACKGROUND

### A.   Factual Background

#### 1.   California's Parole Scheme

Aside from the additional statistical evidence provided in plaintiffs' motion for a preliminary injunction, the facts of this case remain unchanged. For this reason, the court incorporates the background sections of its prior orders into the instant order. See February 4, 2010 Order Granting Preliminary Injunction as to Class Representatives, Gilman v. Davis, 690 F. Supp. 2d 1105 (E.D. Cal. 2010) (hereinafter "Gilman v. Davis"), reversed by Gilman v. Schwarzenegger, 638 F.3d 1101 (9th Cir. 2011) (hereinafter "Gilman"); see also Gilman, 638 F.3d at 1103-05 (explaining relevant elements of California parole scheme).

##### a.   The Deferral Process Prior to Proposition 9

Prior to the amendments provided by Proposition 9, when a Board of Parole Hearings ("Board") panel determined that a prisoner was unsuitable for parole, the length of deferral was determined by California Penal Code section 3041.5(b)(2) (2008). This section provided that when the Board found a prisoner unsuitable for parole,

> The board shall hear each case annually
> thereafter, except the board may schedule
> the next hearing no later than the

2

following:

    (A)   Two years after any hearing . . . if
the board finds that it is not
reasonable to expect that parole would
be granted at a hearing during the
following year . . .

    (B)   Up to five years after any hearing at
which parole is denied if the prisoner
has been convicted of murder, and the
board finds that it is not reasonable
to expect that parole would be granted
at a hearing during the following years
. . . . If the board defers a hearing
five years, the prisoner's central file
shall be reviewed by a deputy
commissioner within three years at
which time the deputy commissioner may
direct that a hearing be held within
one year.

In determining how long to defer a hearing, and in making

suitability determinations at the subsequent hearings, the panel

applies the same criteria used for the initial suitability

determination. Cal. Pen. Code § 3041.5(b)(2)(A)-(B) (2008), Cal.

Code Regs. tit. 15, §§ 2268(b), 2270(d).[1] Thus, the panel

evaluates whether the factors informing its assessment of the

prisoner's potential threat to public safety are likely to

change; if so, when; and whether these changes will be

sufficient to render the prisoner suitable for parole.

    Once a deferred hearing date had been set, that hearing

---

[1] Prior to Proposition 9, the Board had the power to set
regulations specifying the factors to be considered in determining
the length of deferral; the Board's regulations specified that
these factors were the same as those used in determining
suitability. Proposition 9 incorporates these regulations in to the
statute itself. Thus, the penal code now specifies that public
safety is the determinant of both suitability and the deferral
period.

date could potentially be advanced. If the deferral was for five years, the Board was obliged to review the prisoner's situation at three years to determine whether the hearing should be advanced. Cal. Pen. Code § 3041.5(b)(2)(B). Moreover, a prisoner could separately request an advanced hearing date, although the former statute provided no formal mechanism for such requests. In re Jackson, 39 Cal. 3d 464, 475 (1985); see also Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 512 (1995) (relying on this statement in Jackson). The court has no knowledge of whether, during the history of the prior statute, such a request was ever actually made or granted.

> **b.   The Proposition 9 Amendments to The Deferral Process**

Proposition 9 drastically altered the deferral process, replacing former subsection 3041.5(b)(2) with the following, now codified at subsection (b)(3):

> The board shall schedule the next hearing, after considering the views and interests of the victim, as follows:
>
> (A)   Fifteen years after any hearing at which parole is denied, unless the board finds by clear and convincing evidence that the criteria relevant to the setting of parole release dates enumerated in subdivision (a) of Section 3041 are such that consideration of the public and victim's safety does not require a more lengthy period of incarceration for the prisoner than 10 additional years.
>
> (B)   Ten years after any hearing at which parole is denied, unless the board finds by clear and convincing evidence

4

1      that . . . consideration of the public
       and victim's safety does not require a
2      more lengthy period of incarceration
       for the prisoner than seven additional
3      years.

4   (C) Three years, five years, or seven years
       after any hearing at which parole is
5      denied, because . . . consideration of
       the public and victim's safety requires
6      a more lengthy period of incarceration
       for the prisoner, but does not require
7      a more lengthy period of incarceration
       for the prisoner than seven additional
8      years.

9 Soon after Proposition 9 was passed, the Board issued an

10 Administrative Directive identifying various effects of the

11 proposition. BPH Administrative Directive No. 08/01, Regulatory

12 Sections Impacted by Proposition 9, December 8, 2008. One such

13 effect, which was repeatedly stated in the directive, was that

14 the Board now had "no discretion to set a denial period for any

15 term other than those enumerated," i.e., for a period other than

16 "15, 10, 7, 5, or 3 years." Id.

17   The amended statute provides two ways in which a deferred

18 hearing date may be changed once it has been set. First, the

19 Board

20      may in its discretion, after considering the
       views and interests of the victim, advance a
21      hearing set pursuant to paragraph (3) to an
       earlier date, when a change in circumstances
22      or new information establishes a reasonable
       likelihood that consideration of the public
23      and victim's safety does not require the
       additional period of incarceration of the
24      prisoner provided in paragraph (3).

25 Cal. Pen. Code § 3041.5(b)(4). Second, an inmate may request

26 that the board advance the hearing. Id. § 3041.5(d). Such a

1  request must "set forth the change in circumstances or new

2  information" required by subsection (b)(4). Id. § 3041.5(d)(1).

3  The statute limits when a prisoner may make such a request:

> An inmate may make only one written request
> as provided in paragraph (1) during each
> three-year period. Following either a
> summary denial of a request made pursuant to
> paragraph (1), or the decision of the board
> after a hearing described in subdivision
> (a)[2] to not set a parole date, the inmate
> shall not be entitled to submit another
> request for a hearing pursuant to
> subdivision (a) until a three-year period of
> time has elapsed from the summary denial or
> decision of the board.

11  Id. § 3041.5(d)(3). The Board has subsequently promulgated a

12  second administrative directive, which interpreted this language

13  as imposing a three-year delay only once the prisoner has filed

14  a request for an advanced hearing, such that a prisoner need not

15  wait three years before filing an initial request for an

16  advanced hearing. BPH Administrative Directive No. 09/01, "Penal

17  Code Statutes Enacted by Proposition 9 That Allow An Advanced

18  Hearing Date," February 5, 2009. Plaintiffs do not challenge

19  this interpretation in their current motion.

20       This second directive also states that pursuant to section

21  3041.5(b)(4), when the Board advances a hearing date, there is

22  not "a minimum time period that must be served from the hearing

23  at which the denial length was determined." Thus, the Board

24

---

25       [2] Subdivision (a) refers to "all hearings for the purpose of
     reviewing a prisoner's parole suitability." Cal. Pen. Code §
26   3041.5(a).

contends that when a hearing date is advanced, whether on the Board's initiative under (b)(4) or on a prisoner's request under (d), the Board is not limited to the time periods specified for deferral of the hearing.

### 2.   Plaintiff's Evidence

#### a.   Statistical Data from In re Rutherford

Plaintiffs have submitted statistical evidence in support of their motion for a preliminary injunction. Some of the evidence is from the In re Rutherford settlement. This case is a class action habeas case that challenged alleged untimeliness of parole suitability hearings for life prisoners. Dec. of Thomas Master filed in support of Plaintiffs' Motion for a Preliminary Injunction ("Master Dec.") ¶ 1. After implementation of Proposition 9 on December 15, 2008, petitioners moved for a preliminary injunction seeking relief for class members who should have had parole hearings prior to implementation, but did not. See In re Rutherford, No. SC135399A, Stipulation Concerning Proposition 9's Implementation (Super. Ct. Cal, Marin Co., Mar. 27, 2009) at 2. The parties reached a settlement on plaintiffs' motion before it was decided by the state court. Id.

The parties in In re Rutherford stipulated to the following conditions on March 27, 2009:

> (1)   The parties agreed upon a final list of class members subject to the stipulation. They include only the following groups: (a) "Any prisoner who was due a hearing before December 15, 2008, but whose hearing was delayed until after December 15, 2008 because of reasons for which the State was responsible;" (b) "Any prisoner who was due a hearing before December 15,

2008, but whose hearing was delayed until after December 15, 2008, because of 'exigent circumstances[3];'" (c) "Any prisoner who postponed a parole hearing to a date before December 15, 2008, but who was not provided the hearing before December 15, 2008, because of reasons for which the State was responsible, or because of 'exigent circumstances;'" and (d) "Any prisoner whose hearing was commenced before December 15, 2008, but which was not completed, and was then continued to be completed on a date after December 15, 2008." Id. at 3-4.

(2)  Class members included within the settlement "who ha[ve] not yet been provided with [their] outstanding parole hearing shall be provided with [their] next hearing under" the deferral process prior to Proposition 9. Id. at 4. The Board will review the hearing decision for these class member to determine whether they should be modified under this deferral process. Id. at 5.

(3)  Parole hearings for class members within subsection (d) will be held in accordance with the deferral process prior to Proposition 9. Id.

Pursuant to the general settlement, counsel for petitioners "receives monthly reports from the Board" listing the grants of parole for prisoners with life sentences, the number of denials in that month, and the time period until a subsequent hearing for all denials. Pursuant to the settlement relating to the application of Proposition 9, counsel for petitioners have also received a report listing all prisoners whose deferral dates have been modified. This report lists the name, CDC number,

---

[3] Exigent circumstances are defined as a natural disaster, institution security lockdown, institution medical lockdown/quarantine, essential party ill, emergency involving essential party, power outage, equipment failure, prisoner medically unavailable, prisoner psychiatrically unavailable, attorney not prepared to proceed, and attorney became unavailable after hearing schedule confirmed. Id. at Attachment A.

8

institution, the parole hearing deferral date set when
Proposition 9 was applied, and the parole hearing deferral date
as modified according to pre-Proposition 9 standards.

Combining the data from the monthly reports and the
Proposition 9 report, plaintiffs have identified the individuals
who received grants of parole as a result of the modified
deferral dates to pre-Proposition 9 calculations.[4]

### 2.   Statistical and Anecdotal Evidence on Advanced Hearing Process

Plaintiffs have also presented evidence on how the advanced
hearing process has been utilized in practice. In sum, plaintiff
has presented the following data for the time period of January
2009, shortly after Proposition 9 was implemented, through
December 2010:

(1)   The Board never initiated the process to advance a
hearing for a prisoner.

(2)   One hundred and nineteen petitions were filed by
prisoners.

(3)   One hundred and six of these petitions were summarily
denied, which, according to the Board's training

---

[4] The court notes that the data does not reveal whether the individuals who received grants would have received advanced hearings under Proposition 9. These individuals had no meaningful opportunity to apply for advanced hearings, or at least to receive rulings on such hearings, given that the stipulation was entered less than four months after Proposition 9 was implemented. Plaintiffs have, however, provided additional evidence from discovery concerning the advanced hearing process as discussed in the following sub-section.

1                materials, occurs when a prisoner fails to make a

2                prima facie showing of both a change in circumstances

3                or new information and that he has reached parole

4                suitability at the time he files his petition to

5                advance.

6    (3)   Eight of these petitions were denied following a full

7                review, in which a deputy commissioner of the board

8                can review a prisoner's entire file.

9    (4)   Five prisoners were granted advanced hearings, but

10               none had been held as of April 2011. The average

11               length of time between the prisoners' petitions to

12               advance and the scheduled advanced hearing was 13

13               months. The average length of time between the

14               prisoner's most recent hearing and the scheduled

15               advanced hearing was 22 months.

16    (5)   Plaintiffs have also presented anecdotal evidence from

17               some of the prisoners who fell within each of the

18               categories discussed above.

19    **B.**   **Procedural History**

20    On December 19, 2008, plaintiffs moved for a preliminary

21 injunction enjoining implementation of Proposition 9 as to the

22 entire class. The motion was heard on January 30, 2009, and

23 remained under submission. On August 11, 2009, the court ordered

24 the parties to brief whether the court had jurisdiction over the

25 motion for the preliminary injunction in light of the Ninth

26 Circuit's grant of defendants' petition for permission to appeal

this court's order granting class certification. In their response to this order plaintiffs agreed "that any preliminary injunction that issues prior to the resolution of the pending appeal would be restricted to the named plaintiffs . . . ." Response, Doc. No. 206 at 4 (August 26, 2009). On February 4, 2010, the court granted plaintiffs' motion for a preliminary injunction as to the named plaintiffs only. Defendants were, thus, enjoined from enforcing the provisions of Proposition 9 that amend former California Penal Code section 3041.5(b)(2)(A) as to the named plaintiffs.

Defendants promptly appealed this court's February 4, 2010 order. On December 6, 2010, the Ninth Circuit reversed this court's entry of a preliminary injunction on the grounds that, "There were no facts in the record from which the district court could infer that Proposition 9 created a significant risk of prolonging Plaintiffs' incarceration." The only facts addressing implementation of Proposition 9 concerned named plaintiff Masoner who had received one-year deferrals prior to the passage of Proposition 9 and had once been found suitable by the Board only to have the grant of parole reversed by the Governor. At his 2008 hearing, the panel conceded that he was approaching suitability, yet he would not receive a scheduled suitability hearing until late 2011. There was no evidence concerning the effect of the advanced hearing process.

On November 18, 2010, plaintiffs moved for a preliminary injunction as to the entire class. Defendants timely opposed

this motion. The parties filed supplemental briefing in light of

the Ninth Circuit's decision. On January 12, 2011, the court

heard oral argument on this motion and set an evidentiary

hearing to resolve outstanding issues. On May 17, 2011, the

court held the evidentiary hearing.[5] The parties both filed

supplemental briefing after the hearing.

## II. STANDARDS

### A.    Standard for a Preliminary Injunction

A preliminary injunction is an "extraordinary remedy."

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7,

22 (2008) (internal citation omitted). When a court considers

whether to grant a motion for a preliminary injunction, it

balances "the competing claims of injury, . . . the effect on

each party of the granting or withholding of the requested

relief, . . . the public consequences in employing the

extraordinary remedy of injunction," and plaintiff's likelihood

of success. Id. at 20, 24 (quoting Amoco Prod. Co. v. Gambell,

480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S.

305, 312 (1982). In order to succeed on a motion for a

preliminary injunction, the plaintiff must establish that "he is

likely to succeed on the merits, that he is likely to suffer

---

[5] The court notes the unorthodox nature of the evidentiary hearing. The majority of the evidence put on by plaintiffs was tendered through "testimony" of plaintiffs' counsel, who conducted various analyses and investigations. Defendants have not objected to counsel's testimony. Nonetheless, the court has considered her testimony as argument and presentation of evidence rather than as evidence itself.

1  irreparable harm in the absence of preliminary relief, that the

2  balance of equities tips in his favor, and that an injunction is

3  in the public interest." <u>Winter</u>, 555 U.S. at 20.

4      **B.    Standard for Appointment of a Neutral Expert Witness**

5      Under Fed. R. Evid. 706, "The court may on its own motion .

6  . . enter an order to show cause why expert witnesses should not

7  be appointed , and may request the parties to submit

8  nominations." The rule only allows the court to appoint a

9  neutral expert. <u>See</u> <u>In re High Fructose Corn Syrup Antitrust</u>

10 <u>Litigation</u>, 295 F.3d 651, 665 (7th Cir. 2002). The most

11 important question courts consider when deciding if they should

12 appoint neutral expert witnesses under the rule is whether doing

13 so will promote accurate factfinding. <u>Gorton v. Todd</u>, ___ F.

14 Supp. 2d ____, ____ (E.D. Cal. 2011), <u>available at</u> 2011 WL

15 2557508, at *7 (citing 29 Charles Alan Wright et al., <u>Federal</u>

16 <u>Practice and Procedure</u> § 6304 (3d ed. Supp. 2011)). Courts are

17 also to look to whether evidence has been presented that

18 demonstrates a serious dispute that could be resolved or better

19 understood through expert testimony. <u>Id.</u> at *12.

20     Expert witnesses appointed under Rule 706 are entitled to

21 reasonable compensation, which, in civil cases not involving

22 just compensation under the Fifth Amendment, "shall be paid by

23 the parties in such proportion and at such time as the court

24 directs, and thereafter charged in like manner as other costs."

25 Fed. R. Evid. 706; <u>see also</u> <u>McKinney v. Anderson</u>, 924 F.2d 1500,

26 1511 (9th Cir. 1991), <u>affirmed on other grounds by</u> <u>Helling v.</u>

13

1 McKinney, 509 U.S. 25 (1993).

2 **III. ANALYSIS**

3    The Ninth Circuit reversed this court's February 2, 2010

4 order solely on the grounds that there was insufficient evidence

5 for the court to conclude that plaintiffs were likely to succeed

6 on the merits of their cause of action challenging Proposition

7 9. The parties have presented no new evidence or arguments that

8 alter this court's conclusions as to the balance of hardships

9 and public interest in its February 2, 2010 order. Thus, the

10 only factors relevant to the instant motion are the likelihood

11 of success on the merits and irreparable injury - specifically,

12 whether plaintiffs have provided sufficient evidence from which

13 the court can determine that plaintiffs have demonstrated a

14 likelihood of success on the merits and irreparable injury. In

15 order to demonstrate a sufficient likelihood of success on the

16 merits to justify preliminary relief, plaintiffs must

17 demonstrate "facts in the record from which the district court

18 [can] infer that Proposition 9 created a significant risk of

19 prolonging [p]laintiffs' incarceration."[6] Gilman, 638 F.3d at

20 1110-11. As discussed in this court's prior order, if plaintiffs

21 can demonstrate a likelihood of success on the merits that

22 
_____

23    [6] It is important to note that the Court of Appeals did not
find that this court erroneously analyzed California's parole
24 system or identified an incorrect standard. Rather, the Ninth
Circuit only found that this court abused its discretion in
25 entering a preliminary injunction where the panel concluded that
there were no facts in the record to suggest a significant risk of
26 prolonged incarceration.

1  plaintiffs' incarceration will be prolonged, they have also

2  demonstrated irreparable injury because prolonged incarceration

3  is an irreparable harm. Further, as the court previously found,

4  "The relevant likelihood . . . is not the likelihood of injury

5  absent any adjudication of this case. Instead, the question is

6  whether such injury is likely to occur before final resolution

7  of this matter." Gilman v. Davis, 690 F. Supp. 2d at 1126 (E.D.

8  Cal. 2010).

9                    1.   **The *Ex Post Facto* Clause**

10       The Constitution prohibits states from enacting *ex post*

11  *facto* laws. Garner v. Jones, 529 U.S. 244, 249 (2000) (citing

12  U.S. Const. art I, § 10, cl. 1). Two Supreme Court cases guide

13  analysis of whether modifications of parole law that apply

14  retroactively are unconstitutional as *ex post facto* laws.

15  See Garner, 529 U.S. 244; Cal. Dep't of Corr. v. Morales, 514

16  U.S. 499 (1995); see also Gilman v. Schwarzenegger, 638 F.3d at

17  1106-10 (discussing same).

18       In Morales, the Court considered whether a California law

19  "authoriz[ing] the Board to defer subsequent suitability

20  hearings for up to three years if the prisoner has been

21  convicted of 'more than one offense which involves the taking of

22  a life' and if the Board 'finds that it is not reasonable to

23  expect that parole would be granted at a hearing during the

24  following years and states the bases for the finding" violates

25  the *ex post facto* clause. 514 U.S. at 503 (quoting Cal. Penal

26  Code § 3041.5(b)(2) (West 1982)). The Court held the "focus of

the *ex post facto* inquiry is . . . whether a [retroactive
legislative] change alters the definition of criminal conduct or
increases the penalty by which a crime is punishable." Id. at
506 n.3 (citing Collins v. Youngblood, 497 U.S. 37, 41 (1990)).
A delay in parole hearings only raises *ex post facto* concerns if
"that delay effectively increases a prisoner's term of
confinement." Id. at 509 n.4. When considering the law at issue,
the Court emphasized that the amendment "made only one change
[to California's parole laws]: It introduced the possibility
that after the initial parole hearing, the Board would not have
to hold another hearing the very next year, or the year after
that, if it found no reasonable probability that respondent
would be deemed suitable during in the interim period." Id. at
507. The Court ultimately concluded that the law did not
effectively increase a prisoner's term of confinement and, thus,
violate the *ex post facto* clause, because (1) the law "applies
only to a class of prisoners for whom the likelihood of release
on parole is quite remote, and (2) "the Board retains the
authority to tailor the frequency of subsequent suitability
hearings to the particular circumstances of the individual
prisoner." Id. at 510-11. Furthermore, the Court determined
that, "[T]here is no reason to conclude that the amendment will
have any effect on any prisoner's actual term of confinement,
for the current record provides no basis for concluding that a
prisoner who experiences a drastic change of circumstances would
be precluded from seeking an expedited hearing from the Board."

1  Id. at 512. It continued, based on the record before it and the

2  class of prisoners affected by the law, to find that, "Even if a

3  prisoner were denied an expedited hearing, there is no reason to

4  think that such postponement would extend any prisoner's actual

5  period of confinement." Id. at 513.

6      Five years later, the Court considered whether a

7  modification of parole law in Georgia violated the *ex post facto*

8  clause. Garner v. Jones, 529 U.S. 244 (2000). In Garner, the

9  Court evaluated a change of the law concerning parole that was

10 closer to the amendment at issue in the case at bar. At the time

11 plaintiff committed his second offense in which he was sentenced

12 to life, the Georgia parole system required the parole board "to

13 consider inmates serving life sentences for parole after seven

14 years." Id. at 247 (citing Ga. Code. § 42-9-45(b) (1982). If the

15 board denied parole, it was required to reconsider whether the

16 inmate should be paroled every three years. Id. (citing Ga.

17 Rules & Regs., Rule 475-3-.05(2) (1979). After plaintiff

18 committed his second offense, the parole board amended its rules

19 to require reconsideration at least every eight years. Id. at

20 247 (citing Ga. Rules & Regs., Rule 475-3-.05(2) (1985)).

21 Specifically, "the law vest[ed] the Parole Board with discretion

22 as to how often to set an inmate's date for reconsideration,

23 with eight years for the maximum." Id. at 254. Further, the

24 parole board's policies allow "expedited parole reviews in the

25 event of a change in their circumstance or where the Board

26 receives new information that would warrant a sooner review."

17

1  Id. (internal quotation omitted).

2      Plaintiff brought a facial challenge to the amendment. The

3  Court considered "whether the amended Georgia Rule creates a

4  significant risk of prolonging respondent's incarceration," id.

5  at 251, in light of the "whole context of Georgia's parole

6  system," id. at 252. It held that, "When the rule does not by

7  its own terms show a significant risk, the [plaintiff] must

8  demonstrate, by evidence drawn from the rule's practical

9  implementation by the agency charged with exercising discretion,

10  that its retroactive application will result in a longer period

11  of incarceration than under the earlier rule." Id. at 255. The

12  Court noted that "[T]he general operation of the Georgia parole

13  system may produce relevant evidence and inform further

14  analysis" on whether the "law created a significant risk of

15  increasing [plaintiff's] punishment." Id. Thus, the Court

16  concluded that plaintiff failed to demonstrate, that the amended

17  law, "*in its operation*, created a significant risk of increased

18  punishment for" plaintiff. Id. at 257 (emphasis added).

19  Plaintiff claimed that he had not been permitted sufficient

20  discovery to make this showing and, consequently, the Court

21  remanded the case to permit plaintiff to conduct discovery. Id.

22      In its reversal of this court's entrance of a preliminary

23  injunction as to the named plaintiffs only, the Ninth Circuit

24  noted that, "[T]he changes to the frequency of parole hearings

25  here are more extensive than the change in either Morales or

26  Garner." Gilman, 638 F.3d at 1107. Specifically, "Neither

18

1  Morales nor Garner involved a change to the minimum deferral

2  period, the default deferral period, or the burden to impose a

3  deferral period other than the default period." Id. at 1108. Of

4  particular note is the "eliminat[ion of] the Board's discretion

5  to set a one-year deferral period, even if the Board were to

6  find by clear and convincing evidence that a prisoner would be

7  suitable for parole in one year." Id. Nonetheless, because

8  "advance hearings are explicitly made available by statute," the

9  Ninth Circuit found that this court abused its discretion in

10 entering a preliminary injunction without evidence that "the

11 advance hearings do not sufficiently reduce the risk of

12 increased punishment for prisoners." Id. at 1109.

13                **2.  Need for Expert Analysis**

14      Currently before the court is a substantial amount of data

15 concerning the implementation of Proposition 9. There appears to

16 be no dispute as to the accuracy of the data. Rather, plaintiffs

17 and defendants disagree as to how the court should interpret it.

18 See, e.g., Corrected Pl.'s Post-Evidentiary Hr'g Br. Re: Prelim.

19 Inj., Doc. No. 358, at 20; Def.'s Post-Hr'g Br. Evidentiary

20 Hearing Pl.'s Mot. Prelim. Inj., Doc. No. 357, at 10. In

21 essence, the court is faced with a lot of statistical evidence

22 and conclusions of lawyers on the meaning of such evidence, but

23 with no statistical analysis on the significance of the

24 evidence. Even without training in statistics, the court can

25 observe that plaintiffs have revealed information suggesting the

26 possibility that the advanced hearing process does not mitigate

a significant risk of prolonged incarceration for at least some sub-groups of the class (namely those with three-year deferrals under Proposition 9). Nonetheless, it is impossible for the court to make a determination of the effects of Proposition 9 on class members absent the assistance of an expert witness. Thus, the court orders the parties to show cause why a neutral expert witness or witnesses should not be appointed to analyze the extent, if any, to which Proposition 9 creates a significant risk of prolonged incarceration for all or some class members. In particular, the expert should analyze (1) whether the modified deferral periods create a significant risk of increased incarceration for all or some class members; and, if so, (2) whether the advanced hearing process, as applied, sufficiently reduces the risk of prolonged incarceration for all or some class members.

## IV. CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

(1)   The parties are ORDERED TO SHOW CAUSE why a statistical expert witness or witnesses should not be appointed  to analyze the issues discussed above within thirty (30) days.

(2)   The parties are FURTHER ORDERED TO SHOW CAUSE as to why, if the court appoints an expert or experts, it should not apportion half of the expert costs to plaintiffs and half to defendants within thirty (30) days.

(3)   The parties are FURTHER ORDERED to either stipulate to
      an expert witness or witnesses or to each provide the
      court with three nominations for such a witness or
      witnesses within thirty (30) days.

IT IS SO ORDERED.

DATED:  July 22, 2011.


                              _____
                              LAWRENCE K. KARLTON
                              SENIOR JUDGE
                              UNITED STATES DISTRICT COURT

21