UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD M. GILMAN, et al.,

                          NO. CIV. S-05-830 LKK/GGH

       Plaintiffs,

  v.

                          O R D E R

EDMUND G. BROWN, JR., et al.,

       Defendants.

_____/

     In California persons convicted of murder but with a sentence less than mandatory life, are at some point, eligible for parole. See California Penal Code §3041, In re Lawrence, 44 Cal 4th 1181 (2008). Plaintiffs in this class action are such prisoners who allege constitutional violations related to California's parole system. Pending before the court is defendant's motion for judgment on the pleadings, ECF No. 404. For the reasons stated herein, defendants' motion is GRANTED with respect to claims 2, 4, 5, and 7, and is DENIED as to the remaining claims.

////

# I. Background

The factual and procedural background of this case have been detailed at length in prior orders. See, e.g., March 4, 2009 Order Granting Class Certification, ECF No. 182. What follows is a summary of the background relevant to this motion.

Plaintiffs' complaint alleges nine causes of action challenging California's parole process on ex post facto and due process grounds. Those causes of action can be grouped as follows: Claims 1 and 3-7 allege due process violations with respect to parole suitability determinations; Claim 8 alleges an ex post facto violation with respect to the deferral provisions of California's Proposition 9; and Claim 9 alleges an ex post facto violation with respect to the Governor's authority to reverse a parole grant, enacted by Proposition 89. The parties agree that Claim 2 is redundant of Claims 8 and 9, and should be dismissed.

This court has certified a class and subclasses. The class is defined as all California state prisoners who a) have been sentenced to a life term with possibility of parole, b) have reached parole eligibility, and c) have been denied parole at least once. The subclasses are: 1) As to Claim 8 (*ex post facto* challenge to Proposition 9 deferral provisions), the class is defined as "all California state prisoners who have been sentenced to a life term with possibility of parole for an offense that occurred before November 4, 2008." 2) As to Claim 9 (*ex post facto* challenge to Proposition 89 giving Governor authority to overturn a parole decision), the class

is defined as "all California state prisoners who have been sentenced to a life term with possibility of parole for an offense that occurred before November 8, 1988." April 21, 2011 Order, ECF No. 339.

Defendants now seek a judgment on the pleadings on all claims.

## II. Standard for a Judgment on the Pleadings

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed but within such time as to not delay the trial." Fed.R.Civ.P. 12(c). All allegations of fact by the party opposing a motion for judgment on the pleadings are accepted as true. Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984). A "dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." ' Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690 (1969)); see also McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir.1988).

When a Rule 12(c) motion is used to raise the defense of failure to state a claim, the motion is subject to the same test as a motion under Rule 12(b)(6). McGlinchy, 845 F.2d at 810; Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1989). Thus, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937 (2009). Moreover, this court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89,

94 (2007).

### III. Analysis

A. Due Process Clause Claims

Plaintiffs' due process clause claims (Claims 1, 3-7) allege various constitutional defects in California's parole eligibility determination process. Generally, plaintiffs allege that the Board of Parole Hearings ("the Board") and the Governor are denying and deferring parole for improper reasons. Defendants argue that the Supreme Court's holdings in Greenholtz v. Inmates of the Nebraska Penal and Correction Complex, 442 U.S. 1 (1979) and Swarthout v. Cooke, 131 S. Ct. 859 (2011) render the due process claims uncognizeable.

Greenholtz was a Section 1983 case challenging Nebraska's procedure for making parole eligibility determinations. There is no federal constitutional right to be released on parole prior to the end of a valid sentence. Greenholtz, 442 U.S. at 7. However, once a state establishes a parole system, that system may create a court enforceable expectation of parole. In Greenholtz, the Supreme Court "accepted" that Nebraska's statutory scheme created an expectancy of release on parole, and that the expectancy "is entitled to some measure of constitutional protection." The Court emphasized that "whether any other state statute [governing parole eligibility] provides a protectable entitlement must be decided on a case-by-case basis." Id. at 12. The Court found that in the context of Nebraska's parole eligibility determination procedure

4

1  due process is satisfied where the procedure "affords an
2  opportunity to be heard, and when parole is denied it informs the
3  inmate in what respects he falls short of qualifying for parole."
4  Id. at 16. Although the Court's holding was specific to Nebraska's
5  statutory scheme, the Court noted that "the function of legal
6  process, as that concept is embodied in the Constitution, and in
7  the realm of factfinding, is to minimize the risk of erroneous
8  decisions." Id. at 11. Thus, a procedure which does not decrease
9  the risk of error does not raise due process concerns. In any
10 event, defendants do not deny that California's system creates some
11 form of liberty interest.

12     In Swarthout, two California prisoners petitioned for federal
13 habeas relief after being denied parole by the Board and Governor,
14 respectively. Both had sought, and were denied, habeas relief in
15 state court. The state court had determined that the parole denials
16 had been based on "some evidence," of current dangerousness as is
17 required by state law. The Ninth Circuit, applying the AEDPA
18 standard to petitioner Cooke's claim, found that the state court's
19 conclusion was "based on an unreasonable determination of the facts
20 in light of the evidence," and that therefore Cooke was entitled
21 to habeas relief. Cooke v. Solis, 606 F.3d 1206, 1216 (9th Cir.
22 2010). The Supreme Court reversed, holding that "the beginning and
23 the end of the federal habeas courts' inquiry into whether Cooke
24 and Clay received due process" should have been a review of the
25 application of constitutionally required procedures. Swarthout at
26 *7. The Court held that due process was satisfied because the

5

1  petitioners "were allowed to speak at their parole hearings and to
2  contest the evidence against them, were afforded access to their
3  records in advance, and were notified as to the reasons why parole
4  was denied." The Court noted that this process was "at least" the
5  amount of process due, citing <u>Greenholtz</u>'s holding that "the
6  Constitution does not require more" than an opportunity to be heard
7  and a statement of the reasons why parole was denied in the context
8  of a parole statute similar to California's. <u>Swarthout</u> at *7.

9      Plaintiffs here allege that California's procedure for
10 determining parole eligibility falls short of constitutional
11 requirements because the Board and the Governor's decisions are
12 guided by "biases," such as a belief that a prisoner must serve an
13 arbitrary number of years before he can be considered eligible for
14 parole (First and Third Causes of Action); the Board and Governor
15 rely on static factors to support the denial of parole, despite
16 lack of risk to public safety (Fourth Cause of Action); the reasons
17 given to defer or deny parole are not connected to risk to public
18 safety and do not provide meaningful guidance to the prisoner about
19 what he must do to obtain parole (Fifth Cause of Action); the Board
20 and Governor make their decisions based on biases, but justify them
21 by the use of regulatory criteria, or base their decisions on
22 limited items of evidence in the record that are inconsistent with
23 the record as a whole (Sixth Cause of Action); the Board and
24 Governor defer parole reconsideration for some plaintiffs for more
25 than one year for unreasonable reasons (Seventh Cause of Action).
26 Thus, plaintiffs argue that, although the California parole

1  statutes do provide for the basic due process safeguards (a hearing
2  and a statement of the reason for denial), the hearings themselves
3  are tainted by the biases of the Board and the Governor, rendering
4  them constitutionally inadequate.

5      The Supreme Court has spoken unequivocally on the division of
6  labor between the state and federal courts with respect to
7  challenges to parole eligibility determinations for state
8  prisoners. Pursuant to Swarthout, the federal courts may not review
9  a state's parole eligibility decision on the merits. This is
10 because the question of whether those decisions comply with state
11 law is a question for the state's courts and outside the
12 jurisdiction of the  federal courts. The federal courts' role is
13 to determine whether those prisoners have received the process they
14 are due under the constitution, i.e. a hearing and a statement of
15 reasons for the denial of parole. As is explained below, it appears
16 to this court that the Court's ruling, while quite confining, does
17 not end the inquiry in this case.

18     Although not discussed in Greenholtz or Swarthout, the Supreme
19 Court has held elsewhere that a constitutional hearing is a
20 "meaningful" hearing. "For more than a century the central meaning
21 of procedural due process has been clear: Parties whose rights are
22 to be affected are entitled to be heard; and in order that they may
23 enjoy that right they must first be notified. It is equally
24 fundamental that the right to notice and an opportunity to be heard
25 must be granted at a meaningful time and in a *meaningful manner*."
26 Fuentes v. Shevin, 407 U.S. 67, 80 (1972)(internal quotations

omitted)(emphasis added). For example, a parole eligibility determination presided over by Board members who were all wearing earplugs would not be a "meaningful" hearing. Similarly, it appears to this court that the statement of reasons for a denial of parole must be a statement of the real reasons for denial.

Defendants apparently concede that a parole board hearing would not satisfy due process if it were presided over by officers with an unconstitutional bias. Defs.' Mot. 10. Indeed, in the context of administrative adjudication as well as in the courts, "a biased decisionmaker [is] constitutionally unacceptable." Withrow v. Larkin, 421 U.S. 35, 47 (1975). "That officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy to be decided is, of course, the general rule." Tumey v. Ohio, 273 U.S. 510, 522 (1927). A governor's role when reviewing parole decisions, is "functionally comparable" to a judge's role. Miller v. Davis, 521 F.3d 1142, 1144 (9th Cir. 2008). Similarly, parole board officials' decisions to grant, deny, or revoke parole is "functionally comparable" to tasks performed by judges. Swift v. California, 384 F.3d 1184, 1189 (9th Cir. 2004). Thus, in order to be constitutionally sufficient, a parole eligibility hearing must be presided over by unbiased officials. Similarly, the Governor, when reviewing parole decisions, must make the decisions without improper bias. The question then, is what types of bias in parole eligibility decisionmakers will render a parole eligibility hearing inadequate.

No one could dispute that a decision made by a Board tainted

1   by a bribe would not satisfy due process even though the Board went

2   through the motions of holding a hearing and stating a permissible

3   reason  for  denial  of  parole.  "Various  situations  have  been

4   identified  in  which  experience  teaches  that  the  probability  of

5   actual bias on the part of the judge or decisionmaker is too high

6   to be constitutionally tolerable. Among these cases are those in

7   which the adjudicator has a pecuniary interest in the outcome and

8   in which he has been the target of personal abuse or criticism from

9   the party before him. Withrow v. Larkin, 421 U.S. 35, 47 (1975).

10  A self-interest in the outcome of a quasi-judicial decision, then,

11  is one type of bias that could render a hearing inadequate.

12      In many contexts, those presiding over the hearing must not

13  only be free from self-interest, but they must also be "detached."

14  In the parole *revocation* context, the Supreme Court mandates a

15  "neutral and detached" hearing body. Morrisey v. Brewer, 408 U.S.

16  471 (1972).[1] The court concludes that in the parole eligibility

17  determination context, a hearing must be conducted by a neutral,

18  detached body, free from pecuniary or other self-interest in the

19  outcome. A neutral decision maker is one who arrives at a hearing

20  with  an  open  mind,  who  considers  the  evidence  and  arguments

21  presented at the hearing, and whose decision is influenced by what

22  transpires at the hearing.

23      Thus, plaintiffs could ultimately prevail on their due process

24

25      [1] See also Hamdi v. Rumsfeld, 542 U.S. 507, 533 (2004)(among
    the process due to citizen detainees seeking to challenge their
26  classification as enemy combatants is a hearing "before a neutral
    decision-maker").

claims upon a showing that the Board and the Governor were not "neutral decision-makers" while making parole eligibility decisions. Plaintiffs have alleged as much in their complaint by asserting, in essence, that the Board and Governor had a predetermined judgment about whether parole should be granted or denied based on factors that are not a part of the hearing. If it is the case that the Board and Governor had an across-the-board practice of denying parole until a minimum number of years was served, with no consideration given to the substance of the hearing, then the plaintiffs are arguably deprived of a meaningful hearing, and consequently, of their constitutional right to due process.[2]

Similarly, plaintiffs allege defects with respect to the due process requirement of a statement of reasons for parole denial. Plaintiffs allege that the Board and Governor make their decisions based on biases, but justify them by the use of regulatory criteria. This allegation challenges the procedure, and not the substance of the Board's and Governor's decision, and is thus within the scope of this court's authority.

Accordingly, defendants motion for judgment on the pleadings of plaintiffs' due process claims is DENIED with respect to Claims 1, 3, and 6. The motion is GRANTED with respect to Claims 4, 5, and 7, which challenge the substance of the parole eligibility

---

[2] Of course given the nature of the motion, the court makes no judgement of whether there is proof of a lack of a hearing conforming to the requisites of due process.

1   decisions.

2   **B. Statute of Limitations**

3       Defendants assert that the claims of the named plaintiffs and

4   certain class members are barred by the statute of limitations.

5   Specifically, defendants contend that all of plaintiffs' Due

6   Process claims (Claims 1, 3-7) are untimely because the plaintiffs

7   knew or should have known of the allegedly unlawful practice when

8   they were denied parole any time after 1990, the year in which

9   plaintiffs allege the improper procedures began. Defs.' Mot. 15.

10  Defendants also argue that the Ninth Cause of Action, an Ex Post

11  Facto Claim, is time barred for any class member whose parole was

12  denied prior to October 7, 2006.

13      Section 1983 does not contain a statute of limitations, but

14  courts apply the state statute of limitations for personal injury

15  claims. Wilson v. Garcia, 471 U.S. 261, 279 (1985); McDougal v.

16  County of Imperial, 942 F.2d 668, 672 (9th Cir. 1991). Prior to

17  January 1, 2003, the statute of limitations that applies to § 1983

18  claims was one year, as then delineated in Cal. Civ. Proc. Code §

19  340(3). Id. The California legislature amended the statute of

20  limitations for personal injury claims to two years, beginning

21  January 1, 2003. See Cal. Civ. Proc. Code § 335.1.

22      In a § 1983 action, "a claim accrues when the plaintiff knows

23  or has reason to know of the injury which is the basis of the

24  action." Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001).

25  Defendants contend that each plaintiffs' claim accrued the first

26

1   time they were denied parole pursuant to the allegedly unlawful
2   practices.  Plaintiffs contend that they may pursue their claims
3   because the conditions complained of are a continuing violation.

4   "A continuing violation is occasioned by continual unlawful acts,
5   not by continual ill effects from an original violation." <u>Ward v.</u>
6   <u>Caulk</u>, 650 F.2d 1144, 1147 (9th Cir. 1981); <u>Ledbetter v. Goodyear</u>,
7   550 U.S. 618 (superceded by statute on other grounds).  That is to
8   say, even if "some or all the events evidencing the inception of
9   [an unconstitutional] practice or policy occurred prior to the
10  limitations period" the claim is not barred. <u>De Grassi v.City of</u>
11  <u>Glendora</u>, 207 F3d. 636, 644 (9th Cir. 2000). While plaintiffs may
12  not use a continuing violations theory to avoid  the statute of
13  limitations when only the lingering effect of a prior act remains,
14  "Section 1983 is presumptively available to remedy a state's
15  ongoing violation of federal law. A plaintiff has adequately pled
16  an ongoing claim if she can show a systematic policy or practice
17  that operated, in part, within the limitations period -- a
18  systematic violation." <u>Mansourian v. Regents of the Univ. of Cal.</u>,
19  594 F.3d 1095, 1110 (9th Cir. 2010)(internal quotations and
20  citations omitted). Here, of course,  plaintiffs allege that the
21  defendants have an ongoing policy of depriving inmates of their due
22  process during the parole eligibility determination process.

23      Defendants cite <u>Brown v. Georgia Bd. of Pardons & Paroles</u>, 335
24  F.3d 1259, 1261 (11th Cir. 2003), which rejected a continuing
25  violations theory asserted by an inmate who was first denied parole
26  outside of the statute of limitations period, holding "that

12

1  plaintiff's injury occurred when the Georgia Parole Board first

2  applied its new policy to him in 1995, which was also when

3  plaintiff could have discovered the factual predicate of his

4  claim."  This court must respectfully disagree with defendants

5  contention. Even if plaintiffs were able to discover the factual

6  predicate of their claims the first time they were denied parole,

7  they are not necessarily barred. In the Ninth Circuit, use of the

8  continuing violations doctrine has never been invalidated in the

9  context of an unconstitutional policy or procedure. Moreover, as

10 plaintiffs note, the <u>Brown</u> plaintiff was seeking to remedy a prior

11 improper denial of parole, whereas the plaintiffs here seek only

12 prospective relief.

**IV. Conclusion**

13     For the foregoing reasons, the court ORDERS as follows:

14          [1] Defendants' Motion for Judgment on the Pleadings,

15          is GRANTED with respect to Claims 2, 4, 5, and 7 and

16          The motion is DENIED with respect to all other claims.

17     IT IS SO ORDERED.

18     DATED:  May 30, 2012.

                              LAWRENCE K. KARLTON
                              SENIOR JUDGE
                              UNITED STATES DISTRICT COURT