UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD M. GILMAN, et al.,

        Plaintiffs,

   v.

EDMUND G. BROWN, JR., et al.,

        Defendants.

NO. CIV. S-05-830 LKK/GGH

O R D E R

In California persons convicted of murder but with a sentence less than mandatory life, are at some point, eligible for parole. See California Penal Code §3041, In re Lawrence, 44 Cal 4th 1181 (2008). Plaintiffs in this class action are such prisoners who allege constitutional violations related to California's parole system. Pending before the court is defendant's motion for judgment on the pleadings, ECF No. 404. For the reasons stated herein, defendants' motion is GRANTED with respect to claims 2, 4, 5, and 7, and is DENIED as to the remaining claims.

////

# I. Background

The factual and procedural background of this case have been detailed at length in prior orders. See, e.g., March 4, 2009 Order Granting Class Certification, ECF No. 182. What follows is a summary of the background relevant to this motion.

Plaintiffs' complaint alleges nine causes of action challenging California's parole process on ex post facto and due process grounds. Those causes of action can be grouped as follows: Claims 1 and 3-7 allege due process violations with respect to parole suitability determinations; Claim 8 alleges an ex post facto violation with respect to the deferral provisions of California's Proposition 9; and Claim 9 alleges an ex post facto violation with respect to the Governor's authority to reverse a parole grant, enacted by Proposition 89. The parties agree that Claim 2 is redundant of Claims 8 and 9, and should be dismissed.

This court has certified a class and subclasses. The class is defined as all California state prisoners who a) have been sentenced to a life term with possibility of parole, b) have reached parole eligibility, and c) have been denied parole at least once. The subclasses are: 1) As to Claim 8 (*ex post facto* challenge to Proposition 9 deferral provisions), the class is defined as "all California state prisoners who have been sentenced to a life term with possibility of parole for an offense that occurred before November 4, 2008." 2) As to Claim 9 (*ex post facto* challenge to Proposition 89 giving Governor authority to overturn a parole decision), the class

is defined as "all California state prisoners who have been sentenced to a life term with possibility of parole for an offense that occurred before November 8, 1988." April 21, 2011 Order, ECF No. 339.

Defendants now seek a judgment on the pleadings on all claims.

## II. Standard for a Judgment on the Pleadings

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed but within such time as to not delay the trial." Fed.R.Civ.P. 12(c). All allegations of fact by the party opposing a motion for judgment on the pleadings are accepted as true. Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984). A "dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.' " Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690 (1969)); see also McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir.1988).

When a Rule 12(c) motion is used to raise the defense of failure to state a claim, the motion is subject to the same test as a motion under Rule 12(b)(6). McGlinchy, 845 F.2d at 810; Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1989). Thus, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937 (2009). Moreover, this court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89,

3

94 (2007).

## III. Analysis

A. Due Process Clause Claims

Plaintiffs' due process clause claims (Claims 1, 3-7) allege various constitutional defects in California's parole eligibility determination process. Generally, plaintiffs allege that the Board of Parole Hearings ("the Board") and the Governor are denying and deferring parole for improper reasons. Defendants argue that the Supreme Court's holdings in Greenholtz v. Inmates of the Nebraska Penal and Correction Complex, 442 U.S. 1 (1979) and Swarthout v. Cooke, 131 S. Ct. 859 (2011) render the due process claims uncognizeable.

Greenholtz was a Section 1983 case challenging Nebraska's procedure for making parole eligibility determinations. There is no federal constitutional right to be released on parole prior to the end of a valid sentence. Greenholtz, 442 U.S. at 7. However, once a state establishes a parole system, that system may create a court enforceable expectation of parole. In Greenholtz, the Supreme Court "accepted" that Nebraska's statutory scheme created an expectancy of release on parole, and that the expectancy "is entitled to some measure of constitutional protection." The Court emphasized that "whether any other state statute [governing parole eligibility] provides a protectable entitlement must be decided on a case-by-case basis." Id. at 12. The Court found that in the context of Nebraska's parole eligibility determination procedure

4

due process is satisfied where the procedure "affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole." Id. at 16. Although the Court's holding was specific to Nebraska's statutory scheme, the Court noted that "the function of legal process, as that concept is embodied in the Constitution, and in the realm of factfinding, is to minimize the risk of erroneous decisions." Id. at 11. Thus, a procedure which does not decrease the risk of error does not raise due process concerns. In any event, defendants do not deny that California's system creates some form of liberty interest.

In Swarthout, two California prisoners petitioned for federal habeas relief after being denied parole by the Board and Governor, respectively. Both had sought, and were denied, habeas relief in state court. The state court had determined that the parole denials had been based on "some evidence," of current dangerousness as is required by state law. The Ninth Circuit, applying the AEDPA standard to petitioner Cooke's claim, found that the state court's conclusion was "based on an unreasonable determination of the facts in light of the evidence," and that therefore Cooke was entitled to habeas relief. Cooke v. Solis, 606 F.3d 1206, 1216 (9th Cir. 2010). The Supreme Court reversed, holding that "the beginning and the end of the federal habeas courts' inquiry into whether Cooke and Clay received due process" should have been a review of the application of constitutionally required procedures. Swarthout at *7. The Court held that due process was satisfied because the

petitioners "were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied." The Court noted that this process was "at least" the amount of process due, citing Greenholtz's holding that "the Constitution does not require more" than an opportunity to be heard and a statement of the reasons why parole was denied in the context of a parole statute similar to California's. Swarthout at *7.

Plaintiffs here allege that California's procedure for determining parole eligibility falls short of constitutional requirements because the Board and the Governor's decisions are guided by "biases," such as a belief that a prisoner must serve an arbitrary number of years before he can be considered eligible for parole (First and Third Causes of Action); the Board and Governor rely on static factors to support the denial of parole, despite lack of risk to public safety (Fourth Cause of Action); the reasons given to defer or deny parole are not connected to risk to public safety and do not provide meaningful guidance to the prisoner about what he must do to obtain parole (Fifth Cause of Action); the Board and Governor make their decisions based on biases, but justify them by the use of regulatory criteria, or base their decisions on limited items of evidence in the record that are inconsistent with the record as a whole (Sixth Cause of Action); the Board and Governor defer parole reconsideration for some plaintiffs for more than one year for unreasonable reasons (Seventh Cause of Action). Thus, plaintiffs argue that, although the California parole

statutes do provide for the basic due process safeguards (a hearing and a statement of the reason for denial), the hearings themselves are tainted by the biases of the Board and the Governor, rendering them constitutionally inadequate.

The Supreme Court has spoken unequivocally on the division of labor between the state and federal courts with respect to challenges to parole eligibility determinations for state prisoners. Pursuant to Swarthout, the federal courts may not review a state's parole eligibility decision on the merits. This is because the question of whether those decisions comply with state law is a question for the state's courts and outside the jurisdiction of the federal courts. The federal courts' role is to determine whether those prisoners have received the process they are due under the constitution, i.e. a hearing and a statement of reasons for the denial of parole. As is explained below, it appears to this court that the Court's ruling, while quite confining, does not end the inquiry in this case.

Although not discussed in Greenholtz or Swarthout, the Supreme Court has held elsewhere that a constitutional hearing is a "meaningful" hearing. "For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a *meaningful manner*." Fuentes v. Shevin, 407 U.S. 67, 80 (1972)(internal quotations

7

omitted)(emphasis added). For example, a parole eligibility determination presided over by Board members who were all wearing earplugs would not be a "meaningful" hearing. Similarly, it appears to this court that the statement of reasons for a denial of parole must be a statement of the real reasons for denial.

Defendants apparently concede that a parole board hearing would not satisfy due process if it were presided over by officers with an unconstitutional bias. Defs.' Mot. 10. Indeed, in the context of administrative adjudication as well as in the courts, "a biased decisionmaker [is] constitutionally unacceptable." Withrow v. Larkin, 421 U.S. 35, 47 (1975). "That officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy to be decided is, of course, the general rule." Tumey v. Ohio, 273 U.S. 510, 522 (1927). A governor's role when reviewing parole decisions, is "functionally comparable" to a judge's role. Miller v. Davis, 521 F.3d 1142, 1144 (9th Cir. 2008). Similarly, parole board officials' decisions to grant, deny, or revoke parole is "functionally comparable" to tasks performed by judges. Swift v. California, 384 F.3d 1184, 1189 (9th Cir. 2004). Thus, in order to be constitutionally sufficient, a parole eligibility hearing must be presided over by unbiased officials. Similarly, the Governor, when reviewing parole decisions, must make the decisions without improper bias. The question then, is what types of bias in parole eligibility decisionmakers will render a parole eligibility hearing inadequate.

No one could dispute that a decision made by a Board tainted

by a bribe would not satisfy due process even though the Board went through the motions of holding a hearing and stating a permissible reason for denial of parole. "Various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him. Withrow v. Larkin, 421 U.S. 35, 47 (1975). A self-interest in the outcome of a quasi-judicial decision, then, is one type of bias that could render a hearing inadequate.

In many contexts, those presiding over the hearing must not only be free from self-interest, but they must also be "detached." In the parole *revocation* context, the Supreme Court mandates a "neutral and detached" hearing body. Morrisey v. Brewer, 408 U.S. 471 (1972).[1] The court concludes that in the parole eligibility determination context, a hearing must be conducted by a neutral, detached body, free from pecuniary or other self-interest in the outcome. A neutral decision maker is one who arrives at a hearing with an open mind, who considers the evidence and arguments presented at the hearing, and whose decision is influenced by what transpires at the hearing.

Thus, plaintiffs could ultimately prevail on their due process

---

[1] See also Hamdi v. Rumsfeld, 542 U.S. 507, 533 (2004)(among the process due to citizen detainees seeking to challenge their classification as enemy combatants is a hearing "before a neutral decision-maker").

9

claims upon a showing that the Board and the Governor were not "neutral decision-makers" while making parole eligibility decisions. Plaintiffs have alleged as much in their complaint by asserting, in essence, that the Board and Governor had a predetermined judgment about whether parole should be granted or denied based on factors that are not a part of the hearing. If it is the case that the Board and Governor had an across-the-board practice of denying parole until a minimum number of years was served, with no consideration given to the substance of the hearing, then the plaintiffs are arguably deprived of a meaningful hearing, and consequently, of their constitutional right to due process.[2]

Similarly, plaintiffs allege defects with respect to the due process requirement of a statement of reasons for parole denial. Plaintiffs allege that the Board and Governor make their decisions based on biases, but justify them by the use of regulatory criteria. This allegation challenges the procedure, and not the substance of the Board's and Governor's decision, and is thus within the scope of this court's authority.

Accordingly, defendants motion for judgment on the pleadings of plaintiffs' due process claims is DENIED with respect to Claims 1, 3, and 6. The motion is GRANTED with respect to Claims 4, 5, and 7, which challenge the substance of the parole eligibility

---

[2] Of course given the nature of the motion, the court makes no judgement of whether there is proof of a lack of a hearing conforming to the requisites of due process.

decisions.

**B. Statute of Limitations**

Defendants assert that the claims of the named plaintiffs and certain class members are barred by the statute of limitations. Specifically, defendants contend that all of plaintiffs' Due Process claims (Claims 1, 3-7) are untimely because the plaintiffs knew or should have known of the allegedly unlawful practice when they were denied parole any time after 1990, the year in which plaintiffs allege the improper procedures began. Defs.' Mot. 15. Defendants also argue that the Ninth Cause of Action, an Ex Post Facto Claim, is time barred for any class member whose parole was denied prior to October 7, 2006.

Section 1983 does not contain a statute of limitations, but courts apply the state statute of limitations for personal injury claims. Wilson v. Garcia, 471 U.S. 261, 279 (1985); McDougal v. County of Imperial, 942 F.2d 668, 672 (9th Cir. 1991). Prior to January 1, 2003, the statute of limitations that applies to § 1983 claims was one year, as then delineated in Cal. Civ. Proc. Code § 340(3). Id. The California legislature amended the statute of limitations for personal injury claims to two years, beginning January 1, 2003. See Cal. Civ. Proc. Code § 335.1.

In a § 1983 action, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). Defendants contend that each plaintiffs' claim accrued the first

11

time they were denied parole pursuant to the allegedly unlawful practices. Plaintiffs contend that they may pursue their claims because the conditions complained of are a continuing violation. "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981); Ledbetter v. Goodyear, 550 U.S. 618 (superceded by statute on other grounds).  That is to say, even if "some or all the events evidencing the inception of [an unconstitutional] practice or policy occurred prior to the limitations period" the claim is not barred. De Grassi v.City of Glendora, 207 F3d. 636, 644 (9th Cir. 2000). While plaintiffs may not use a continuing violations theory to avoid the statute of limitations when only the lingering effect of a prior act remains, "Section 1983 is presumptively available to remedy a state's ongoing violation of federal law. A plaintiff has adequately pled an ongoing claim if she can show a systematic policy or practice that operated, in part, within the limitations period -- a systematic violation." Mansourian v. Regents of the Univ. of Cal., 594 F.3d 1095, 1110 (9th Cir. 2010)(internal quotations and citations omitted). Here, of course,  plaintiffs allege that the defendants have an ongoing policy of depriving inmates of their due process during the parole eligibility determination process.

    Defendants cite Brown v. Georgia Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003), which rejected a continuing violations theory asserted by an inmate who was first denied parole outside of the statute of limitations period, holding "that

plaintiff's injury occurred when the Georgia Parole Board first applied its new policy to him in 1995, which was also when plaintiff could have discovered the factual predicate of his claim." This court must respectfully disagree with defendants contention. Even if plaintiffs were able to discover the factual predicate of their claims the first time they were denied parole, they are not necessarily barred. In the Ninth Circuit, use of the continuing violations doctrine has never been invalidated in the context of an unconstitutional policy or procedure. Moreover, as plaintiffs note, the Brown plaintiff was seeking to remedy a prior improper denial of parole, whereas the plaintiffs here seek only prospective relief.

**IV. Conclusion**

For the foregoing reasons, the court ORDERS as follows:

[1] Defendants' Motion for Judgment on the Pleadings, is GRANTED with respect to Claims 2, 4, 5, and 7 and

The motion is DENIED with respect to all other claims.

IT IS SO ORDERED.

DATED: May 30, 2012.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

13