1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11    RICHARD M. GILMAN, et al.,          No.  CIV. S-05-830 LKK/CKD

12              Plaintiffs,

13         v.                              **ORDER**

14    EDMUND G. BROWN, JR., et al.,

15              Defendants.

16

17        Plaintiffs move for attorneys' fees in the amount of

18    $58,471.  For the reasons set forth below, the motion will be

19    granted, but in the amount of $34,201.56.

20                        **I.   ATTORNEYS' FEES**

21        Plaintiffs are generally entitled to attorneys' fees where,

22    as here, they are the prevailing parties in a civil rights action

23    brought pursuant to 42 U.S.C. § 1983.  <u>See</u> 42 U.S.C. § 1988(b)

24    ("the court, in its discretion, may allow the prevailing party …

25    a reasonable attorney's fee as part of the costs"); <u>Bauer v.</u>

26    <u>Sampson</u>, 261 F.3d 775, 785 (9th Cir. 2001) ("Plaintiffs in § 1983

27    actions 'should ordinarily recover an attorney's fee unless

28    special circumstances could render such an award unjust'")

                                    1

(quoting Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)).  Plaintiffs bear the initial burden "of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

Plaintiffs' fee request is broken down as follows:

* Carter White, Esq.: 38.0 hours @ $211.50 per hour = $8,037.00.
* Carter White, Esq.: 4.0 hours @ $211.50 per hour = $846.00.[1]
* Law students: 234.46 hours @ $211.50 per hour = $49,588.29.[2]
* Case expenses: $0.00.[3]

Defendants do not challenge plaintiffs' entitlement to fees. They do however, argue that the amount plaintiffs seek should be reduced.

**A.   Billing Rate.**

Plaintiffs are incarcerated prisoners, and therefore the fees they may seek for this litigation are limited by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  Martin v. Hadix, 527 U.S. 343, 350 (1999) (the PLRA "places a cap on the size of attorney's fees that may be awarded in prison litigation suits").  That statute provides:

---

[1] This is for work on plaintiffs' reply memorandum on this attorneys' fees motion.

[2] Plaintiffs initially sought payment for 245.46 law student hours.  ECF No. 542 at 9.  Defendants objected that 11 of those hours were billed but not worked.  ECF No. 546 at 2.  Plaintiffs conceded error, and reduced the number to 234.46 law student hours.  ECF No. 550 at 1.

[3] Plaintiffs initially sought case expenses of $3,292.30.  ECF No. 542 at 9.  Defendants objected that the expenses were not supported by any receipts or other documentation.  ECF No. 546 at 7-8.  Plaintiffs, without comment, dropped their request for case expenses.

> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under [42 U.S.C. § 1988], such fees shall not be awarded, except to the extent [authorized here] …
>
> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

42 U.S.C. § 1997e(d).  Thus:

> The [PLRA] caps attorney fees authorized under 42 U.S.C. § 1988 at 150 percent of the "rate established" by the Criminal Justice Act, 18 U.S.C. § 3006A, "for payment of court-appointed counsel."  42 U.S.C. § 1997e(d)(3).

Perez v. Cate, 632 F.3d 553, 554 (9th Cir. 2011).

In turn, 18 U.S.C. § 3006A provides that the hourly rate shall be determined by the Judicial Conference of the United States in conformity with a formula set forth in the statute.  18 U.S.C. § 3006A(d)(1); Perez, 632 F.3d at 555.  The Judicial Conference, in its turn, has established the following maximum rates in these cases:

| If services were performed between... | The maximum hourly rate is... |
| --- | --- |
| 03/01/2014 to present | $126 |
| 09/01/2013 through 02/28/2014 | $110 |
| 01/01/2010 through 08/31/2013 | $125 |
| 03/11/2009 through 12/31/2009 | $110 |
| 01/01/2008 through 03/10/2009 | $100 |

7 Guide to Judiciary Policy § 230.16.[4]  Thus, the baseline rate –

---

[4] This document is available at www.uscourts.gov/FederalCourts/AppointmentOfCounsel/CJAGuidelines Forms/vol7PartA/vol7PartAChapter2.aspx#230_16 (last visited by the court on July 25, 2014).

1  the rate before the multiplier (no more than 150%) is applied –

2  depends on the year the services were performed, and ranges from

3  $100 to $126.  Indeed, plaintiffs correctly argue (as do

4  defendants) that the proper "baseline" rate for fees under the

5  CJA is the one set by the Judicial Conference.  See Plaintiffs'

6  Motion for Attorney's Fees ("Motion") (ECF No. 542) at 6.

7      However, plaintiffs do not request the fees established by

8  the Judicial Conference.  Indeed, they do not even make reference

9  to the published, publicly available, maximum baseline rates

10  established by the Judicial Conference, the agency charged by law

11  with making that determination.  Instead, plaintiffs seek a

12  baseline rate of $141.  Motion at 6.

13      Plaintiffs request this baseline rate based upon an e-mail

14  they say they received from an "Attorney Advisor" of the Defender

15  Services Office of the Administrative Office of the U.S. Courts,

16  to a person apparently associated in some way with Prisoners

17  Legal Services of Boston, MA.  ECF No. 542-1 at 9 ("the

18  authorized CJA hourly non-capital rate for fiscal years 2011,

19  2012 and 2013 was $139," but was increased in January 2014 "from

20  $139 to $141").[5]  The Attorney Adviser states, in the e-mail,

21  that "[t]here is no public document that lists these authorized

22

23  [5] See Motion at 6 ("The proper baseline rate for fees under the
    CJA is currently 141 dollars (see Office of Court Administration
24  material attached to Declaration of C. White)"); March 28, 2014
    Declaration of Carter White ("White Decl. (3-28-2014)") (ECF
25  No. 542-1) ¶ 15 ("The hourly rate authorized by the Judicial
    Conference on which the PLRA hourly rate is calculated is not
26  made available in any published or generally-available online
    source and must be obtained via correspondence with the
27  Administrative Office of the Courts").

28

4

1    rates," indicating that discovering the baseline rate is a

2    secret, mysterious process available only through private

3    correspondence with the Defender's Office.  <u>See</u> ECF No. 542-1

4    at 9.  However, the e-mail makes no reference to the public

5    document that is available from the Judicial Conference on its

6    public website, and which expressly sets forth the baseline

7    rates.

8         Moreover, plaintiffs offer no evidence that the Attorney

9    Adviser speaks for the Judicial Conference, the Administrative

10   Office of the U.S. Courts, or even the Defenders Services Office.

11   Nor do they offer any evidence or legal citation indicating that

12   the Attorney Adviser can overrule the official, publicly

13   available Judicial Conference determination on this matter which,

14   to repeat, can be found at (Vol.) 7 Guide to Judiciary Policy

15   § 230.16, and is available on the public Judicial Conference

16   website, cited above.  For these reasons alone, the court will

17   give no weight whatever to the e-mail cited by plaintiffs, as the

18   sole initial support of their assertion that the baseline rate is

19   $141.[6]

20        In their Opposition, defendants correctly pointed out that

21   the rate authorized by the Judicial Conference is set forth at

22   7 Guide to Judiciary Policy § 230.16.  Defendants' Opposition to

23   _____

24   [6] The court notes that the Administrative Office of the U.S.
     Courts is "under the supervision and direction of the Judicial
25   Conference of the United States," 28 U.S.C. § 604, and not the
     other way around.  Thus it is not obvious that informal
26   correspondence from this Attorney Adviser – which itself does not
     cite any basis for the views expressed there – could override the
27   official, published determination of the Judicial Conference, the
     entity charged by statute with this determination.

28

1    Plaintiffs' Motion for Attorney's Fees ("Opposition") (ECF

2    No. 546) at 3-4 & 3 n.3.   For reasons they do not explain

3    however, defendants did not use the rates published by the

4    Judicial Conference.   Rather, they use rates referred to in the

5    March 20, 2013 Congressional testimony of Hon. Julia Gibbons,

6    which she gave in her role as the Chair of the Committee on the

7    Budget of the Judicial Conference of the United States.   Id.,

8    at 3 n.3.   However, that is the same baseline rate (for some of

9    2014, in any event), that the Judicial Council authorized, namely

10   $126 per hour.

11            1.   **Judge Gibbons.**

12        In their Reply, plaintiffs turn to the March 18, 2010

13   Congressional testimony of Judge Gibbons.   See Reply at 2

14   & 2 n.2.[7]   Plaintiffs argue that the baseline rate is the $141

15   rate because "[i]n March 2010, the Judicial Conference requested

16   that Congress increase the non-capital CJA rate to 'the

17   statutorily authorized rate of $141 per hour, effective January

18   1, 2011.'"   Reply at 2 (quoting the testimony of Judge Gibbons).

19        In other words, after initially asserting that the baseline

20   rate was determined through private correspondence with the

21   Defender's Office, they now assert that the rate is determined by

22   poring through Congressional testimony.   However, plaintiffs do

23   not explain how Congressional testimony, even from Judge Gibbons,

24   could override the official, published determination of the

25   _____

26   [7] The testimony is available at
     http://www.uscourts.gov/News/Viewer.aspx?doc=/uscourts/News/2010/
27   docs/Judge_Gibbons_Judicial_Conference.pdf (last visited by the
     court on July 25, 2014).

28

1  Judicial Conference itself.  Even if poring through this

2  testimony is the proper way to determine the baseline rate,

3  plaintiffs do not explain why we should not use Judge Gibbons's

4  more recent testimony:

5          Panel attorney rates as of March 1, 2014, are
           $126 per hour for non-capital work and $180
6          per hour for capital work.

7  March 26, 2014 Congressional Testimony of Hon. Julia Gibbons.[8]

8          Moreover, even assuming that $141 is the "statutorily

9  authorized rate," plaintiffs' argument is predicated upon a false

10  choice.  According to plaintiffs, the baseline is not determined

11  by the rate Congress appropriates funds for, but rather by the

12  amount authorized by statute.  Reply at 4.  Although plaintiffs

13  are correct on one level, they omit the critical second step

14  here, which is that the amount "authorized by statute" is left to

15  the Judicial Conference to determine.  See 18 U.S.C. § 3006A(d)

16  ("the Judicial Conference is authorized to raise the maximum

17  hourly rates specified in this paragraph").  Thus, the amount

18  authorized by statute, for purposes of determining the baseline

19  amount, is the amount actually determined by the Judicial

20  Conference, not the theoretical amount the Judicial Conference

21  could raise it to,[9] or the amount that the Judicial Conference

22  _____

[8] Available at
23  http://news.uscourts.gov/sites/default/files/Judge-Gibbons_2015-
   Budget.pdf (last visited by the court on July 25, 2014).
24

25  [9] Judge Gibbons also testified:

26          The CJA authorized the Judicial Conference to
           implement  annual  cost-of-living  adjustments
           (COLAs) to panel attorney rates, subject to
27          congressional funding. If the statutory COLAs
           provided  to  federal  employees  (the  base
28          employment  cost  index  component  only)  had

1   asked the Congress to fund.[10]   Equally important, it is a rate

2   that is determined by reference to official, public documents

3   that are easily accessible by the parties and this court, not by

4   going through secret channels, by means of private e-mail

5   communications, by interpreting random pieces of paper (see

6   below), and by poring over Congressional testimony.[11]

7           **2.   2014 Budget Justification.**

8        Plaintiffs next turn to two pieces of paper which they

9   assert is "an excerpt from the Fiscal Year 2014 Judiciary

---

been provided to panel attorneys on a recurring, annual basis since 1986, the authorized noncapital hourly rate for fiscal year 2011 <u>would be $141</u>.

Gibbons Testimony (3-18-2010) at 14 (emphasis added).

[10] Judge Gibbons further testified:

This $15 per hour increase represents a significant step in closing the gap between the previous $110 rate and the statutorily authorized rate of $141 per hour rate <u>that we are seeking for 2011</u>.

March 18, 2014 Testimony of Judge Gibbons at 13 (emphasis added).

[11] The Ninth Circuit, in <u>Perez</u>, confirmed the Judicial Conference rate by referencing the "Report of the Proceedings of the Judicial Conference of the United States (Sept. 19, 2000)," which is available on the Judicial Conference's publicly available website. <u>Perez</u>, 623 F.3d at 555 n.1 ("the Defender Services Committee of the Judicial Conference recommended a rate of $113, and the full Conference ratified this recommendation"). The Ninth Circuit was able to find this rate apparently without receiving any private e-mails from the Defender Services Office, or poring through congressional budget testimony. The Report of the Proceedings of the Judicial Conference for September 2000 is a public document, available from the Judicial Conference's website. <u>See also</u>, <u>Madrid v. Gomez</u>, 190 F.3d 990, 994 (9th Cir. 1999) (finding the baseline rate is the one set by the Judicial Conference).

Congressional Budget Justification."  Exhibit 3 (ECF No. 550-1 at 36-37) of the April 28, 2014 Declaration of Ernest Galvan ("Galvan Decl. (4-28-2014)") (ECF No. 550-1) ¶ 6.  The only information plaintiffs offer about these pages is that they were received "by email from the Defenders Service."  Gavan Decl. (4-28-2014) ¶ 6.  The court is not informed who the author of the pages is, whether the pages are authentic, whether they are part of a draft or final version of something, whether they were ever submitted to Congress or anyone else, whether the language was approved by the Judicial Conference or possibly the Administrative Office, where the full document can be found, or anything else about these pages.  These two random pieces of paper are simply not anything that this court can use in making a judicial determination.  Moreover, even if plaintiffs have properly interpreted these pages to mean that the maximum baseline rate is $141 (and this is not at all clear), they have provided no basis for this court to find that these pages override the official, published determination of the Judicial Conference, that the maximum baseline rate for 2014 is $110 or $126, depending upon when the work was performed.

> **3.  Webb v. Ada County.**

Plaintiffs argue that "what matters is not the amount that Congress approves, but the amount that the statute actually authorizes" (Reply at 4), citing Webb v. Ada County, 285 F.3d 289 (9th Cir.), cert. denied, 537 U.S. 948 (2002).  Defendants take no issue with this.  However, it does not in any way support plaintiffs' $141 figure.

The amount the statute "actually authorizes" is the amount

1   determined by the Judicial Conference:

2           The   Judicial   Conference   shall   develop
        guidelines for determining the maximum hourly
3       rates … .   Not less than 3 years after the
        effective  date  of  the  Criminal  Justice Act
4       Revision  of  1986,  the  Judicial Conference  is
        authorized  to  raise  the  maximum hourly rates
5       specified  in  this  paragraph  up  to  the
        aggregate  of  the  overall  average percentages
6       of  the  adjustments  in  the  rates of pay under
        the  General  Schedule  made  pursuant to section
7       5305  of  title  5  on  or  after  such  effective
        date.   After  the  rates  are  raised  under the
8       preceding  sentence,  such  maximum hourly rates
        may  be  raised  at  intervals  of  not less than 1
9       year  each,  up  to  the  aggregate  of  the  overall
        average  percentages  of  such  adjustments  made
10      since  the  last  raise  was  made  under  this
        paragraph.

11

12  18 U.S.C. § 3006A(d) (emphases added).  Nothing in the statute

13  indicates that the amount authorized is the amount of funding the

14  Judicial Conference requests, nor the amount that the Judicial

15  Conference would like to pay attorneys if it had sufficient

16  funding.  Rather, it is the amount the Judicial Conference

17  actually determines, using its guidelines.  Those guidelines

18  establish rates of $100 to $126 from 2008 to 2014.  7 Guide to

19  Judiciary Policy § 230.16.

20      Plaintiffs seem to interpret Webb to say that the rate level

21  the Judicial Conference could have sought over the years in its

22  budget testimony before Congress is the rate that governs here.

23  Reply at 2.  But that is not what Webb teaches.  Rather, that

24  case holds that the rate the Judicial Conference determines is

25  what governs, even if funds are not available to actually pay

26  that amount:

27          The  PLRA  expressly  provides  for  payment  at
        the  rate  "established"  under  18  U.S.C.
28      § 3006A.  42  U.S.C.  §  1997e(d)(3).   The

10

1
2
3
4
5

> Judicial Conference determined that a rate of $75 per hour for the District of Idaho was justified. Section 1997e(d)(3) makes no distinction between the amount <u>authorized by the Judicial Conference</u> and the amount actually appropriated by Congress to compensate court-appointed counsel in criminal proceedings.

6 <u>Webb</u>, 285 at 839 (emphasis added).

7     **B.   Entitlement to Fees.**

8     Although plaintiffs are plainly entitled to attorneys' fees

9 – a proposition not disputed by defendants – they have utterly

10 failed to establish at what rate they should be paid.  Not only

11 do they make no reference to the rates established by the

12 Judicial Conference, they actually direct the court's attention

13 <u>away</u> from that determination in favor of an e-mail from the

14 Defenders Office, Congressional testimony, and seemingly random

15 pieces of paper sent to them by e-mail from an unknown person at

16 the "Defender Services."  Accordingly, the court would be

17 justified in denying fees entirely based upon plaintiffs' motion.

18     However, since defendants do not dispute that plaintiffs are

19 entitled to fees, the court will award fees in accordance with

20 the calculations offered by defendants, which at least have a

21 demonstrable relationship to the applicable law.[12]  Defendants

22 request that the clinic law students be paid at the baseline rate

23 for each year, and that Carter White be paid at 150% of the

24 _____

[12] As noted, defendants also, and for unexplained reasons, rely on

25 Judge Gibbons's congressional testimony, although they at least acknowledge the existence of the Judicial Conference's published

26 maximum baseline rates.  However, to the degree the numbers defendants use are not the official numbers, they are slightly

27 higher, and thus inure to plaintiffs' benefit.  Since defendants are willing to use these numbers, the court will acquiesce.

28

1  baseline.  Both requests are supported by the applicable law.

2  See 7 Guide to Judiciary Policy § 230.16 (establishing the

3  maximum baseline rates); 42 U.S.C. § 1997e(d)(e) (establishing

4  that the maximum fees are 150% of the baseline rates).  These

5  figures are as follows:

6

| Carter White | Clinic Law Students |
|---|---|
| 2008:  $169.50 (150% of $113) | $113 |
| 2009:  $177.00 (150% of $118) | $118 |
| 2010:  $213.00 (150% of $142) | $142 |
| 2013:  $189.00 (150% of $126) | $126 |
| 2014:  $189.00 (150% of $126) | $126 |

11  Based on these rates, and the hours documented by plaintiffs,

12  defendants' counsel represents that total fees to plaintiffs are

13  $34,201.56.  Opposition at 7.  The court accepts defendants'

14  representation, which is not disputed by plaintiffs, and will

15  award that amount in attorneys' fees to plaintiffs.[13]

16      C.    Stay Pending Appeal.

17      Defendants request a stay of payment of any attorneys' fees

18  until the proceedings on appeal are resolved.  Opposition at 8.

19  _____

20  [13] Plaintiffs assert that baseline fees of $141 and $142 were paid
    by defendants in Coleman v. Brown, 90-cv-520 LKK (E.D. Cal.),

21  pursuant to "settlement agreements approved by the Attorney
    General and the Coleman Court."  April 28, 2014 Declaration of

22  Ernest Galvan (ECF No. 550-1 at 1-4) ¶¶ 4 & 5.  Plaintiffs do
    not, however, direct the court to any specific court filings in

23  the case that would support their assertion, even though there
    are over 5,000 court filings in that case.  The court's own

24  search has turned up no orders confirming the $141 or $142 rate.
    (The four filings turned up in the court's own search were about

25  compensation for non-lawyers.  See Coleman v. Brown, ECF
    Nos. 3906, 3997, 4029 and 4093.)  Even if such documents and

26  orders could be found, stipulations by the parties to pay
    attorneys' fees at a given rate are not relevant to the disputed

27  rate determination of this case.

28
                                    12

1   However, defendants have not advised the court of their

2   compliance with Fed. R. Civ. P. 62(d) ("appellant may obtain a

3   stay [on appeal] by supersedeas bond"). See ACLU of Nevada v.

4   Masto, 670 F.3d 1046, 1066 (9th Cir. 2012) ("[h]ad the State

5   complied with the express requirements of Rule 62(d) by appealing

6   the underlying fees order and posting a supersedeas bond with the

7   district court, it would have been entitled to a stay as a matter

8   of right"). Accordingly, the request will be denied without

9   prejudice to its renewal.

10                          **II.   CONCLUSION**

11       For the reasons set forth above, the court orders as

12   follows:

13       1.   Plaintiffs' motion for attorneys' fees is **GRANTED**, and

14   such fees shall be paid to plaintiffs' counsel by defendants, in

15   the total amount of **$34,201.56**;

16       2.   Defendants' request for a stay of payment is **DENIED**

17   without prejudice to its renewal under Fed. R. Civ. P. 62(d), or

18   (if they believe this rule is inapplicable or not mandatory),

19   pursuant to a motion otherwise explaining their entitlement to a

20   stay.

21       **IT IS SO ORDERED.**

22       Dated:   July 25, 2014.

23

24

25

26   LAWRENCE K. KARLTON
     SENIOR JUDGE

27   UNITED STATES DISTRICT COURT

28